ERNEST GALVIN – 196065
AARON J. FISCHER – 247391
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, 10th Floor
San Francisco, California  94104-1823
Telephone:     (415) 433-6830
Facsimile:      (415) 433-7104
Email:        egalvan@rbg-law.com
                    afischer@rbg-law.com

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN, LC
155 Montgomery Street, Suite 901
San Francisco, California  94104-4166
Telephone:    (415) 982-2600
Facsimile:    (415) 358-4562
Email:        gerilynngreen@gmail.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK; HILLARY BOCK; M.B., minor through her mother and guardian ad litem Cyndie Denny Bock; LAURA LYNN BOCK; and ROBERT BOCK, | No. CIV |
| Plaintiffs, | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW** |
| v. | **JURY TRIAL DEMANDED** |
| COUNTY OF SUTTER; COUNTY OF YUBA; CALIFORNIA DEPARTMENT OF MENTAL HEALTH (DMH); J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; TOM SHERRY, Director of Human Services of Sutter and Yuba Counties; AMERJIT BHATTAL, Assistant Director of Human Services-Health Division of Sutter and Yuba Counties; BRAD LUZ, Assistant Director of Human Services-Mental Health of Sutter and Yuba Counties; CLIFF ALLENBY, Acting Director of DMH; DOLLY MATTEUCCI, Executive Director of Napa State Hospital; JOHN S. ZIL; CHRISTOPHER BARNETT; SADOUTOUNNISSA MEER; and Does I through XL, inclusive, | |
| Defendants. | |

[479781-1]

# INTRODUCTION

Plaintiffs complain and allege as follows:

1.     Rodney Bock was a loving father and son with a history of mental illness.  In spite of his psychiatric problems, Rodney had run a substantial farm, growing peaches, prunes, kiwis, walnuts, rice, and other fresh produce.  He was self-employed, and for thirty years ran a successful fruit stand business in Marysville, California.  He also operated a successful, and growing, fertilizer business in the area.  He provided substantial financial and emotional support to his family, and they remained extremely close to him throughout his life.

2.     In November 2009, Rodney was the victim of an attack in which he received blows to his head and body.  Soon thereafter, Rodney Bock began to experience substantial psychiatric decompensation.  He would regularly make erratic and paranoid statements that God and Rush Limbaugh were talking to him and telling him what to do.  He experienced delusions that he was being told to kill people, including the President of the United States.  As his delusions and paranoia escalated (without any acts of violence or threatened violence towards others), his family repeatedly and desperately sought help from local authorities, including the Sutter County Sheriff's Department and Sutter-Yuba Mental Health Services.

3.     Rodney Bock's mental health deterioration starting in November 2009 led to multiple involuntary hospitalizations for psychiatric evaluation and treatment pursuant to Cal. Welf. & Inst. Code § 5150.  During the first two psychiatric hospitalizations, in November-December 2009 and January-February 2010, doctors determined that Rodney Bock required an additional two-week period of intensive inpatient treatment in order to provide appropriate care and to stabilize his condition.  According to his treatment team, Rodney Bock's mental health during this time remained extremely precarious, as he manifested psychotic, delusional and grandiose behaviors, believing that he was communicating with God, and that the government had planted a bug in his head and was tracking him.  Doctors and mental health clinicians repeatedly recommended that Rodney Bock be provided a safe and structured setting, intensive treatment, and even an inpatient state hospital placement.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW - NO. CIV

[479781-1]

4.     In late March 2010, Rodney abruptly and unexpectedly drove from California to Idaho, believing that the FBI was following him, that he was communicating with God and Rush Limbaugh, and that he was "The Avenger" acting at God's direction.

5.     Rodney Bock's family returned him home, and promptly brought him to Sutter County's psychiatric treatment facility for emergency evaluation and treatment in April 2010. Defendants inexplicably and inexcusably prevented Rodney Bock from receiving the treatment he desperately needed.  Defendants discharged Rodney Bock from the treatment facility barely 24 hours after his admission pursuant to Cal. Welf. & Inst. Code § 5150, despite clinical findings that he remained psychotic and despite applicable California state law requiring that he be provided inpatient evaluation and treatment for at least 72 hours.

6.     Even worse, Defendants discharged Rodney Bock to the custody of the Sutter County Sheriff's Department, which placed him in a cell at Sutter County Jail.  Defendants completed this transfer knowing that Sutter County Jail could not, and would not, provide anything resembling the level of evaluation, treatment and supervision that Rodney Bock required in light of his decompensated psychiatric condition.

7.     For the next 27 days, Rodney Bock remained at Sutter County Jail, where he received woefully inadequate psychiatric assessment, and essentially no psychiatric treatment. Custody and medical staff, and Rodney's family members, directly observed his condition deteriorate substantially.

8.     During this time, Defendants failed to provide the care and treatment Rodney Bock urgently needed, all in spite of readily apparent indicators of Rodney's deterioration, suicidal thoughts, and need for psychiatric attention, a judicial finding that Rodney was incompetent to stand trial, a court order explicitly directing that Rodney be placed at Napa State Hospital for inpatient treatment, and efforts by his loved ones to get Defendants to protect and provide necessary care to him.

9.     Defendants' outrageous actions and failures led to Rodney's further decline in mental health, his unnecessary suffering, and ultimately his wholly preventable suicide at Sutter County Jail on April 29, 2010.  On the date of Rodney's death, Defendants' deliberate

2

[479781-1]

1   indifference proximately caused Rodney to suffer a violent and psychotic episode, including

2   Rodney's repeated forceful banging of his head against the cell wall, causing substantial bleeding

3   and hemorrhaging, and his hanging himself in his jail cell.

4       10.     Plaintiff CYNDIE DENNY BOCK, on behalf of RODNEY LOUIS BOCK

5   ("Rodney Bock"), as Administrator of his Estate, now bring this civil rights action against

6   Defendants for the violations of Rodney Bock's Fourteenth Amendment rights, federal rights

7   under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of

8   1973, and for violations of California state law.  Plaintiffs KIMBERLY BOCK, KELLIE BOCK,

9   HILLARY BOCK, M.B., LAURA LYNN BOCK, and ROBERT BOCK further bring this civil

10  rights action against Defendants for violations of their First and Fourteenth Amendment rights.

11                              **JURISDICTION**

12      11.     This Complaint seeks damages for the violation of the civil rights, privileges, and

13  immunities, as guaranteed by the First and Fourteenth Amendments of the United States

14  Constitution, of RODNEY LOUIS BOCK, pursuant to Title 42 U.S.C. sections 1983 and 1988,

15  for violations of Title II of the Americans with Disabilities Act and Section 504 of the

16  Rehabilitation Act of 1973, and for violations of California state law.  This Complaint further

17  seeks damages for the violation of the civil rights, privileges, and immunities, of KIMBERLY

18  BOCK, KELLIE BOCK, HILLARY BOCK, M.B., LAURA LYNN BOCK, and ROBERT

19  BOCK as guaranteed by the First and Fourteenth Amendments of the United States Constitution,

20  and under California state law.

21      12.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and

22  1343.

23      13.     This Court has supplemental jurisdiction over the state law claims asserted herein

24  pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising

25  under the United States Constitution and federal law.

26

27

28

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW - NO. CIV

[479781-1]

**VENUE**

14.     Plaintiffs' claims, alleged herein, arose in the Counties of Sutter and Yuba, California.  Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

15.     Plaintiffs' decedent is RODNEY LOUIS BOCK, who, at the time of his death, was a fifty-six (56) year old citizen of the United States.  He was a citizen and resident of County of Yuba in the State of California.

16.     Plaintiff CYNDIE DENNY BOCK, as Administrator of the Estate of RODNEY LOUIS BOCK, brings this action pursuant to California Code of Civil Procedure §§ 377.10 *et seq.*  The survival causes of action in this matter are based on violations of Rodney Bock's rights under the First and Fourteenth Amendments, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, and California state law.

17.     Plaintiffs KIMBERLY BOCK, KELLIE BOCK, HILLARY BOCK, M.B., LAURA LYNN BOCK, and ROBERT BOCK are suing individually for violations of their civil rights under the First and Fourteenth Amendments.  M.B., a minor, is suing through her mother and Guardian Ad Litem, CYNDIE DENNY BOCK.

