UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK; HILLARY BOCK; M.B., minor through her mother and guardian ad litem Cyndie Denny Bock; LAURA LYNN BOCK; and ROBERT BOCK, | No. 2:11-cv-00536-MCE-GGH |

      Plaintiffs,

    v.                           <u>MEMORANDUM AND ORDER</u>

COUNTY OF SUTTER; COUNTY OF YUBA; J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; TOM SHERRY, Director of Human Services of Sutter and Yuba Counties; AMERJIT BHATTAL, Assistant Director of Human Services-Mental Health of Sutter and Yuba Counties; JOHN S. ZIL; CHRISTOPHER BARNETT; SADOUTOUNNISSA MEER; and Does I through XL, inclusive,

      Defendants.

----oo0oo----

///

///

1

1    This action for damages was initiated by the estate and

2  surviving family members of Rodney Louis Bock ("Decedent").

3  Plaintiffs Estate of Rodney Louis Bock, by and through Cyndie

4  Denny Bock, as administrator, Kimberly Bock, Kelly Bock, Hillary

5  Bock, M.B., a minor through her guardian ad litem Cyndie Denny

6  Bock, Laura Lynn Bock, and Robert Bock (collectively

7  "Plaintiffs") seek to recover from Defendants County of Sutter;

8  County of Yuba; J. Paul Parker, Sutter County Sheriff; Tom

9  Sherry, Director of Human Services of Sutter and Yuba Counties;

10  Amerjit Bhattal, Assistant Director of Human Services-Health

11  Division of Sutter and Yuba Counties; Brad Luz, Assistant

12  Director of Human Services-Mental Health of Sutter and Yuba

13  Counties; John S. Zil; Christopher Barnett; and Sadoutounnissa

14  Meer (collectively "Defendants") for injuries sustained as a

15  result of Decedent's suicide while incarcerated at Sutter County

16  Jail ("Jail").  Presently before the Court is Defendants' Motion

17  to Dismiss Plaintiffs' First Amended Complaint.  For the

18  following reasons, Defendants' Motion is GRANTED.[1]

19

20                            **BACKGROUND**[2]

21

22    Decedent was a self-employed farmer in Marysville, California,

23  for over 30 years.  In late 2009, he began experiencing mental

24  health issues and required psychiatric treatment.

25  _____

26  [1] Because oral argument will not be of material assistance, the
    Court ordered this matter submitted on the briefs.  E.D. Cal.
27  Local Rule 230(g).

28  [2] The following facts are derived from Plaintiffs' First Amended
    Complaint ("FAC").

On several occasions from 2009 through 2010, Decedent was involuntarily hospitalized pursuant to California Welfare & Institutions Code § 5150 at the Sutter-Yuba Mental Health Services facility ("SYMHS"),[3] which was operated and managed by Defendants County of Sutter and County of Yuba.

SYMHS provides a variety of mental health care services to adults residing in Sutter and Yuba counties and to inmates of the Jail.  Because SYMHS has only roughly sixteen inpatient beds, nine to eleven of which are typically filled at any one time, Plaintiffs believe SYMHS staff members personally know, or should know, all patients.

Decedent was first hospitalized at SYMHS on approximately November 30, 2009.  During that time, he was documented as psychotic, delusional and grandiose.  Defendant Barnett and other staff evaluated and treated Decedent and diagnosed him with, among other things, "Bipolar I Disorder, Most Recent Episode Manic, Severe with Psychotic Features."

On various occasions, Decedent did indeed exhibit delusional and paranoid behavior, and, eventually, on or around January 14, 2010, Decedent entered a restaurant with a gun and began making erratic statements.  As a result of that incident, Decedent was arrested, criminal charges were filed against him, and he was taken to the Jail.

///

///

---

[3] On two occasions, Decedent was involuntarily held for additional periods pursuant to California Welfare & Institutions Code § 5250.

1   According to Plaintiffs, the Jail has the capacity to house
2   approximately two-hundred prisoners, and, given its relatively
3   small size, Jail staff and supervisors must therefore have, or
4   reasonably should have, personal knowledge of all prisoners,
5   especially those exhibiting psychotic behaviors.

6   On January 15, 2010, while still housed at the Jail,
7   Decedent was referred to SYMHS for a psychiatric evaluation, at
8   which time SYMHS staff again documented his psychiatric history,
9   which included his history of delusions.  In addition, later in
10  January, after Decedent had been released from the Jail, he was
11  again treated at SYMHS, pursuant to one of the above-mentioned
12  involuntary holds, by Defendants Barnett and Meer and other
13  staff, some of whom confirmed Decedent's serious psychiatric
14  diagnoses and recommended 15-minute safety checks and daily
15  treatment.

16  Subsequently, on or around January 27, 2010, the Sutter
17  County Superior Court judge presiding over Decedent's then-
18  pending criminal case ordered Decedent to undergo a separate
19  psychological evaluation to determine whether he was competent to
20  stand trial.  The physician conducting that evaluation concluded
21  that Decedent's highly unstable psychiatric condition rendered
22  him incompetent to be tried.