18.     Plaintiffs CYNDIE DENNY BOCK and M.B. are residents of the County of Sutter, California.

19.     Plaintiffs KIMBERLY BOCK, KELLIE BOCK, and HILLARY BOCK are residents of the County of Yuba, California.

20.     Plaintiffs LAURA LYNN BOCK and ROBERT BOCK are residents of the County of Butte, California.

21.     Defendant COUNTY OF SUTTER is a public entity, duly organized and existing under the laws of the State of California.  Under its authority, Defendant COUNTY OF SUTTER operates and manages Sutter County Jail and Sutter-Yuba Mental Health Services (SYMHS) facilities, and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the Sutter County Sheriff's

4

[479781-1]

Department and SYMHS, and each entity's respective employees and/or agents. Sutter County Sheriff's Department operates Sutter County Jail, and is and was responsible for ensuring the provision of emergency and basic medical and mental health care services to all Sutter County Jail inmates.  SYMHS is operated jointly by COUNTY OF SUTTER and COUNTY OF YUBA pursuant to a joint powers agreement.  SYMHS provides mental health care services, including evaluation and treatment, to individuals experiencing severe emotional distress or acute problems related to psychiatric disabilities, as well as acute psychiatric inpatient care for adults in the COUNTY OF SUTTER and the COUNTY OF YUBA.  SYMHS provides evaluation and treatment for individuals in the County of Sutter and the County of Yuba who, as a result of a mental disorder, are a danger to others, or to themselves, or are gravely disabled, as consistent with Cal. Welf. & Inst. Code §§ 5150, *et seq.*  SYMHS also provides medical and/or mental health care services to Sutter County Jail inmates.

22.     Defendant COUNTY OF YUBA is a public entity, duly organized and existing under the laws of the State of California.  Under its authority, Defendant COUNTY OF YUBA operates and manages SYMHS facilities, and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of SYMHS, and its respective employees and/or agents. SYMHS is operated jointly by COUNTY OF SUTTER and COUNTY OF YUBA pursuant to a joint powers agreement, and provides the services outlined above.

23.     Defendant CALIFORNIA DEPARTMENT OF MENTAL HEALTH (DMH) is, and was at all relevant times mentioned herein, responsible for admitting and providing mental health care services, including evaluation and treatment, to individuals placed at DMH facilities, including Napa State Hospital, for inpatient hospitalization and/or other treatment.  Such individuals include those found Incompetent to Stand Trial and placed in a psychiatric hospital by court order pursuant to Cal. Penal Code § 1370.

24.     Defendant J. PAUL PARKER is, and was at all relevant times mentioned herein, the Sheriff of the COUNTY OF SUTTER, the highest position in the Sutter County Sheriff's Department.  As Sheriff, Defendant PARKER is and was responsible for the training and

5

[479781-1]

1   supervision of all Sutter County Sheriff's Department custodial employees and/or agents and

2   DOES I through XL.  Defendant PARKER is and was charged by law with the administration of

3   the Sutter County Jail, with the assistance of a small group of executive officers.  Defendant

4   PARKER is and was also responsible for the promulgation of the policies and procedures and

5   allowance of the practices/customs pursuant to which the acts of the Sutter County Sheriff's

6   Department alleged herein were committed.  Defendant PARKER is being sued in his individual

7   and official capacities.

8       25.     Defendant TOM SHERRY is, and was at all relevant times mentioned herein, the

9   Director of Human Services for SYMHS.  Defendant SHERRY is and was responsible for the

10  training and supervision of all SYMHS and Sutter County Jail medical and/or mental health

11  services employees and/or agents, including Defendants JOHN S. ZIL, CHRISTOPHER

12  BARNETT, and SADOUTOUNNISSA MEER, and DOES I through XL.  Defendant SHERRY

13  is and was also responsible for the promulgation of the policies and procedures and allowance of

14  the practices/customs pursuant to which the acts and omissions of SYMHS alleged herein were

15  committed.  Defendant SHERRY is being sued in his individual and official capacities.

16      26.     Defendant AMERJIT BHATTAL is, and was at all relevant times mentioned

17  herein, the Assistant Director of Human Services-Health Division for SYMHS.  Defendant

18  BHATTAL is and was responsible for the training and supervision of all SYMHS and Sutter

19  County Jail medical and/or mental health services employees and/or agents, including

20  Defendants JOHN S. ZIL, CHRISTOPHER BARNETT, and SADOUTOUNNISSA MEER,

21  DOES I through XL.  Defendant BHATTAL is and was also responsible for the promulgation of

22  the policies and procedures and allowance of the practices/customs pursuant to which the acts

23  and omissions of SYMHS alleged herein were committed.  Defendant BHATTAL is being sued

24  in her individual and official capacities.

25      27.     Defendant BRAD LUZ is, and was at all relevant times mentioned herein, the

26  Assistant Director of Human Services and Director of Mental Health for SYMHS.  Defendant

27  LUZ is and was responsible for the training and supervision of all SYMHS and Sutter County

28  Jail medical and/or mental health services employees and/or agents, including Defendants JOHN

6

[479781-1]

S. ZIL, CHRISTOPHER BARNETT, and SADOUTOUNNISSA MEER, and DOES I through XL. Defendant LUZ is and was also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts and omissions of SYMHS alleged herein were committed. Defendant LUZ is being sued in his individual and official capacities.

28. Defendant CLIFF ALLENBY is the Acting Director of DMH. Defendant ALLENBY is responsible for the training and supervision of all DMH and Napa State Hospital medical and/or mental health services employees and/or agents, including DOES I through XL. Defendant ALLENBY is also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts and omissions of Defendant DMH alleged herein were committed. Defendant ALLENBY is being sued in his official capacity.[1]

29. Defendant DOLLY MATTEUCCI is, and was at all relevant times mentioned herein, the Executive Director of Napa State Hospital. Defendant MATTEUCCI is and was responsible for the training and supervision of all DMH medical and/or mental health services employees and/or agents at Napa State Hospital, including DOES I through XL. Defendant MATTEUCCI is and was also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts and omissions of DMH alleged herein were committed. Defendant MATTEUCCI is being sued in her official capacity.

30. Defendant JOHN S. ZIL is, and was at all relevant times mentioned herein, a psychiatrist under contract to provide psychiatric treatment to SYMHS patients and/or Sutter County Jail inmates with mental health needs. Between November 2009 and April 2010, Defendant ZIL was responsible for completing psychiatric evaluations of Rodney Bock, as well as planning psychiatric treatment and placement, providing psychiatric treatment, and prescribing psychiatric medication for Rodney Bock. Defendant ZIL was responsible for the psychiatric

---

[1] Stephen W. Mayberg, the Director of DMH at all times relevant to the claims herein, vacated the position in December 2010. Plaintiffs thus substitute Cliff Allenby, the Acting Director of DMH, as a defendant pursuant to Fed. R. Civ. P. 25(d).

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW - NO. CIV

[479781-1]

treatment Rodney Bock received at SYMHS and at Sutter County Jail.  Defendant ZIL is being sued in his individual capacity.

31.     Defendant CHRISTOPHER BARNETT is, and was at relevant times mentioned herein, a psychiatrist employed by SYMHS.  Between November 2009 and April 2010, Defendant BARNETT was responsible for completing multiple psychiatric evaluations of Rodney Bock, as well as planning psychiatric treatment and placement, providing psychiatric treatment, and prescribing psychiatric medication for Rodney Bock.  Defendant BARNETT was responsible for the psychiatric treatment Rodney Bock received at SYMHS and at Sutter County Jail.  Defendant BARNETT is being sued in his individual capacity.

32.     Defendant SADOUTOUNNISSA MEER is, and was at relevant times mentioned herein, a psychiatrist employed by SYMHS.  Between November 2009 and April 2010, Defendant MEER was responsible for completing psychiatric evaluations of Rodney Bock, as well as planning psychiatric treatment and placement, providing psychiatric treatment, and prescribing psychiatric medication for Rodney Bock.  Defendant MEER was responsible for the psychiatric treatment Rodney Bock received at SYMHS and at Sutter County Jail.  Defendant MEER is being sued in her individual capacity.

33.     The true names and identities of Defendants DOES I through XX are presently unknown to Plaintiffs.  Plaintiffs allege that each of Defendants DOES I through XX was employed by the COUNTY OF SUTTER, and/or COUNTY OF YUBA, and/or the Sutter County Sheriff's Department, and/or SYMHS, and/or DMH at the time of the conduct alleged herein.  Plaintiffs allege that each of Defendants DOES I through XX was deliberatively indifferent to Rodney Bock's medical needs and safety, failed to provide necessary psychiatric care to him or to take other measures to prevent him from attempting suicide, violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiffs further allege that Defendants DOES I through XX violated Plaintiffs' First and Fourteenth Amendment rights, rights under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, and rights

[479781-1]

1   under California state law.  Plaintiffs will seek to amend this Complaint as soon as the true

2   names and identities of Defendants DOES I through XX have been ascertained.

3          34.    The true names and identities of Defendants DOES XXI though XL are presently

4   unknown to Plaintiffs.  Plaintiffs allege that each of Defendants DOES XXI through XL was

5   employed by the COUNTY OF SUTTER, and/or COUNTY OF YUBA, and/or the Sutter

6   County Sheriff's Department, and/or SYMHS, and/or DMH at the time of the conduct alleged

7   herein.  Plaintiffs allege that each of Defendants DOES XXI through XL was responsible for the

8   training, supervision and/or conduct of medical, mental health, and jail custody employees and/or

9   agents involved in the conduct alleged herein.  Plaintiffs allege that each of Defendants DOES

10  XXI through XL was also responsible for and caused the acts and injuries alleged herein.

11  Plaintiffs will seek to amend this Complaint as soon as the true names and identities of

12  Defendants DOES XXI through XL have been ascertained.

13         35.    Defendant COUNTY OF SUTTER is a political subdivision of the State of

14  California, created and existing by virtue of the laws of the State of California.  At all times

15  relevant to the instant complaint, Defendant COUNTY OF SUTTER employed Defendants J.