23  Approximately one month later, on March 1, 2010, another
24  Sutter County Superior Court judge ordered a placement evaluation
25  of Decedent.  A different physician than the one who evaluated
26  Decedent's competency confirmed Decedent's psychiatric history
27  and recommended that Decedent receive outpatient treatment.
28  ///

4

1    Later, on March 25, 2010, Decedent attended a psychiatric
2  appointment with Defendant Meer, who documented that Decedent
3  remained delusional.
4    Sometime after this last appointment, Decedent, who still
5  continued to experience paranoia and delusions, began to believe
6  he was being "direct[ed]" to drive to his nephew's home in Idaho.
7  Decedent eventually followed that "direction" but was returned to
8  California by his nephew.  In the meantime, however, Decedent had
9  missed a court date and, as a result, a warrant had been issued
10 for his arrest.
11    Upon his return to California, Decedent was again taken to
12 SYMHS for evaluation and treatment.  SYMHS staff confirmed
13 Decedent's prior diagnosis of Bipolar I Disorder, Manic with
14 Severe Psychotic Features, and identified his need for inpatient
15 hospitalization or "state hospital placement."  Defendant Barnett
16 also documented that Decedent was sharing delusions of "end
17 times."
18    Notwithstanding these observations, on April 2, Defendants
19 discharged and transferred Decedent, pursuant to the pending
20 warrant, to the custody of Sutter County Sheriff's Department,
21 and he was again placed at the Jail.  According to Plaintiffs,
22 Defendants transferred Decedent to the Jail in contravention of
23 California Welfare & Institutions Code § 5152(a) and despite
24 their knowledge of Decedent's urgent need for inpatient care.
25 Plaintiffs also generally allege that, at the time of Decedent's
26 discharge, Defendant Barnett and SYMHS staff provided a wholly
27 inadequate treatment plan for Decedent.
28 ///

1    Plaintiffs nonetheless further aver that, on the day of
2    Decedent's transfer, Defendant Zil advised a Jail nurse that
3    Decedent was to continue taking his current medications.  Two
4    days later, SYMHS and/or Sutter County Sheriff's Department staff
5    documented Decedent's "continued delusions" and need for further
6    psychiatric review, and, on April 8, Defendant Zil personally met
7    with Decedent.

8    Also at around this same time, the physician who had
9    conducted Decedent's original court-ordered placement evaluation
10   sent a letter to the court retracting his outpatient treatment
11   recommendation.  Shortly thereafter, on April 19, the judge who
12   had ordered Decedent's placement evaluation found Decedent
13   incompetent to stand trial, suspended all pending proceedings,
14   and ordered that Decedent be transferred to Napa State Hospital
15   for treatment.  Defendant Parker, who as Sheriff was under a
16   statutory duty to ensure Decedent was transferred in accordance
17   with the Court's order, and all other Defendants, nonetheless
18   failed to transfer Decedent in accordance with that order.

19   By April 24, Decedent was unstable and unkempt, was talking
20   to himself and to inanimate objects and was refusing his
21   medication.  According to Plaintiffs, no further evaluation of
22   Decedent was conducted, however, nor was any further treatment
23   undertaken.  To the contrary, Defendant Meer, who was scheduled
24   to follow up with Decedent on April 28, failed to attend that
25   appointment.
26   ///
27   ///
28   ///

1   Plaintiffs thus allege Defendants failed to appropriately
2   assess and medicate Decedent upon his incarceration at the Jail.
3   More specifically, Plaintiffs allege Defendants failed to
4   appropriately assess Decedent's suicide risk.  Consequently, on
5   April 29, using items that Plaintiffs allege should not have been
6   permitted in Decedent's cell due to his psychiatric condition,
7   Decedent fashioned a noose and hanged himself from the upper
8   bunk.  When he was found, there were large amounts of blood
9   covering the cell floor and walls, apparently a result of
10  Decedent banging his head against the wall in a very violent
11  manner.  Decedent died in his cell.

12      By this suit, Plaintiffs now assert eleven causes of action
13  against Defendants arising out of Decedent's death.  Defendants
14  moved to dismiss each claim and to strike Plaintiffs' request for
15  punitive damages.  For the following reasons, Defendants' Motion
16  to Dismiss is GRANTED and Defendants' request to strike
17  Plaintiffs' prayer for punitive damages is DENIED as moot.

18

19                          **STANDARD**

20

21      Pursuant to Federal Rule of Civil Procedure 12(b)(6),[4] all
22  allegations of material fact must be accepted as true and
23  construed in the light most favorable to the nonmoving party.
24  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.
25  1996).
26  ///

27  ───────────────
28  [4] All further references to "Rule" or "Rules" are to the Federal
    Rules of Civil Procedure unless otherwise noted.

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the [...] claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2)... requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

1  Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at

2  § 1202).  A pleading must contain "only enough facts to state a

3  claim to relief that is plausible on its face."  Id. at 570.  If

4  the "plaintiffs ... have not nudged their claims across the line

5  from conceivable to plausible, their complaint must be

6  dismissed."  Id.  However, "[a] well-pleaded complaint may

7  proceed even if it strikes a savvy judge that actual proof of

8  those facts is improbable, and 'that a recovery is very remote

9  and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

10 232, 236 (1974)).

11      A court granting a motion to dismiss a complaint must then

12 decide whether to grant leave to amend.  Leave to amend should be

13 "freely given" where there is no "undue delay, bad faith or

14 dilatory motive on the part of the movant, ... undue prejudice to

15 the opposing party by virtue of allowance of the amendment, [or]

16 futility of the amendment ...."  Foman v. Davis, 371 U.S. 178,

17 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,

18 1052 (9th Cir. 2003) (listing the Foman factors as those to be

19 considered when deciding whether to grant leave to amend).  Not

20 all of these factors merit equal weight.  Rather, "the

21 consideration of prejudice to the opposing party ... carries the

22 greatest weight."  Eminence Capital, 316 F.3d at 1052 (citing DCD

23 Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).

24 Dismissal without leave to amend is proper only if it is clear

25 that "the complaint could not be saved by any amendment."

26 Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056

27 (9th Cir. 2007) (internal citations and quotations omitted).

28 ///

**ANALYSIS**

At the outset, the Court notes that Plaintiffs seek relief for the events that transpired from April 1 to April 29, 2010. See Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plt. Opp.") (ECF No. 16) at pg. 1.  In viewing the facts in the light most favorable to the non-moving party, however, Decedent's treatment at SYMHS prior to April 1, 2010, as well as other events leading up his detention in April 2010, are relevant to Plaintiffs' claims and will be considered herein.