16  PAUL PARKER, TOM SHERRY, AMERJIT BHATTAL, BRAD LUZ, JOHN S. ZIL,

17  CHRISTOPHER BARNETT, SADOUTOUNNISSA MEER, and DOES I through XL.

18         36.    Defendant COUNTY OF YUBA is a political subdivision of the State of

19  California, created and existing by virtue of the laws of the State of California.  At all times

20  relevant to the instant complaint, Defendant COUNTY OF YUBA employed Defendants TOM

21  SHERRY, AMERJIT BHATTAL, BRAD LUZ, JOHN S. ZIL, CHRISTOPHER BARNETT,

22  SADOUTOUNNISSA MEER, and DOES I through XL.

23         37.    Defendants J. PAUL PARKER, TOM SHERRY, AMERJIT BHATTAL, BRAD

24  LUZ, JOHN S. ZIL, CHRISTOPHER BARNETT, SADOUTOUNNISSA MEER, and DOES I

25  through XL, and each of them, to the extent they engaged in any acts or omissions alleged herein,

26  engaged in such acts or omissions under color of state law.

27         38.    Plaintiffs are informed and believe and thereon allege that at all times mentioned in

28  this Complaint, Defendants, and each of them, were the agents, employees, servants, joint

9

[479781-1]

1  venturers, partners and/or co-conspirators of the other Defendants named in this Complaint and

2  that at all times, each of the Defendants was acting within the course and scope of said

3  relationship with Defendants.

**EXHAUSTION OF PRE-LAWSUIT PROCEDURES**

5     39.     Plaintiffs CYNDIE DENNY BOCK, KIMBERLY BOCK, KELLIE BOCK,

6  HILLARY BOCK, and M.B. filed governmental tort claims with the State and Defendant

7  COUNTY OF SUTTER, including on behalf of the Rodney Bock's Estate, on June 24, 2010.  By

8  correspondence dated August 26, 2010, Plaintiff KIMBERLY BOCK's governmental tort claims

9  were rejected.  By correspondence dated September 23, 2010, Plaintiffs CYNDIE DENNY

10 BOCK, KELLIE BOCK, HILLARY BOCK, and M.B.'s governmental tort claims were rejected.

11    40.     Plaintiffs CYNDIE DENNY BOCK, KIMBERLY BOCK, KELLIE BOCK,

12 HILLARY BOCK, and M.B. filed governmental tort claims with Defendant COUNTY OF

13 YUBA, including on behalf of the Rodney Bock's Estate, on January 31, 2011.  They have

14 applied for leave to present their claims pursuant to Cal. Govt. Code § 911.6(b).

15    41.     Plaintiffs LAURA LYNN BOCK and ROBERT BOCK filed governmental tort

16 claims with the State and Defendants COUNTY OF SUTTER and COUNTY OF YUBA on

17 January 31, 2011.  They have applied for leave to present their claims pursuant to Cal. Govt.

18 Code § 911.6(b).

**FACTUAL ALLEGATIONS**

20    42.     Rodney Bock was born on August 22, 1953, in Sacramento, California, and was

21 raised primarily in Sacramento.

22    43.     Rodney Bock was married to CYNDIE DENNY BOCK for 24 years before they

23 divorced in 2004.  They had four daughters together, all of whom had close relationships with

24 their father.  Rodney Bock also was extremely close with his parents and other family members.

25    44.     Prior to his death, Rodney Bock lived on his farm in Marysville.  Two of his

26 daughters, KELLIE BOCK and HILLARY BOCK, lived with him year-round, and KIMBERLY

27 BOCK lived with him during extended periods each year consistent with her work obligations.

28 Rodney's youngest daughter, M.B., stayed with him several times a month.

10

[479781-1]

45.     Rodney Bock worked as a self-employed farmer.  He, along with his daughters and employees, worked on the farm, producing peaches, prunes, kiwis, walnuts, and rice.  Rodney owned and operated a successful fruit vending business along Highway 70 in Marysville, California.  Rodney also sold fruit and other products grown on the farm to vendors.  Additionally, Rodney owned and operated a promising fertilizer business, with a growing number of clients in the area.

46.     Rodney Bock had a history of mental illness, but had managed to maintain a positive family life and to operate his business ventures successfully for thirty years.

### November-December 2009 Mental Health Problems and Inpatient Treatment

47.     In or about November 2009, Rodney Bock was the victim of an attack after an argument with a local resident.  Rodney suffered several blows to his head and body.  Soon thereafter, he began making erratic and paranoid statements.  In one incident, a game warden observed Rodney Bock in an isolated nature area stating that God was talking to him and telling him to kill people.  The game warden did not arrest Rodney Bock, but told Rodney's family that Rodney needed mental help.

48.     On or about November 26, 2009, Rodney Bock's brother, James Bock, and/or other family members, contacted the Sutter County Sheriff's Department with concerns about Rodney's mental health, including his statements that God was telling him what to do and that God wanted him to kill people, including the President of the United States.  The Sutter County Sheriff's Department held Rodney for several hours, but released him later that day.

49.     Rodney Bock exhibited delusional and extremely paranoid behavior at the time of his release on November 26, 2009.  He immediately began wandering the streets, and his daughter, KELLIE BOCK, found him hiding behind a tree.  There, he told her that he was being followed and that people were after him.  After KELLIE BOCK brought him home, he became agitated: he began yelling, punching and/or kicking holes in a door and the house's walls.

50.     Later that night, Rodney Bock abruptly left his house and went to a local duck club, where he was a member.  The next day, family members found Rodney Bock behaving

[479781-1]

extremely erratically at the duck club.  He had broken the windows of the duck club with a propane tank, and was acting out based upon apparent delusions and paranoia.  He refused to return home or to eat.  He spent the night in a ditch, demanding that family members leave him alone and stating that he wanted to be with God.

51.     On or about November 27, 2009, family members attempted to have an "intervention" with Rodney Bock, which included a family friend who was a mental health professional.  Rodney told them that he was listening to God.  Family members contacted county officials, and Rodney Bock was admitted to Psychiatric Emergency Services (PES) at SYMHS for psychiatric evaluation.  Following an evaluation, Defendant ZIL and/or other SYMHS staff determined that Rodney Bock did not meet the criteria for involuntary hospitalization pursuant to Cal. Welf. & Inst. Code § 5150.

52.     On or about November 30, 2009, family members again contacted the Sutter County Sheriff's Department based on Rodney Bock's continued paranoia, delusions, and psychotic behavior.  Rodney was taken to the SYMHS Psychiatric Health Facility, where he was admitted on a 72-hour hold for evaluation and treatment pursuant to Cal. Welf. & Inst. Code § 5150.  Rodney was admitted based on a finding that he was a danger to others, or to himself, or was a gravely disabled adult.

53.     SYMHS has sixteen (16) inpatient beds for mentally ill patients, with an average census of approximately nine (9) to eleven (11) patients.  SYMHS clinical, administrative, and supervisory staff members have, or reasonably should have, knowledge of all patients held at SYMHS, and their respective psychiatric conditions, at any given time.

54.     Following a psychiatric exam, Rodney Bock was documented as presenting as psychotic, delusional, and grandiose.  Defendants documented that Rodney Bock had a history of head trauma and a family history that included at least one completed suicide, that his thought process was "quite scattered and tangential," and that his insight and judgment were markedly impaired.  Rodney Bock expressed to SYMHS staff his belief that President Obama was "sending people to kill him."

12

[479781-1]

55.     Following the 72-hour hold, Rodney Bock was certified pursuant to Cal. Welf. & Inst. Code § 5250 to remain at SYMHS for an additional 14 days of involuntary hospitalization, based on a finding that he was a danger to others, or to himself, or was gravely disabled, as a result of a mental disorder or impairment requiring continued intensive psychiatric treatment.

56.     During his inpatient treatment at SYMHS, Defendant BARNETT and other SYMHS staff evaluated and treated Rodney Bock, identifying serious psychiatric diagnoses, including:  Bipolar I Disorder, Most Recent Episode Manic, Severe with Psychotic Features; Alcohol Dependence; and Cannabis Dependence.  An SYMHS Inpatient Services Interdisciplinary Treatment Team documented staff members' recommendation that Rodney Bock be provided a "supportive therapeutic milieu" to treat his psychiatric condition.

57.     Defendants did not provide a CT scan, MRI, or any other diagnostic assessment or treatment related to the reported head trauma suffered by Rodney Bock.