**A.  Plaintiffs' First Through Third Causes of Action for Deliberate Indifference to Decedent's Serious Medical Needs.**

In their first through third causes of action, Plaintiffs seek relief under the Fourteenth Amendment for Defendants' alleged deliberate indifference to Decedent's serious medical needs.  The first cause of action is directed at all Defendants, while the second and third causes of action are asserted against the municipal and supervisory defendants, respectively.  The Court now addresses Plaintiffs' claims by category of Defendant.

**1.  Plaintiffs' First Cause of Action Alleged Against the Individual Defendants.**

According to Plaintiffs, Defendants Zil, Barnett, and Meer "knew there was a strong likelihood that [Decedent] was in danger of serious personal harm...," and their failure to provide mental heath care to him thus constituted deliberate indifference in violation of the Fourteenth Amendment.

10

1  Defendants argue that Plaintiffs failed to plead facts sufficient
2  to demonstrate Defendants Zil, Barnett and Meer's actions
3  violated Decedent's constitutional rights.

4       As opposed to prisoner claims under the Eighth Amendment, a
5  pretrial detainee is entitled to be free of cruel and unusual
6  punishment under the due process clause of the Fourteenth
7  Amendment.  Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979);
8  Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017-18 (9th Cir.
9  2010).  A pretrial detainee's due process right in this regard is
10 violated when a defendant fails to promptly and reasonably
11 procure competent medical aid when the pretrial detainee suffers
12 a serious illness or injury while confined.  Estelle v. Gamble,
13 429 U.S. 97, 104-05 (1976).  In order to establish a plausible
14 claim for failure to provide medical treatment, a plaintiff must
15 plead sufficient facts to permit the Court to infer that:
16 (1) Decedent had a "serious medical need"; and (2) a Defendant
17 was "deliberately indifferent" to that need.  Jett v. Penner,
18 439 F.3d 1091, 1096 (9th Cir. 2006); cf. Farmer v. Brennan,
19 511 U.S. 825, 834 (1994).  A serious medical need exists when
20 "failure to treat a prisoner's condition could result in further
21 significant injury or the unnecessary and wanton infliction of
22 pain."  Jett, 439 F.3d at 1096 (internal citations and quotations
23 omitted).
24 ///
25 ///
26 ///
27 ///
28 ///

1    The Supreme Court, in <u>Farmer</u>, explained in detail the
2  contours of the "deliberate indifference" standard.
3  Specifically, a Defendant is not liable under the Fourteenth
4  Amendment for his part in allegedly denying necessary medical
5  care unless he knew "of and disregard[ed] an excessive risk to
6  [Decedent's] health or safety." 511 U.S. at 837. Deliberate
7  indifference contains both an objective and subjective component:
8  "the official must both be aware of facts from which the
9  inference could be drawn that a substantial risk of serious harm
10  exists, and he must also draw that inference." <u>Id.</u> Plaintiffs
11  "need not show that a prison official acted or failed to act
12  believing that harm actually would befall an inmate; it is enough
13  that the official acted or failed to act despite his knowledge of
14  a substantial risk of serious harm." <u>Id.</u> at 842.

15    Negligence in diagnosing or treating a medical condition
16  does not, however, give rise to a claim under the Eighth
17  Amendment. <u>See Estelle</u>, 429 U.S. at 106. Moreover, a difference
18  of opinion between the prisoner and medical providers concerning
19  the appropriate course of treatment does not give rise to an
20  Eighth Amendment claim. <u>See Jackson v. McIntosh</u>, 90 F.3d 330,
21  332 (9th Cir. 1996).

22    In the FAC, Plaintiffs allege that Defendant Zil, a
23  psychiatrist contracted to provide care to SYMHS patients and
24  Sutter County Jail inmates, treated Decedent in November and
25  December of 2009, as well as in April 2010. On April 2, 2010,
26  Defendant Zil allegedly communicated with a nurse at SYMHS and
27  ordered that Decedent continue taking his currently prescribed
28  medications.

1   In addition, on April 8, Defendant Zil personally met with

2   Decedent.[5]  While Plaintiffs nonetheless claim that Defendant Zil

3   failed to adequately assess and treat Decedent, those conclusory

4   allegations are insufficient to state a claim for deliberate

5   indifference.  Indeed, Plaintiffs have directed most of their

6   allegations at "Defendants" generally, making it impossible to

7   discern which Defendants were responsible for which actions.

8        More to the point, Plaintiffs have not alleged any facts

9   indicating Defendant Zil, or any other Defendant for that matter,

10  actually had any indication Decedent might intend to cause harm

11  to himself.  For example, while Plaintiffs allege that Defendants

12  Barnett and Meer, both psychiatrists employed by SYHMS, evaluated

13  and treated Decedent prior to his April incarceration, Plaintiffs

14  fail to allege that either Defendant had contact with Decedent

15  during anytime in April 2010.  In addition, although Plaintiffs

16  allege that Defendant Meer missed an April 28, 2010, appointment

17  with Decedent, there are no facts pled demonstrating that

18  Defendant Meer had a "sufficiently culpable mind" in doing so.

19  See Farmer, 511 U.S. at 834.  Accordingly, while a failure to

20  treat Decedent's condition could potentially give rise to a

21  constitutional violation, Plaintiffs have not pled the requisite

22  facts relating to the individual Defendants.  Plaintiffs' first

23  cause of action directed at Defendants Zil, Barnett and Meer is

24  thus dismissed with leave to amend.