58.     At the time of his discharge on or about December 17, 2009, after approximately two and one half weeks of intensive treatment, Rodney Bock's psychiatric condition and level of functioning remained extremely precarious.  According to the SYMHS discharge summary, signed by Defendant BARNETT, Defendant BARNETT was to continue to provide psychiatric treatment to Rodney Bock.

**January-February 2010 Mental Health Problems and Inpatient Treatment**

59.     On or about January 14, 2010, Rodney Bock again became delusional and paranoid, this time acting out at a local Applebee's restaurant.  He carried a gun into the restaurant, where he asked for something to eat and then made several erratic statements.  He was arrested by police and taken by Sutter County Sheriff's Department to Sutter County Jail.  Criminal charges were filed against Rodney based on this incident.

60.     On or about January 15, 2010, Rodney Bock was held at Sutter County Jail while continuing to manifest his unstable mental health condition.  Custody staff completed Rodney Bock's Inmate Medical Screening Form.  Defendants failed to properly assess or document

13

[479781-1]

Rodney Bock's medication needs and his risk for violence and/or suicide on the Inmate Medical Screening Form.

61. On or about January 15, 2010, without appropriate supervision and protection by Defendants as warranted in light of Rodney Bock's deteriorated psychiatric condition, Rodney Bock was attacked, punched, and physically beaten by another inmate at Sutter County Jail, causing serious injuries to his face and body.

62. On or about January 15, 2010, Rodney Bock was referred to SYMHS for a psychiatric evaluation. SYMHS staff completed a "Jail Outreach" evaluation, documenting Rodney Bock's psychiatric history, including his delusions that he was being directed by God.

63. Rodney Bock was subsequently released from custody on bail.

64. On or about January 25, 2010, Rodney Bock's close friends and family became alarmed by his delusional and paranoid behaviors.  They observed him making irrational statements, including that people were going to "get him."  Rodney Bock's family again sought psychiatric treatment for Rodney.  Sutter County Sheriff's Department brought Rodney Bock to the SYMHS Psychiatric Health Facility, where he was admitted on a 72-hour hold for evaluation and treatment pursuant to Cal. Welf. & Inst. Code § 5150 based on a finding that he was a danger to others, or to himself, or was a gravely disabled adult.

65. Following his 72-hour hold, Rodney Bock was certified pursuant to Cal. Welf. & Inst. Code § 5250 to remain at SYMHS Psychiatric Health Facility for an additional 14 days of involuntary hospitalization, based on a finding that he was a danger to others, or to himself, or was gravely disabled, as a result of a mental disorder or impairment requiring continued intensive psychiatric treatment.

66. During his inpatient treatment at SYMHS Psychiatric Health Facility, Defendants BARNETT and MEER, and other SYMHS staff, evaluated and treated Rodney Bock.

67. Defendant BARNETT and other SYMHS staff confirmed and documented Rodney Bock's serious psychiatric diagnoses, including:  Bipolar I Disorder, Most Recent Episode Manic, Severe with Psychotic Features; Alcohol Dependence; and Cannabis Dependence.  An SYMHS Inpatient Services Interdisciplinary Treatment Team documented its recommendation

14

[479781-1]

that Rodney Bock be provided a "safe, secure milieu and appropriate level of observation" to treat his psychiatric condition, including his potential to harm others and his ongoing delusions. Defendant BARNETT and other SYMHS staff found him to be "delusional, grandiose, hyperreligious (being 'led by God')," "quite psychotic/manic," and demonstrating "markedly impaired" insight and judgment.  Defendants documented that Rodney Bock was to receive fifteen-minute safety checks and daily treatment.

68.     Defendant BARNETT documented that Rodney Bock may have "need[ed] CT Scan of head [prior to discharge] (will rec[ommend] that) considering [history] of head injuries." Defendants never ordered or provided this essential diagnostic testing for Rodney Bock.

69.     On or about February 12, 2010, Rodney Bock was discharged from SYMHS Psychiatric Health Facility.  Although his functioning had somewhat improved during the approximately two and a half weeks of treatment, he continued to suffer from serious psychiatric problems, including delusions and impaired insight and judgment, all of which jeopardized his well being and safety.  Defendant BARNETT found that Rodney Bock "still remain[ed] somewhat delusional concerning being driven by God."

70.     Defendants BARNETT and MEER, and other SYMHS staff, were to continue to provide treatment to Rodney Bock following discharge, including scheduled psychiatric appointments.

**Court-Ordered Evaluations to Determine Rodney Bock's Competency**

71.     In light of Rodney Bock's serious and ongoing psychiatric problems, the court presiding over the pending criminal complaint against Rodney expressed concern about Rodney's mental competency to stand trial.  On or about January 27, 2010, the Honorable H. Ted Hanson of Sutter County Superior Court ordered that Rodney Bock undergo a psychological evaluation to assist in a determination of whether he was competent to stand trial.

72.     On February 22, 2010, Dr. Deborah Schmidt, Ph.D. conducted the court-ordered psychological evaluation of Rodney Bock.  Dr. Schmidt's findings make clear that Rodney Bock suffered serious psychiatric impairments, including an active delusional, paranoid, and psychotic state, emotional instability, and high levels of agitation and excitability.  Dr. Schmidt concluded

15

[479781-1]

that Rodney Bock's highly unstable psychiatric condition made him incompetent to stand trial.
Dr. Schmidt concluded that Rodney Bock required further psychiatric assessment and more
intensive treatment.

73.     On or about March 1, 2010, the Hon. Brian R. Aronson of Sutter County Superior
Court ordered a placement evaluation of Rodney Bock pursuant to California Penal Code § 1370.

74.     Dr. Rick Bingham, the Community Program Director for the Sutter-Yuba
Conditional Release Program, completed the court-ordered placement evaluation.  On or about
March 22, 2010, Dr. Bingham documented Rodney Bock's history of experiencing manic
episodes of Bipolar Disorder, his delusions of a special relationship with Rush Limbaugh and of
receiving messages from God directing his actions, and his history of alcohol and cannabis
dependence.  Dr. Bingham recommended that Rodney Bock be placed on outpatient status.  Dr.
Bingham scheduled an appointment with Rodney Bock for March 30, 2010.

75.     On or about March 25, 2010, Rodney Bock attended his scheduled psychiatric
appointment with Defendant MEER.  Defendant MEER documented Rodney Bock's delusions
regarding speaking with God and doing "what God wants him to do."  Defendant MEER
documented a plan to follow up with Rodney Bock.

**March-April 2010 Mental Health Crisis and Inpatient Treatment**

76.     Around the time of Dr. Bingham's report, Rodney Bock began to experience
paranoia and delusions.  Based on delusional beliefs that God was directing him and that he
needed to meet with Rush Limbaugh, Rodney Bock abruptly drove to his nephew's home in
Idaho.  He expressed beliefs that the FBI was following him, that he was openly and actively
communicating with God and Rush Limbaugh, that he was going to travel somewhere with Rush
Limbaugh by helicopter, and that he was "The Avenger" and would kill someone if God directed
to do so.

77.     Because of his psychiatric deterioration and the resultant trip to Idaho, Rodney
Bock missed a March 29, 2010 court date.  A warrant was issued based on this missed court date.

78.     On or about March 29, 2010, Dr. Bingham sent another letter to the court, stating
that he "wishe[d] to retract his recommendations" with respect to the appropriateness of

outpatient treatment for Rodney Bock, as contained in the March 22, 2010 placement evaluation report.

79.     Recognizing his uncle's severe decompensation and highly unstable psychiatric state, Rodney Bock's nephew brought Rodney Bock back from Idaho to California on or about April 1, 2010.  Rodney Bock's family returned Rodney to SYMHS Psychiatric Health Facility, where he was admitted for a 72-hour period of treatment and evaluation pursuant to Cal. Welf. & Inst. Code § 5150.

**Premature and Improper Discharge from Involuntary Hospitalization**

80.     Upon his admission to SYMHS Psychiatric Health Facility on April 1, 2010, psychiatric staff identified Rodney Bock's highly unstable psychiatric condition as well as his need for a safe and structured therapeutic setting, including but not limited to inpatient hospitalization.

81.     By this time, based on his recent psychotic episodes and repeated admissions and hospitalizations at SYMHS, Rodney Bock's mental health problems were widely known by SYMHS clinical, administrative, and supervisory staff.

82.     On or about April 1, 2010, an SYMHS Inpatient Services Interdisciplinary Treatment Team confirmed Rodney Bock's diagnosis of Bipolar I Disorder, Manic with Severe Psychotic Features, and recommended necessary interventions that included provision of a "safe and structured milieu," "redirection as required [and] oberserv[ation] for safety," and "[group] participation" in activities.  The Interdisciplinary Treatment Team further documented Rodney Bock's need for a "state hospital placement."