25  ///

26

27  [5] Plaintiffs have advised in their Opposition that they intend to
    amend their pleading based on newly discovered facts indicating
28  Defendant Zil never visited Decedent or provided any treatment at
    the jail.  Pls. Opp. 9 n.5.

1          **2.   Plaintiffs' First and Third Causes of Action
2               Alleged Against the Supervisory Defendants.**

3      In their first and third claims for relief, Plaintiffs

4  allege that Defendants Parker, Sherry, Bhattal and Luz are liable

5  for the deliberate indifference of other named Defendants because

6  the other Defendants' acts were a direct and proximate result of

7  customs, practices, and policies of these supervisory Defendants.

8  Defendants argue that Plaintiffs' claims against the supervisory

9  Defendants must be dismissed because Plaintiffs failed to

10 identify any pertinent policies or practices attributable to

11 Defendants Parker, Sherry, Bhattal and Luz and because Plaintiffs

12 improperly ascribe all purported failures very generally to the

13 Defendants as a group.

14      "In order for a person acting under color of state law to be

15 liable under section 1983 there must be a showing of personal

16 participation in the alleged rights deprivation: there is no

17 respondeat superior liability under section 1983." <u>Jones v.</u>

18 <u>Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  "Supervisory

19 liability is imposed against a supervisory official in his

20 individual capacity for his own culpable action or inaction in

21 the training, supervision, or control of his subordinates, for

22 his acquiescence in the constitutional deprivations of which the

23 complaint is made, or for conduct that showed a reckless or

24 callous indifference to the rights of others." <u>Menotti v. City</u>

25 <u>of Seattle</u>, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting <u>Larez v.</u>

26 <u>City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)).

27 ///

28 ///

14

1  In other words, each government official may only be held liable

2  for his own misconduct.  <u>Bowell v. Cal. Substance Abuse Treatment</u>

3  <u>Facility</u>, 2011 WL 2224817, at *4 (E.D. Cal. June 7, 2011).

4      However, government officials acting as supervisors may be

5  liable under § 1983 under certain circumstances.  A defendant may

6  be held liable as a supervisor under § 1983 if there exists

7  either: "(1) his or her personal involvement in the

8  Constitutional deprivation, or (2) a sufficient causal connection

9  between the supervisor's wrongful conduct and the constitutional

10  violation."  <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989).

11  Thus, Section 1983 actions against supervisors are proper as long

12  as a sufficient causal connection exists and the plaintiff was

13  deprived under color of law of a federally secured right.

14  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting

15  <u>Redman v. Cnty. of San Diego</u>, 942 F.2d 1435, 1447 (9th Cir.

16  1991)).

17      The requisite causal connection between a supervisor's

18  wrongful conduct and the violation of the prisoner's

19  constitutional rights can be established in a number of ways.

20  Plaintiffs may show that a supervisor set in motion a series of

21  acts by others, or knowingly refused to terminate a series of

22  acts by others, which the supervisor knew or reasonably should

23  have known would cause others to inflict a Constitutional injury.

24  <u>Dubner v. City of S.F.</u>, 266 F.3d 959, 968 (9th Cir. 2001).

25  Similarly, a supervisor's own culpable action or inaction in the

26  training, supervision, or control of his subordinates may

27  establish supervisory liability.  <u>Starr</u>, 652 F.3d at 1208.

28  ///

15

1   Finally, a supervisor's acquiescence in the alleged

2   constitutional deprivation, or conduct showing deliberate

3   indifference toward the possibility that deficient performance of

4   the task may violate the rights of others, may establish the

5   requisite causal connection.  Id.; Menotti, 409 F.3d at 1149.

6        Defendants correctly argue that, as with the individual

7   Defendants, Plaintiffs have failed to plead facts demonstrating

8   each supervisory Defendant's role in any alleged deprivation.[6]

9   Without some specific allegations against each named Defendant,

10  Plaintiffs' claims cannot withstand Defendants' Motion to

11  Dismiss.

12

13              **3.   Plaintiff's First and Second Causes of Action**
                      **Alleged Against the Municipal Defendants.**
14

15       In their first and second claims for relief, Plaintiffs

16  allege that Defendants County of Sutter and County of Yuba

17  violated the Fourteenth Amendment because the individually named

18  Defendants' deliberate indifference toward Decedent was a direct

19  and proximate result of County of Sutter and County of Yuba's

20  policies, customs or practices.

21  ///

22  ///

23  ///

24

25  [6] The Court is cognizant that Plaintiffs have attempted to allege
    Defendant Parker failed to comply with the superior court order
26  to transfer Decedent to Napa State Hospital.  While such a
    failure would certainly be significant, Plaintiffs have alleged
27  no facts indicating Sheriff Parker had or should have had any
    indication the court order had been issued or that Defendant
28  Parker failed to act on any such information.

1  Defendants argue that because there was an actual policy in place

2  regarding the identification and treatment of mental disorders,

3  Plaintiffs' claims dependent on other policies regarding the

4  treatment of inmates are inconsistent and must fail.  Defendants

5  also argue that the policies identified by Plaintiffs were not

6  the moving force behind any alleged constitutional violations.

7       A municipality may be liable for violating a party's

8  constitutional rights resulting from a policy, ordinance, or

9  regulation pursuant to a governmental custom.  <u>Monell v. Dep't of</u>

10 <u>Social Servs.</u>, 436 U.S. 658 (1978).  The policy must be the

11 "moving force" behind the constitutional violation.  <u>Villegas v.</u>

12 <u>Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950 (9th Cir. 2008).