83.     Yet, on April 2, 2010, barely 24 hours after his admission at SYMHS Psychiatric Health Facility for a 72-hour period of treatment and evaluation pursuant to Cal. Welf. & Inst. Code § 5150, Defendants discharged Rodney Bock, transferred him to the custody of the Sutter County Sheriff's Department, and placed him at Sutter County Jail.

84.     Defendants completed this premature and improper transfer of custody with knowledge of Rodney Bock's clear and urgent need for a safe, structured, and intensive inpatient treatment setting.

17

[479781-1]

85.     Defendants' transfer of Rodney Bock from SYMHS Psychiatric Health Facility to the Sutter County Sheriff's Department violated the statutory requirement, as provided in Cal. Welf. & Inst. Code § 5152(a), that Rodney Bock "receive whatever treatment and care his … condition requires for the **full period** that he … is held" pursuant to § 5150, and that he "be released before 72 hours have elapsed **only if** the psychiatrist directly responsible for the person's treatment believes, as a result of the psychiatrist's personal observations, that [he] no longer requires evaluation or treatment" (emphasis added).  Defendants completed Rodney Bock's premature transfer to Sutter County Jail without any finding that he no longer required evaluation or treatment.  To the contrary, Rodney Bock clearly required structured inpatient psychiatric treatment.  As discussed below, Defendants failed to provide such evaluation and treatment at Sutter County Jail in the weeks leading up to Rodney Bock's suicide.

86.     At the time of Rodney Bock's discharge on April 2, 2010, Defendant BARNETT and other SYMHS staff provided a wholly inadequate treatment plan, stating that the plan was for "law enforcement to come and serve the warrant and arrest [him] and take him to jail for further Tx [treatment] there," including "further psychiatric treatment with the jail psychiatrist." Defendant BARNETT documented that Rodney Bock was "telling everyone on the unit about his delusions of the 'end times'" prior to his discharge.  Defendant BARNETT documented that Rodney Bock "remained quite manic and psychotic," "was quite grandiose and delusional with flight of ideas and quite focused on hyper-religious content," and demonstrated "markedly impaired" insight and judgment.  Defendants provided a discharge plan that included no more than that SYMHS staff would "[f]ollow-up with the Sutter County Jail psychiatric services."

87.     SYMHS is responsible for the provision of mental health evaluation, treatment, and related services to prisoners at Sutter County Jail.  Defendants SHERRY, BHATTAL, and LUZ, as well as SYMHS clinical staff, were aware of their legal duties to ensure the provision of constitutionally adequate mental health care to Sutter County Jail prisoners suffering from mental illness.

88.     Defendants PARKER, SHERRY, BHATTAL, and LUZ, as well as SYMHS and Sutter County Jail staff responsible for providing care and ensuring the safety of Sutter County

[479781-1]

1   Jail prisoners, were on notice of constitutional requirements for the provision of mental health

2   care to prisoners by virtue of the well publicized decision in *Coleman v. Wilson*, 912 F. Supp.

3   1282 (E.D. Cal. 1995), and subsequent orders in the *Coleman* litigation, which describe in detail

4   the essential components of constitutionally adequate mental health care in California state

5   prisons, including appropriate staffing, provision of services, supervision, and suicide prevention

6   procedures.  Defendants, knowing that such constitutional obligations also apply with respect to

7   the treatment of county jail prisoners, failed to take steps to provide constitutionally mandated

8   mental health care and to prevent the foreseeable harm suffered by Rodney Bock.

9        89.     In blatant disregard for Rodney Bock's continued need for intensive inpatient

10   psychiatric treatment, Defendants failed to create or implement anything resembling an adequate

11   plan for providing the psychiatric treatment Rodney Bock desperately needed.  Defendants knew

12   that Sutter County Jail could not, and would not, provide the necessary and appropriate

13   placement and treatment that Rodney Bock required, and failed to take steps to prevent the

14   constitutional violations and foreseeable harm suffered by Rodney Bock.

15        **Deliberately Indifferent Treatment and Failure to Admit at DMH**

16        90.     From April 2, 2010 until April 29, 2010, Defendants held Rodney Bock at Sutter

17   County Jail as a pretrial detained prisoner.  During this time period, Defendants failed to provide

18   adequate evaluation, supervision, and treatment, even as Rodney Bock's mental health condition

19   deteriorated dramatically and a court ordered that Rodney Bock be placed at a state hospital for

20   inpatient treatment.

21        91.     Sutter County's main jail, where Rodney Bock was held in custody, has a prisoner

22   capacity of approximately 200 prisoners.  Sutter County Jail staff and supervisors, including

23   Defendant Sheriff PARKER have, or reasonably should have, knowledge of all prisoners in

24   Sutter County Jail, and especially those prisoners manifesting psychotic behaviors, at any given

25   time.

26        92.     Written reports of all incidents, either major or minor, relating to prisoners and the

27   operations of Sutter County Jail, must be delivered to jail administrative staff, including

28

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND
STATE LAW - NO. CIV

[479781-1]

Defendant PARKER as Sheriff.  Pursuant to Sutter County Jail policy, Defendant PARKER is to receive notice of all such incidents through the chain of command.

93.     Upon Rodney's arrival at Sutter County Jail, Custody staff completed Rodney Bock's Inmate Medical Screening Form.  Defendants failed to properly assess or document Rodney Bock's medication needs and his risk for suicide on the Inmate Medical Screening Form.

94.     On April 2, 2010, Defendant ZIL, who was to provide essential mental health treatment to Rodney Bock at Sutter County Jail, communicated to a jail nurse, over the phone and without any in-person assessment, that Rodney Bock was to continue his current medication regimen.

95.     On or about April 4, 2010, SYMHS and/or Sutter County Sheriff's Department staff documented Rodney Bock's continued delusions and the need for a psychiatric doctor to complete "further review."

96.     Defendant ZIL provided a single in-person psychiatric meeting with Rodney Bock, on or about April 8, 2010, a full six days after Rodney Bock was transferred to Sutter County Jail.  Defendant ZIL failed to provide or ensure adequate assessment and treatment for Rodney Bock.  Despite readily apparent psychiatric decompensation, no other in-person assessment or treatment was provided to Rodney Bock by appropriate mental health specialists between the time of his transfer to Sutter County Jail on April 2, 2010, and his suicide on April 29, 2010.

97.     On or about April 12, 2010, Judge Aronson requested that Dr. Bingham provide a revised placement recommendation for Rodney Bock.  On or about April 13, 2010, Dr. Bingham recommended that Rodney Bock be placed at Napa State Hospital for inpatient treatment.

98.     On or about April 19, 2010, Judge Aronson held a hearing regarding Rodney Bock's competency.  Judge Aronson found that Rodney Bock was incompetent to stand trial, ordered that criminal proceedings against Rodney Bock remain suspended, and ordered that Rodney Bock be transferred to the custody of Napa State Hospital, which is operated by DMH.

99.     Defendant PARKER, in his role as Sutter County Sheriff, has the statutory duty to be informed of any Sutter County Jail inmate that has been found mentally incompetent and has been ordered transferred to a state hospital.  Pursuant to Calif. Penal Code § 1370, it is the

20

1  sheriff's duty to be informed about any order on a prisoner's lack of mental competency and state

2  hospital placement, and to complete the delivery of that prisoner to the state hospital.

3      100.   Defendants failed to complete this court-ordered transfer of Rodney Bock to Napa

4  State Hospital.  Defendants DMH, ALLENBY, and MATTEUCCI, failed to admit Rodney Bock

5  as a patient at Napa State Hospital on a timely basis, failed to provide him appropriate treatment,

6  failed to protect him from harm, and failed to ensure that he was timely placed in an appropriate

7  treatment facility.

8      101.   Defendant DMH has a practice of unreasonably delaying timely transfer of

9  mentally ill patients placed at DMH facilities, including Napa State Hospital, pursuant to Calif.

10  Penal Code § 1370, and/or unreasonably delaying timely admission of such mentally ill patients

11  to DMH facilities, including Napa State Hospital.

12      102.   Mentally ill individuals found incompetent to stand trial and ordered placed in a

13  state hospital operated by DMH have customarily been made to linger for several months in

14  inappropriate and dangerous jail settings, based on an inadequate supply of inpatient beds, long

15  waitlists, and other state failures.

16      103.   Defendants instead continued to hold Rodney Bock at Sutter County Jail and to

17  deny him desperately needed psychiatric and medical treatment.

18      104.   Defendants ignored an Inmate Request Form, dated April 7, 2011 and completed

19  by Rodney Bock, in which Rodney stated that his housing location was "Soon to be Hell!," a

20  clear cry for help.