13 Section 1983 requires that there is an actual connection or link

14 between the actions of a defendant and the deprivation alleged to

15 have been suffered by the plaintiff.  <u>Id.</u>

16      In order to survive Defendants' Motion to Dismiss, then,

17 Plaintiffs must allege sufficient facts to permit the court to

18 infer the plausibility of each of the following elements: (1) an

19 employee violated the Plaintiffs' constitutional rights; (2) the

20 municipality has customs or policies that amount to deliberate

21 indifference to those rights; and (3) those customs or policies

22 were the <u>moving force</u> behind the violation of the employee's

23 constitutional rights.  <u>Gibson v. County of Washoe</u>, 290 F.3d

24 1175, 1193-94 (9th Cir. 2002).  As set forth in the preceding

25 sections, Plaintiffs have failed to plead facts sufficient to

26 demonstrate any employee violated Plaintiffs' constitutional

27 rights.  Accordingly, Plaintiffs' claims against Defendants

28 County of Sutter and County of Yuba must fail*.*

17

1    **B.   Plaintiffs' Fourth Cause of Action for Loss of**
2         **Parent/child Relationship.**

3         Plaintiffs' fourth cause of action asserts that all
4    Defendants violated the First and Fourteenth Amendments by
5    depriving Plaintiffs of their liberty interest in the parent-
6    child relationship.  The due process claim protects the right to
7    familial relations between family members.  See, e.g., Stanley v.
8    Illinois, 405 U.S. 645, 651 (1972) ("The integrity of the family
9    unit has found protection in the Due Process Clause of the
10   Fourteenth Amendment....") (citing Meyer v. Nebraksa, 262 U.S.
11   390, 399 (1923)).  However, only official conduct that "shocks
12   the conscience" is cognizable as a due process violation.  County
13   of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citing
14   Rochin v. Cal., 342 U.S. 165, 172-73 (1952)).  The threshold
15   question in such cases is "whether the behavior of the
16   governmental officer is so egregious, so outrageous, that it may
17   fairly be said to shock the contemporary conscience." Lewis,
18   523 U.S. at 847 n. 8.  The type of conduct which is most likely
19   to rise to the "conscience-shocking level" is "conduct intended
20   to injure in some way unjustifiable by any government interest."
21   Id. at 849.  Conduct which was not intentional, but rather was
22   deliberately indifferent, may nevertheless rise to the
23   conscience-shocking level in some circumstances.  Id. at 849-50.
24   ///
25   ///
26   ///
27   ///
28   ///

18

1    Plaintiffs' instant claim is predicated on the allegations
2    set forth in Plaintiffs' first, second, and third causes of
3    action.  More specifically, Plaintiffs allege that the
4    "aforementioned acts and/or omissions of Defendants in being
5    deliberatively indifferent to [Decedent]," through their direct
6    actions or failure to take measures to prevent Decedent's
7    suicide, amount to a violation of the Plaintiffs' rights under
8    the substantive due process clauses of the first and fourteenth
9    amendments.  For the same reasons already discussed in the
10   preceding section, Plaintiffs' general allegations that
11   Defendants were deliberately indifferent to Decedent's serious
12   medical needs are likewise insufficient to demonstrate that any
13   Defendant's conduct "shocks the conscience."  Indeed, Plaintiffs
14   did not plead facts demonstrating any Defendant's conduct meets
15   the requisite standard to establish a substantive due process
16   violation.  Accordingly, Plaintiffs' fourth claim for relief is
17   dismissed with leave to amend.

18
19        **C.   Plaintiffs' Fifth Cause of Action for Violation of
20             Title Ii of the Americans with Disabilities Act and
             Section 504 of the Rehabilitation Act.**

21
22    In their fifth cause of action, Plaintiffs allege that
23   Defendants County of Sutter and County of Yuba discriminated
24   against Decedent in violation of the Americans with Disabilities
25   Act ("ADA"), 42 U.S.C. §§ 12131, et seq., and the Rehabilitation
26   Act, 29 U.S.C. §§ 701, et seq., because "he was not placed in a
27   setting, or provided appropriate services, to reasonably
28   accommodate his disability and treatment needs."

                                  19

Defendants argue that Plaintiffs' claims under the ADA and Section 504 of the Rehabilitation Act must be dismissed because Plaintiffs fail to present facts identifying how Decedent was denied treatment, or which particular programs Decedent was denied access to, because of his disability.  In their Opposition, Plaintiffs argue that their claims are based on Defendants' total withholding of treatment for Decedent and aver that Decedent "had no way to access services available to non-disabled inmates."

Both the ADA and Rehabilitation Act prohibit disability discrimination.  Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  The ADA defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government," 42 U.S.C. § 12131(1)(A)-(B), and the Supreme Court has found that "[s]tate prisons fall squarely within the [statute's] definition of public entity."  <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 210 (1952) (internal quotations and citations omitted).

///

///

///

///

///

20

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified handicapped individual in the United States...shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Both the ADA and the Rehabilitation Act have been found to apply to services, programs, and activities for detainees. See, e.g., Pierce v. County of Orange, 526 F.3d 1190, 1214-1215 (9th Cir. 2008).

Although Plaintiffs allege Decedent did not receive adequate medical treatment, there are no facts in the FAC demonstrating that Defendants did not provide treatment to Decedent because he was disabled. See Alexander v. Tilton, 2009 WL 464486 at *7 (E.D. Cal. Feb. 24, 2009) (finding plaintiff's allegations that he did not receive proper medical treatment did not state a claim under the ADA or Rehabilitation Act). Put differently, Plaintiffs have not pled that Decedent was treated differently than other inmates who did not suffer from a disability. Compare Peacock v. Terhune, 2002 WL 459928 at *2 (E.D. Cal. Jan. 23, 2002) (finding a plaintiff stated a claim under the ADA because he alleged he was treated differently, as a paraplegic, than other inmates who did not suffer from the same, or a similar, disability). Although Plaintiffs argue in their opposition that Decedent did not have access to services that were made available to non-disabled inmates, Plaintiffs do not cite to any part of their FAC to substantiate their position.