21      105.   By April 24, 2010, Rodney Bock's condition had deteriorated to an alarming level,

22  with SYMHS and/or Sutter County Sheriff's Department staff reporting that he was unstable,

23  unkempt, talking to himself and to inanimate objects including a sheet of paper, and refusing to

24  take medications.  Still, no clinician evaluated or provided treatment of any kind to Rodney

25  Bock.

26      106.   Rodney Bock's family members, including KIMBERLY BOCK, KELLIE BOCK,

27  HILLARY BOCK, LAURA LYNN BOCK, and ROBERT BOCK, visited him regularly at Sutter

28  County Jail.  They observed Rodney's substantial physical and psychiatric deterioration.  They

21

[479781-1]

observed that SYMHS and jail staff demonstrated little to no concern about Rodney's worsening condition.

107.   On April 26, 2010, family members visited Rodney Bock at Sutter County Jail observed him in a crisis-level condition.  His physical appearance was severely deteriorated: he was unshaven, with bags under his eyes, and was visibly exhausted.  He also demonstrated highly delusional and paranoid behaviors, making statements relating to his need to die. Rodney's family members were deeply distressed.

108.   In spite of Rodney Bock's continued decompensation and grave psychiatric condition, Defendants failed to evaluate Rodney Bock and, in spite of a clinically-based placement recommendation and a court order, failed to transfer Rodney to an appropriate facility for desperately needed inpatient psychiatric care.

109.   Between the time of his transfer to Sutter County Jail on April 2, 2010, and his suicide on April 29, 2010, Defendants failed to complete an appropriate medication assessment for Rodney Bock, failed to provide a diagnostic assessment for Rodney Bock's reported head trauma, and failed to ensure that Rodney Bock received his prescription medications, despite his manifest and seriously deteriorated mental state, which included active delusions and paranoid behaviors, his talking to himself and to inanimate objects, his stated refusal to take his prescribed medication, his deteriorated physical appearance, and his statements relating to his need to die.

110.   During his incarceration at Sutter County Jail, Rodney Bock began refusing his medication.  Defendants failed to take appropriate steps to provide necessary assessment or treatment, or to ensure that Rodney Bock ingested his needed medication, even as his psychiatric condition visibly worsened.

111.   Defendants failed to complete an appropriate suicide assessment for Rodney Bock between the time of his transfer to Sutter County Jail on April 2, 2010, and his suicide on April 29, 2010, despite his seriously deteriorated mental state and expressions of suicidal thoughts.

112.   Rodney Bock's deteriorated mental state resulted from and was greatly exacerbated by Defendants' deliberately indifferent denial of psychiatric assessment and treatment, wholly inadequate medication management, and the grossly improper placement in a non-therapeutic jail

22

[479781-1]

environment rather than the inpatient hospitalization recommended by clinicians and ordered by a court.

113.    Between the time of his transfer to Sutter County Jail on April 2, 2010, and his suicide on April 29, 2010, Rodney Bock was placed in a cell at Sutter County Jail that was inappropriate for a person in his unstable condition and in need of inpatient psychiatric care. Upon information and belief, the cell was located in a corner of the jail where there was an insufficient line of vision to monitor Rodney Bock's severe and deteriorating psychiatric condition.  Officers and other staff were unable to hear sounds and noises coming from Rodney Bock's cell given its location and the general ambient noises in the jail.

114.    Defendants, as a result of their own deliberate indifference, negligence, and insufficient training and supervision, failed to follow the Sutter County Jail's own written policies and procedures, which provided that "Inmates with suspected mental disorders, who are a potential danger to themselves or others or appear to be gravely disabled shall be promptly evaluated and, if clinically indicated, transferred to an appropriate psychiatric treatment facility.…  Regardless of the time of presentation, significantly disordered behavior should be evaluated promptly, within twenty-four hours at the latest.  The Jail Lieutenant or Jail Facility Manager will be contacted and will make every effort to transfer mentally disordered inmates to appropriate treatment facilities.  All attempts and efforts to implement the transfer of such inmates, whether successful or not shall be documented."

115.    On or about April 28, 2010, Defendant MEER failed to meet with Rodney Bock in spite of a scheduled follow-up psychiatric appointment.

116.    On or about April 29, 2010, Rodney Bock again refused his medication, stating to staff members "I don't take meds."  Shortly thereafter, as a proximate result of his deteriorated and untreated psychiatric condition, of which Defendants were aware, Rodney Bock engaged in extensive and violent behaviors in his cell, causing massive injuries, including significant bleeding and hemorrhaging on his face, several parts of his head, and throughout his body.

117.    On April 29, 2010, using items in his cell that should not have been present in the cell of a person manifesting Rodney Bock's decompensated psychiatric condition, including

23

[479781-1]

clothing that could be fashioned into a noose and affixed to dangerous attachment points on the upper portion of the cell's bunk bed, Rodney Bock hanged himself.

118.   Defendants failed to provide adequate supervision and checks to monitor Rodney Bock's condition and safety.  In spite of what was clearly a violent and psychotic episode, Defendants failed to timely respond to provide emergency treatment and care.  A staff member finally discovered Rodney Bock's body hanging from the upper bunk bed in his cell.  By that time, substantial amounts of Rodney's blood covered the floor and walls of his cell.

119.   Defendants, as a result of their own deliberate indifference, negligence and inadequate training and supervision to render psychiatric and medical treatment to severely mentally disabled patients such as Rodney Bock, failed to timely respond and provide life-saving intervention or treatment.

120.   Rodney Bock died in his cell on the evening of April 29, 2010, at the age of 56.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**Cruel and Unusual Punishment in Violation of the Fourteenth Amendment to
the Constitution of the United States – Deliberate Indifference to Serious
Medical Needs, Health and Safety
(Survival Action – 42 U.S.C. Section 1983)
(Against Defendants COUNTY OF SUTTER, COUNTY OF YUBA,
J. PAUL PARKER, TOM SHERRY, AMERJIT BHATTAL, BRAD LUZ,
JOHN S. ZIL, CHRISTOPHER BARNETT, SADOUTOUNNISSA MEER,
and DOES I through XL)**

121.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

122.   Defendants knew that there was a strong likelihood that Rodney Bock was in danger of serious personal harm, and that he would try to harm himself, because:

a.   Rodney Bock had a substantial history of serious mental illness, and had been transported and treated by Defendants in light of mental health crises on multiple occasions in the approximately six months prior to his death;

b.   Defendants completed and possessed psychiatric reports stemming from Rodney Bock's intensive inpatient treatment at SYMHS, documenting Rodney Bock's serious

[479781-1]

psychiatric diagnoses, his psychotic and delusional behavior, and a family history that included at least one completed suicide;

   c. Defendants possessed the psychiatric evaluation report of Rodney Bock, which was completed by Dr. Deborah Schmidt, Ph.D. pursuant to a court order, and which concluded that Rodney Bock was suffering serious psychiatric impairments, including an active delusional, paranoid, and psychotic state, emotional instability, and high levels of agitation and excitability, that he was incompetent to stand trial, and that he required further assessment and treatment;

   d. Dr. Bingham, after rescinding a recommendation that outpatient psychiatric treatment was appropriate for Rodney Bock, recommended that Rodney Bock be placed at Napa State Hospital for inpatient treatment;

   e. A court order was issued finding that Rodney Bock was incompetent to stand trial pursuant to Calif. Penal Code § 1370;

   f. A court order was issued finding that criminal proceedings against Rodney Bock should remain suspended, and directing that Rodney Bock be transferred by the Sutter County Sheriff's Department to Napa State Hospital, a DMH facility;

   g. An SYMHS Inpatient Services Interdisciplinary Treatment Team found, on multiple occasions, that Rodney Bock required a "supportive therapeutic milieu," a "safe, secure milieu and appropriate level of observation," and/or a "state hospital placement" for inpatient psychiatric treatment;

   h. Defendants knowingly discharged Rodney Bock from SYMHS on April 2, 2010, prior to completion of the period for which Rodney Bock was admitted pursuant to Cal. Welf. & Inst. Code § 5150, without a psychiatrist finding, based on personal observation, that Rodney Bock no longer required evaluation or treatment;

   i. Defendant BARNETT observed and documented that Rodney Bock "remained quite manic and psychotic," with delusions and "markedly impaired" insight and judgment, at the time of his discharge from SYMHS and transfer to Sutter County Jail on April 2, 2010;