///

///

21

1    Plaintiffs do cite a case from the Northern District to
2    support their argument that "'outright denial of medical
3    services'...may be 'so unreasonable as to demonstrate that
4    [defendants] were discriminating against [plaintiff] because of
5    his disability.'" Anderson v. County of Siskiyou, 2010 WL 3619821
6    at *5 (N.D. Cal. Sept. 13, 2010) (quoting Kiman v. New Hampshire
7    Dep't of Corr., 451 F.3d 274, 285 (1st Cir. 2006)).  However,
8    that case has not been cited by any court for that proposition,
9    and other courts within this circuit have, to the contrary,
10   required plaintiffs to plead facts demonstrating they were
11   treated differently because of their disabilities.  See Peacock,
12   2002 WL 4599928 at *2; Alexander, 2009 WL 464486 at *7.  More
13   importantly, the Ninth Circuit has made clear that "[t]he ADA
14   prohibits discrimination because of disability, not inadequate
15   treatment for disability." Simmons v. Navajo County, Ariz.,
16   609 F.3d 1011, 1022 (9th Cir. 2010).  Accordingly, this Court
17   declines to follow Anderson and finds that Plaintiffs have failed
18   to plead facts sufficient to allege that the Defendants
19   discriminated against Decedent because of his disability.
20   Defendants' Motion to Dismiss Plaintiffs' fifth cause of action
21   is GRANTED with leave to amend.

22
23        **D.   Plaintiffs' Sixth Cause of Action for Violation of
          California's Unruh Civil Rights Act.**
24
25        Plaintiffs allege that Defendants County of Sutter and
26   County of Yuba violated California Civil Code §§ 51 and 52
27   ("Unruh Act") by failing to reasonably accommodate Decedent's
28   disability and treatment needs.

                                22

1   Defendants argue Plaintiffs' claim must be dismissed because

2   SYMHS and Sutter County Jail are not "business establishments"

3   subject to the Unruh Act.

4       The Unruh Act provides that "[a]ll persons within the

5   jurisdiction of this state are free and equal, and...are entitled

6   to the full and equal accommodations, advantages, facilities,

7   privileges, or services in all business establishments of every

8   kind whatsoever."  Cal. Civ. Code § 51(b).  Although the

9   California Supreme Court has found that the Legislature intended

10  the term "business establishment" be interpreted "in the broadest

11  sense reasonably possible," Isbister v. Boys' Club of Santa

12  Cruz, Inc., 40 Cal. 3d 72, 78 (1985), the Unruh Act has yet to be

13  applied to claims against correctional facilities, see Lee v.

14  Wilkinson, 2009 WL 2824758 at *7 (E.D. Cal. 2009).  Instead,

15  several district courts have explicitly found that prisons are

16  not business establishments under the Unruh Act.  See Taormina v.

17  Cal. Dep't of Corr., 946 F. Supp. 829, 834 (S.D. Cal. 1996);

18  Wilkins-Jones v. County of Alameda, 2010 WL 4780291 at *9 (N.D.

19  Cal. 2010) (finding defendant County of Alameda was not liable

20  under Unruh Act).  The Court finds this authority persuasive and

21  holds that Sutter County Jail is not a business establishment

22  under the Unruh Act.[7]  Accordingly, Plaintiffs claim under the

23  Unruh Act arising out of Decedent's treatment at Sutter County

24  Jail fails.

25  _____

26  [7] Plaintiffs' analogy to public school districts is unpersuasive,
    as it has been well established that public school districts are
27  business establishments subject to the Unruh Act.  See, e.g.,
    D.K. ex rel. G.M. v. Solano County Office of Educ., 2008 WL
28  5114965 at *6 (E.D. Cal. Dec. 2, 2008).

1    Notably, Plaintiffs do not distinguish between SYMHS and

2    Sutter County Jail in their FAC or Opposition.  Without deciding

3    whether SYHMS is subject to the Unruh Act at this point, the

4    Court finds it also appropriate to dismiss Plaintiffs' claims

5    relating to Decedent's treatment at SYMHS because Plaintiffs have

6    not alleged facts substantiating their conclusory allegation that

7    Decedent was discriminated against in violation of the Unruh Act

8    while at SYMHS.

9

10       **E.    Plaintiffs' Seventh Cause of Action for Professional
              Negligence/medical Malpractice.**

11

12    Plaintiffs allege Defendants County of Sutter, County of

13   Yuba, Zil, Barnett and Meer were negligent in their failure to

14   properly assess and treat Decedent's serious mental illness.

15    First and foremost, the entity Defendants move to dismiss

16   this claim on the ground that they are immune from liability

17   because Plaintiffs failed to provide a statutory basis for the

18   cause of action.  Under California Government Code section 815,

19   "a public entity is not liable for an injury, whether such injury

20   arises out of an act or omission of the public entity or a public

21   employee or any other person, except as provided by statute."

22   Cal. Gov. Code § 815(a).  Plaintiffs concede that Defendants'

23   Motion to Dismiss should be granted as to the County of Sutter

24   and County of Yuba in light of Section 815.  Accordingly, this

25   claim against Defendants County of Sutter and County of Yuba is

26   dismissed without leave to amend.