[479781-1]

j.       Defendants transferred Rodney Bock to Sutter County Jail knowing that they were discharging a severely psychotic and unstable patient to a placement where he would receive little to none of the mental health care he desperately required;

k.       Defendants prepared a grossly inadequate treatment plan for Rodney Bock upon his April 2, 2010 discharge, knowing that Sutter County Jail could not, and would not, provide necessary and appropriate psychiatric placement and treatment to Rodney Bock;

l.       Defendant ZIL and other SYMHS and Sutter County Jail staff provided grossly inadequate mental health assessment and treatment during the twenty-seven (27) days that Rodney Bock was held at Sutter County Jail, even as SYMHS and/or Sutter County Sheriff's Department staff documented Rodney Bock's substantial decompensation at Sutter County Jail;

m.       Defendant MEER observed and documented Rodney Bock's delusions and other mental health problems, but failed to keep a psychiatric appointment the day prior to Rodney Bock's suicide, and failed to otherwise follow up with or provide essential treatment to Rodney Bock;

n.       Family members and friends of Rodney Bock communicated to Defendants their serious concerns about his mental health impairments and the related effects on his behavior and threats to his personal safety and the safety of others;

o.       Defendants were aware of and documented Rodney's Bock's history of recent head trauma, but failed to provide a CT scan, MRI, or any other diagnostic assessment or treatment related to the reported head trauma;

p.       SYMHS and/or Sutter County Sheriff's Department staff observed and documented that Rodney Bock had decompensated substantially in the days before his suicide – including his deteriorated physical appearance, psychotic behavior, and his writing on a jail Inmate Request Form that his housing location was "Soon to be hell!" – but failed to provide appropriate assessment, supervision, and treatment to prevent him from harming himself;

q.       Defendants did not take steps to ensure that Rodney Bock was receiving and ingesting appropriate medications;

[479781-1]

r.     Defendants provided inadequate safety checks, supervision, and monitoring to ensure Rodney Bock's safety and well being in his cell at Sutter County Jail;

s.     Defendants placed Rodney Bock in a cell located in a corner of Sutter County Jail where there was an insufficient line of vision and/or insufficient ability to hear sounds and noises coming from the cell, such that they were unable to provide adequate supervision and monitoring of Rodney Bock's severe and deteriorating psychiatric condition; and

t.     Defendants did not remove items from Rodney Bock's cell that could be used for him to commit suicide.

123.     Defendants failed to provide necessary mental health evaluation and treatment and adequate supervision for Rodney Bock while he was placed at SYMHS and Sutter County Jail, and failed to ensure necessary continuation of care despite his obvious psychotic state, high risk of harming himself, and need for inpatient psychiatric treatment, as determined following a psychiatric evaluation and as ordered by a court.

124.     Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to provide Rodney Bock with medical or psychiatric care and/or to take other measures to protect him from physical harm and to prevent his attempting suicide after notice of his psychiatric condition, along with the acts and/or omissions of the Defendants in failing to train, supervise and/or promulgate appropriate policies and procedures at Sutter County Jail in order to prevent Rodney Bock's and other inmate suicides, constituted deliberate indifference to Rodney Bock's serious medical needs, health and safety.

125.     As a direct and proximate result of Defendants' conduct, Rodney Bock experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

126.     The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW - NO. CIV

[479781-1]

**SECOND CLAIM FOR RELIEF**
**Municipal Liability for in Violation of the Fourteenth Amendment to the**
**Constitution of the United States**
**(Survival Action - 42 U.S.C. Section 1983)**
**(Against Defendants COUNTY OF SUTTER, COUNTY OF YUBA)**

127.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

128.   The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Rodney Bock's serious medical needs, health and safety and violating Rodney Bock's civil rights were the direct and proximate result of customs, practices and policies of Defendants COUNTY OF SUTTER and COUNTY OF YUBA, by and through their agencies, employees and/or agents, as alleged herein.

129.   Such policies, customs and/or practices include but are not limited to an ongoing pattern of deliberate indifference to: the mental health needs and safety of SYMHS patients and Sutter County Jail inmates; the failure to conduct appropriate psychiatric assessments; the failure to create and implement appropriate mental health treatment plans; the failure to follow judgments and recommendations based on psychiatrists' professional judgment regarding treatment, placement, and supervision; the failure to follow a court's order to transfer a psychiatrically unstable individual to a DMH facility for inpatient treatment; the failure to provide continued mental health care and supervision for patients released from inpatient SYMHS care; the failure to promptly evaluate and transfer to an appropriate psychiatric treatment facility jail inmates who are a potential danger to themselves or others or are gravely disabled; and the failure to take precautions to prevent suicide among high risk and mentally ill inmates.

130.   Defendants COUNTY OF SUTTER and COUNTY OF YUBA tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of constitutional rights.

131.   The customs, policies and/or practices of Defendants COUNTY OF SUTTER and COUNTY OF YUBA were a direct and proximate cause of Plaintiffs' injuries and the death of the Rodney Bock in that Defendants COUNTY OF SUTTER and COUNTY OF YUBA failed to

28

[479781-1]

1   adequately train and supervise their employees and/or agents to prevent the occurrence of the

2   constitutional violations suffered by Plaintiffs and Rodney Bock, and by other inmates at Sutter

3   County Jail.  Defendants COUNTY OF SUTTER and COUNTY OF YUBA also failed to

4   promulgate appropriate policies or procedures or take other measures to prevent the

5   constitutional violations suffered by Plaintiffs and Rodney Bock, and by other inmates at Sutter

6   County Jail.

7   132.   As a direct and proximate result of the aforementioned customs, policies and/or

8   practices of Defendants COUNTY OF SUTTER and COUNTY OF YUBA, Rodney Bock and

9   Plaintiffs suffered injuries and damages as alleged herein.

**THIRD CLAIM FOR RELIEF**
**Supervisory Liability**
**(Survival Action – 42 U.S.C. Section 1983)**
**(Against Defendants J. PAUL PARKER, TOM SHERRY,**
**AMERJIT BHATTAL, BRAD LUZ, and DOES XXI through XL)**

13   133.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as

14   though fully set forth herein.

15   134.   The aforementioned acts and/or omissions of Defendants in being deliberatively

16   indifferent to Rodney Bock's serious medical needs, health and safety and violating decedent's

17   civil rights were the direct and proximate result of customs, practices and policies of Defendants

18   PARKER, SHERRY, BHATTAL, LUZ, and DOES XXI through XL as alleged herein.

19   135.   Such policies, customs and/or practices include but are not limited to an ongoing

20   pattern of deliberate indifference: the mental health needs and safety of SYMHS patients and

21   Sutter County Jail inmates; the failure to conduct appropriate psychiatric assessments; the failure

22   to create and implement appropriate mental health treatment plans; the failure to follow

23   judgments and recommendations based on psychiatrists' professional judgment regarding

24   treatment, placement, and supervision; the failure to follow a court's order to transfer a

25   psychiatrically unstable individual to a DMH facility for inpatient treatment; the failure to

26   provide continued mental health care and supervision for patients released from inpatient

27   SYMHS care; the failure to promptly evaluate and transfer to an appropriate psychiatric

28   treatment facility jail inmates who are a potential danger to themselves or others or are gravely

29

[479781-1]

1  disabled; and the failure to take precautions to prevent suicide among high risk and mentally ill

2  inmates.

3      136.    Defendants PARKER, SHERRY, BHATTAL, LUZ, and DOES XXI through XL

4  tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, and

5  knew that such conduct was unjustified and would result in violations of constitutional rights.

6      137.    The customs, policies and/or practices of said Defendants were a direct and

7  proximate cause of Plaintiffs' injuries and the death of the Rodney Bock in that Defendants

8  failed to adequately train and supervise their employees and/or agents to prevent the occurrence

9  of the constitutional violations suffered by Plaintiffs and Rodney Bock, and by other inmates at

10  Sutter County Jail.  Defendants also failed to promulgate appropriate policies or procedures or

11  take other measures to prevent the constitutional violations suffered by Plaintiffs and Rodney

12  Bock, and by other inmates at Sutter County Jail.

13      138.    As a direct and proximate result of the aforementioned customs, policies and/or

14  practices of Defendants, Rodney Bock and Plaintiffs suffered injuries and damages as alleged

15  herein.

16
**FOURTH CLAIM FOR RELIEF**
17  **Substantive Due Process in Violation of First and Fourteenth Amendments to**
   **the Constitution of the United States – Loss of Parent/Child Relationship**
18  **(42 U.S.C. Section 1983)**
   **(Against Defendants COUNTY OF SUTTER, COUNTY OF YUBA,**
19  **J. PAUL PARKER, TOM SHERRY, AMERJIT BHATTAL, BRAD LUZ,**
   **JOHN S. ZIL, CHRISTOPHER BARNETT, SADOUTOUNNISSA MEER,**
20  **and DOES I through XL)**

21      139.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as

22  though fully set forth herein.

23      140.    The aforementioned acts and/or omissions of Defendants in being deliberatively

24  indifferent to Rodney Bock's serious medical needs, health and safety and violating Rodney

25  Bock's civil rights and their failure to train, supervise and/or take other measures at SYMHS and

26  Sutter County Jail to prevent the conduct that caused the untimely and wrongful death of Rodney

27  Bock and deprived Plaintiffs KIMBERLY BOCK, KELLIE BOCK, HILLARY BOCK, M.B.,

28  LAURA LYNN BOCK, and ROBERT BOCK of their liberty interest in the parent-child

30

[479781-1]

relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution.

141.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein.

142.    The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiffs' rights, thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

**FIFTH CLAIM FOR RELIEF**
**Violations of Title II of the Americans with Disabilities Act, and**
**Section 504 of the Rehabilitation Act of 1973**
**(Against all Defendants)**

143.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

144.    The conduct of Defendants, as alleged herein, violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*, and the federal regulations promulgated pursuant thereto.