27   ///

28   ///

24

1   Turning to the individually named Defendants, Plaintiffs
2   generally allege that Defendants Zil, Barnett and Meer were
3   negligent in their failure to appropriately assess and evaluate
4   Decedent, to prescribe necessary psychiatric medication, to
5   ensure compliance with that medication and to ensure proper
6   treatment.  Plaintiffs further allege that Defendant Barnett was
7   negligent in discharging Decedent from SYMHS to Sutter County
8   Jail in early April 2010.
9   These Defendants argue that they are immune from liability
10  under California Government Code sections 855.6 and 855.8.
11  Section 855.6 shields a public employee from liability "for
12  injury caused by the failure to make a[n] examination, or to make
13  an adequate [] examination,...for the purpose of determining
14  whether [a] person has a...mental condition that would constitute
15  a hazard to the health and safety of himself or others."
16  Similarly, Section 855.8 provides that a public employee is not
17  liable "for injury resulting from diagnosing or failing to
18  diagnose that a person is afflicted with mental illness [] or
19  from failing to prescribe for mental illness...."  Cal. Gov. Code
20  § 855.8(a).  Defendants correctly argue that Plaintiffs'
21  allegations regarding their alleged failure to properly assess
22  and evaluate Decedent, as well as their alleged failure to
23  prescribe appropriate medications, fall squarely within sections
24  855.6 and 855.8, and therefore, they are immune from liability on
25  that basis.
26  ///
27  ///
28  ///

25

1    Plaintiffs nonetheless argue that the immunity granted under

2    section 855.6 does not apply in "situation[s] where the defendant

3    fails to provide medical care for a prisoner in obvious need of

4    such care," as set forth in Lum v. City of San Joaquin,

5    756 F. Supp. 2d 1243 (E.D. Cal. 2010).  However, Plaintiffs do

6    not cite to any facts pled in their FAC demonstrating that it was

7    "obvious" to Defendants Zil, Barnett and Meer that Decedent

8    needed any care that they failed to provide.  Accordingly,

9    Defendants' Motion to Dismiss is granted with respect to

10   Plaintiffs' negligence claims arising out of Defendants' alleged

11   failure to properly evaluate Decedent or prescribe medication for

12   any mental condition.

13   Plaintiffs' allegations regarding Defendants' alleged

14   failure to ensure Decedent complied with his prescriptions and

15   received appropriate treatment arguably fall within an exception

16   to immunity codified in Section 855.8(d).  See Cal. Gov. Code

17   § 855.8(d) (employee not shielded from liability for an injury

18   "caused by his negligent or wrongful act or omission in

19   administering any treatment prescribed for mental illness....").

20   Defendants, however, correctly point out that Plaintiffs' FAC

21   does not contain facts relating to each individually named

22   Defendant's failure to ensure compliance with prescriptions or

23   proper treatment.  Indeed, Plaintiffs only allege that Defendant

24   Zil and other Defendants provided "grossly inadequate treatment"

25   and that Defendant Meer failed to keep an appointment with

26   Decedent.  These allegations alone do not demonstrate that any

27   Defendant failed to properly administer any prescribed treatment,

28   consequently causing Decedent's death.

26

1 Accordingly, Defendants' Motion to Dismiss Plaintiffs' seventh
2 claim for relief is granted as to this theory as well.

3      Finally, although Plaintiffs allege Defendant Barnett
4 negligently discharged Decedent on April 2, 2010, there are no
5 facts in the FAC to support this allegation.  See FAC at ¶¶ 79-85
6 (alleging, generally, that Defendants should not have discharged
7 Decedent).  Plaintiffs allege that Decedent was seen by Defendant
8 Barnett, but they do not plead any facts relating to a decision
9 made by Defendant Barnett regarding Decedent's transfer from
10 SYHMS to Sutter County Jail.  Id.  Accordingly, without factual
11 support, Plaintiffs' claim that Defendant Barnett negligently
12 discharged Decedent must be disregarded, see Twombly, 550 U.S. at
13 555, and Defendants' Motion to Dismiss Plaintiffs' seventh claim
14 for relief relating to Defendant Barnett's allegedly negligent
15 discharge of Decedent is granted.  Plaintiffs' seventh cause of
16 action is thus dismissed with leave to amend.

17

18      **F.   Plaintiffs' Eight Cause of Action for Negligence/**
        **Negligence Per Se.**
19

20      Plaintiffs allege that all individually named Defendants had
21 a duty to operate and manage SYMHS and Sutter County Jail, as
22 defined by various laws, standards and regulations, and
23 Defendants' breach of those duties caused Decedent's injuries.
24 Defendants correctly argue that Plaintiffs have failed to
25 identify any specific statute, ordinance or regulation in support
26 of their claim, and for this reason, Plaintiffs' claim for
27 negligence per se is dismissed with leave to amend.
28 ///

1  See Twombly, 550 U.S. at 555; Cal. Evid. Code § 669 (1967);

2  accord Lorbeer v. American Tel. & Tel. Co., 958 F.2d 377 (9th

3  Cir. 1992) (finding a plaintiff's negligence per se claim failed

4  "because he [did] not idenif[y] a specific, relevant statutory

5  violation...").

6

7          **G.    Plaintiffs' Ninth Cause of Action for Negligent**
                **Supervision, Training, Hiring and Retention.**
8

9          Plaintiffs allege Defendants Parker, Sherry, Bhattal and

10 Luz were negligent in hiring, supervising, training and retaining

11 employees and thus caused Decedent's injuries.  Defendants

12 correctly argue that Plaintiffs' claim must be dismissed because

13 Plaintiffs have failed to provide a statutory basis for their

14 cause of action.

15         Plaintiffs' ninth claim is really a claim against the

16 entities and not the employees.  See, e.g., Sanders v. City of

17 Fresno, 2006 WL 1883394, *11 ("'Failure to train...is a "direct"

18 act on the part of the entity, not on the part of the

19 employee.'") (quoting Reinhardt v. Santa Clara County, 2006 WL

20 662741 (N.D. Cal. Mar. 15, 2006)); see also Megargee ex rel.