145.    At all times relevant to this action, the ADA, 42 U.S.C. § 12101 *et seq.*, was in full force and effect in the United States.

146.    Rodney Bock was a qualified individual with a disability, as that term is defined in Section 504 of the Rehabilitation Act, 29 U.S.C. § 705(20), and the ADA.

147.    The ADA, 42 U.S.C. § 12132, prohibits public entities from discriminating against a qualified individual with a disability in the provision of services, programs, or activities. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 prohibits any program or activity receiving federal financial assistance from denying a qualified individual with a disability the benefits of the program or activity or discriminating against the qualified individual with a disability because of the disability.

148.    Defendants COUNTY OF SUTTER, COUNTY OF YUBA, and DMH receive federal financial assistance as that term is used in 29 U.S.C. § 794.

31

[479781-1]

149.    Rodney Bock was discriminated against in the provision of appropriate institutional placement and medical and/or mental health services because of his disability, in that he was not placed in a setting, or provided appropriate services, to reasonably accommodate his disability and treatment needs.

150.    The aforementioned acts and/or omissions of Defendants PARKER, SHERRY, BHATTAL, LUZ, ALLENBY, MATTEUCCI, ZIL, BARNETT, MEER, and DOES I through XL, as alleged herein, were malicious, reckless and/or accomplished with a wanton or conscious disregard of Rodney Bock's and Plaintiffs' rights.

### SIXTH CLAIM FOR RELIEF
### Violations of the Unruh Civil Rights Act, Cal. Civ. Code § 51
### (Against Defendants COUNTY OF SUTTER and COUNTY OF YUBA)

151.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

152.    Rodney Bock was an individual protected under the Unruh Civil Rights Act as an individual with a mental disability.

153.    Rodney Bock was discriminated against in the provision of appropriate institutional placement and medical and/or mental health services because of his disability, in that he was not placed in a setting, or provided appropriate services, to reasonably accommodate his disability and treatment needs.

154.    The conduct of Defendants COUNTY OF SUTTER and COUNTY OF YUBA, by and through its agencies, employees and/or agents, previously alleged, violates the Unruh Civil Rights Act, specifically including California Civil Code Sections 51(f).

### SEVENTH CLAIM FOR RELIEF
### Professional Negligence/Medical Malpractice
### (Survival Actions – Cal. State Law)
### (Against Defendants COUNTY OF SUTTER, COUNTY OF YUBA,
### JOHN S. ZIL, CHRISTOPHER BARNETT, SADOUTOUNNISSA MEER,
### and DOES I through XL)

155.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

[479781-1]

156.    Defendant ZIL failed to comply with professional standards in the treatment of Rodney Bock's serious mental illness by failing to provide appropriate assessment and evaluation, failing to prescribe appropriate psychiatric medications, failing to ensure compliance with those medications, and failing to ensure appropriate treatment, including suicide precautions.

157.    Defendant BARNETT failed to comply with professional standards in the treatment of Rodney Bock's serious mental illness by failing to provide appropriate assessment and evaluation, failing to prescribe appropriate psychiatric medications, failing to ensure compliance with those medications, and failing to ensure appropriate treatment, including suicide precautions.  Defendant BARNETT also violated professional and legal standards by discharging Rodney Bock from SYMHS to Sutter County Jail in early April 2010 without finding that Rodney Bock no longer required evaluation or treatment, and without ensuring that appropriate treatment would be provided to Rodney Bock.

158.    Defendant MEER failed to comply with professional standards in the treatment of Rodney Bock's serious mental illness by failing to provide appropriate assessment and evaluation, failing to prescribe appropriate psychiatric medications, failing to ensure compliance with those medications, and failing to ensure appropriate treatment, including suicide precautions.

159.    As a direct and proximate cause of this negligence and failure to meet the professional standards of care, Rodney Bock and Plaintiffs suffered injuries and damages as alleged herein.

160.    The negligent conduct of Defendants was committed within the course and scope of their employment.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW - NO. CIV

[479781-1]

**EIGHTH CLAIM FOR RELIEF**
**Negligence/Negligence Per Se**
**(Survival Action – Cal. State Law)**
**(Against Defendants J. PAUL PARKER, TOM SHERRY,**
**AMERJIT BHATTAL, BRAD LUZ, JOHN S. ZIL, CHRISTOPHER**
**BARNETT, SADOUTOUNNISSA MEER, and DOES I through XL)**

161.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

162.   Defendants have a duty to operate and manage SYMHS facilities and the Sutter County Jail in a manner so as to prevent the acts and/or omissions as alleged herein.  This duty is defined by California state law, mental health standards, law enforcement standards and administrative regulations.

163.   Defendants breached their respective duties, and as a direct and proximate result, Rodney Bock and Plaintiffs suffered injuries and damages as alleged herein.

164.   The negligent conduct of Defendants was committed within the course and scope of their employment.

**NINTH CLAIM FOR RELIEF**
**Negligent Supervision, Training, Hiring and Retention**
**(Survival Action – Cal. State Law)**
**(Against Defendants J. PAUL PARKER, TOM SHERRY,**
**AMERJIT BHATTAL, BRAD LUZ, and DOES XXI through XL)**

165.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

166.   Defendants PARKER, SHERRY, BHATTAL, LUZ, and DOES XXI through XL have a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrain from the conduct alleged herein.

167.   Defendants breached this duty, causing the conduct alleged herein.  Such breach constituted negligent hiring, supervision, training and retention under the laws of the State of California.

168.   As a direct and proximate result of Defendants' breach, Rodney Bock and Plaintiffs suffered injuries and damages as alleged herein.

[479781-1]

169.    The negligent conduct of Defendants was committed within the course and scope of their employment.

**TENTH CLAIM FOR RELIEF**
**Failure to Furnish/Summon Medical Care**
**(Survival Action – Cal. State Law)**
**(Against Defendants J. PAUL PARKER, TOM SHERRY,**
**AMERJIT BHATTAL, BRAD LUZ, JOHN S. ZIL, CHRISTOPHER**
**BARNETT, SADOUTOUNNISSA MEER, and DOES I through XL)**

170.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

171.    The conduct of Defendants alleged herein, including but not limited to the facts that Defendants knew or had reason to know that Rodney Bock was in need of immediate medical and mental health care, and that Defendants failed to take reasonable action to summon such care or to provide that care, resulting in Rodney Bock's death as alleged herein, violated California state law, including California Government Code § 845.6.

172.    As a direct and proximate result of Defendants' breach, Rodney Bock and Plaintiffs suffered injuries and damages as alleged herein.

173.    The alleged conduct of Defendants was committed within the course and scope of their employment.

**ELEVENTH CLAIM FOR RELIEF**
**Wrongful Death, Cal. Code Civ. Proc. § 377.60**
**(Against Defendants COUNTY OF SUTTER, COUNTY OF YUBA,**
**J. PAUL PARKER, TOM SHERRY, AMERJIT BHATTAL, BRAD LUZ,**
**JOHN S. ZIL, CHRISTOPHER BARNETT, SADOUTOUNNISSA MEER,**
**and DOES I through XL)**

174.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 120, as though fully set forth herein.

175.    Rodney Bock's death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants.  Defendants' acts and/or omissions thus were also a direct and proximate cause of Plaintiffs' injuries and damages, as alleged herein.

[479781-1]

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2.     For damages related to loss of familial relations as to Plaintiffs KIMBERLY BOCK, KELLIE BOCK, HILLARY BOCK, M.B., LAURA LYNN BOCK, and ROBERT BOCK.

3.     For statutory treble damages pursuant to Cal. Civ. Code § 52(a);

4.     For punitive and exemplary damages against each individually named Defendant(s) in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

5.     For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), Cal. Civ. Code § 52(a), and as otherwise authorized by statute or law;

6.     For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.


Dated:  February 24, 2011                    Respectfully submitted,

                                             ROSEN, BIEN & GALVAN, LLP


                                             By:  */s/ Ernest Galvan*
                                                     ERNEST GALVAN

                                             LAW OFFICES OF GERI LYNN GREEN, LC


                                             By:  */s/ Geri Lynn Green*
                                                     GERI LYNN GREEN
                                                     Attorneys for Plaintiffs

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, AMERICANS WITH DISABILITIES ACT, SECTION 504, AND STATE LAW - NO. CIV

[479781-1]

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a jury trial.

3

4   Dated:  February 24, 2011                    Respectfully submitted,

5                                                ROSEN, BIEN & GALVAN, LLP

6

7                                                By:   */s/ Ernest Galvan*
                                                       ERNEST GALVAN

8                                                LAW OFFICES OF GERI LYNN GREEN, LC

9

10                                               By:   */s/ Geri Lynn Green*
                                                       GERI LYNN GREEN
11                                                     Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[479781-1]