21 Lopez v. Wittman, 2006 WL 2988945, *10 n.2 (E.D. Cal.).  Pursuant

22 to California Government Code § 815, however, public entities

23 cannot be held directly liable in tort except as specifically

24 provided by statute.  Caldwell v. Montoya, 10 Cal. 4th 972, 980

25 (1995).  Neither the parties nor the Court has identified a

26 statutory basis for the entities' liability in this case.  See,

27 e.g., Megargee, 2006 WL 2988945 at *10.  Accordingly, Plaintiffs'

28 ninth cause of action must be dismissed.

1    **H.    Plaintiffs' Tenth Cause of Action for Failure to**
2         **Furnish/Summon Medical Care.**

3         Plaintiffs allege that Defendants Parker, Sherry, Bhattal,
4    Luz, Zil, Barnett and Meer knew, or had reason to know, that
5    Decedent was in need of immediate medical and mental health care,
6    yet they failed to take action to summon or provide care.
7    Plaintiffs further allege that Defendants failed to timely
8    respond to Decedent's "psychotic episode" on April 29 when "he
9    engaged in numerous acts of self-harm before hanging himself...."
10   Defendants argue that because Plaintiffs' FAC does not contain
11   any facts relating to each individual Defendants' actual or
12   constructive knowledge of an immediate need for care for a
13   serious or obvious medical condition, however, Plaintiffs' tenth
14   cause of action must be dismissed.

15        A claim for failure to furnish medical care is based on a
16   violation of California Government Code § 845.6, which states in
17   pertinent part:

18        Neither a public entity nor a public employee is liable
         for injury proximately caused by the failure of the
19        employee to furnish or obtain medical care for a
         prisoner in his custody; but... a public employee, and
20        the public entity where the employee is acting within
         the scope of his employment, is liable if the employee
21        knows or has reason to know that the prisoner is in
         need of immediate medical care and he fails to take
22        reasonable action to summon such medical care..."

23        In their FAC, Plaintiffs only refer to one Defendant
24   specifically that had contact with Decedent at Sutter County Jail
25   between April 2 and April 29, 2010: Defendant Zil.  Specifically,
26   Plaintiffs allege that on April 8, Zil had an in-person
27   psychiatric meeting with Decedent.
28   ///

29

There are no further allegations, however, regarding Zil's
knowledge of Decedent's <u>immediate</u> need for medical care and his
subsequent failure to summon care.  Although Plaintiffs pled that
Defendants generally knew, or should have known, about Decedent's
need for further psychiatric treatment, the facts presented by
Plaintiffs in their FAC are not sufficient to demonstrate that
each named Defendant had actual or constructive knowledge of
Decedent's immediate need for care.  <u>Compare</u>, <u>e.g.</u>, <u>Jett</u>,
439 F.3d 1091 (finding disputed issues of fact precluded summary
judgment on the inmate-plaintiff's failure to summon medical care
claim because a doctor ordered follow-up visits for plaintiff
following a fracture to his thumb and plaintiff filed repeated
requests to be seen by a health care provider, which were ignored
by defendants); <u>see</u> <u>also</u> Twombly, 550 U.S. at 555.  Accordingly,
Plaintiffs' claim for failure to summon medical care is dismissed
with leave to amend.


   I.   **Plaintiffs' Eleventh Cause of Action for Wrongful
        Death.**

     Plaintiffs allege that Decedent's injuries in this case are
a result of the negligence of all Defendants, and therefore,
Defendants are liable under California Code of Civil Procedure
377.60 for the funeral and burial expenses incurred by
Plaintiffs.  Defendants argue that this claim is duplicative of
Plaintiffs' negligence claim as to Defendants Zil, Barnett, and
Meer.  Defendants further argue that Plaintiffs fail to allege
facts sufficient to state a claim against the remaining
Defendants for negligence.

1    Plaintiffs correctly argue that a claim for wrongful death
2    is a separate cause of action.  See Ruiz v. Podolsky, 50 Cal. 4th
3    838, 844 (Cal. 2010).  Indeed, "'[u]nlike some jurisdictions
4    where wrongful death actions are derivative, [section] 377.60
5    creates a new cause of action in favor of the heirs as
6    beneficiaries, based upon their own independent pecuniary injury
7    suffered by loss of a relative, and distinct from any the
8    deceased might have maintained had he survived.'" Id. (quoting
9    Horwich v. Superior Court, 21 Cal. 4th 272, 283 (Cal. 1999).
10   However, Plaintiffs have failed to allege facts sufficient to
11   demonstrate that Defendants' negligence caused Decedent's death.
12   See supra at 5-8.  Accordingly, Defendants' Motion to Dismiss
13   Plaintiffs' eleventh cause of action is granted with leave to
14   amend.

15

16                          **CONCLUSION**

17

18   For the reasons set forth above, Defendants' Motion to
19   Dismiss (ECF No. 11) is GRANTED without leave to amend as to
20   Plaintiffs' seventh cause of action against Defendants County of
21   Sutter and County of Yuba, and GRANTED with leave to amend as to
22   all of Plaintiffs' remaining claims.[8]  Not later than thirty (30)
23   days following the date this Memorandum and Order is
24   electronically filed, Plaintiff may (but is not required to) file
25   a Second Amended Complaint.

26   _____

27   [8] Given that this Court has dismissed Plaintiffs' entire FAC,
     Defendants' additional request to strike Plaintiffs' prayer for
28   punitive damages is DENIED as moot.

                                  31

1    If no amended complaint is filed within said thirty-day

2 period, without further notice to the parties, those causes of

3 action dismissed by virtue of this Order will be deemed dismissed

4 with prejudice.

5    IT IS SO ORDERED.

6

Dated: February 7, 2012

7

8                                              _____

9                                              MORRISON C. ENGLAND, JR.
                                               UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28