1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF RODNEY LOUIS BOCK,        No. 2:11-cv-00536-MCE-GGH
     deceased, by and through
12   CYNDIE DENNY BOCK, as
     Administrator; KIMBERLY BOCK;
13   KELLIE BOCK; HILLARY BOCK;
     M.B., minor through her mother
14   and guardian ad litem Cyndie
     Denny Bock; LAURA LYNN BOCK;
15   and ROBERT BOCK,

16          Plaintiffs,

17      v.                               MEMORANDUM AND ORDER

18   COUNTY OF SUTTER; COUNTY OF
     YUBA; J. PAUL PARKER, Sutter
19   County Sheriff's Department
     Sheriff; TOM SHERRY, Director
20   of Human Services of Sutter
     and Yuba Counties; AMERJIT
21   BHATTAL, Assistant Director of
     Human Services-Mental Health
22   of Sutter and Yuba Counties;
     JOHN S. ZIL; CHRISTOPHER
23   BARNETT; SADOUTOUNNISSA MEER;
     and Does I through XL,
24   inclusive,

25          Defendants.

26                       ----oo0oo----

27   ///

28   ///

                              1

1   This action for damages was initiated by the estate and
2   surviving family members of Rodney Louis Bock ("Decedent").
3   Plaintiffs Estate of Rodney Louis Bock, by and through Cyndie
4   Denny Bock, as administrator, Kimberly Bock, Kelly Bock, Hillary
5   Bock, M.B., a minor through her guardian ad litem Cyndie Denny
6   Bock, Laura Lynn Bock, and Robert Bock (collectively
7   "Plaintiffs") seek to recover from Defendants County of Sutter;
8   County of Yuba; J. Paul Parker, Sutter County Sheriff; Tom
9   Sherry, Director of Human Services of Sutter and Yuba Counties;
10  Amerjit Bhattal, Assistant Director of Human Services-Health
11  Division of Sutter and Yuba Counties; Brad Luz, Assistant
12  Director of Human Services-Mental Health of Sutter and Yuba
13  Counties; John S. Zil; Christopher Barnett; and Sadoutounnissa
14  Meer (collectively "Defendants") for injuries sustained as a
15  result of Decedent's suicide while incarcerated at Sutter County
16  Jail ("Jail").  Presently before the Court is Defendants' Motion
17  to Dismiss Plaintiffs' First Amended Complaint.  For the
18  following reasons, Defendants' Motion is GRANTED.[1]

19

20                          **BACKGROUND**[2]

21

22  Decedent was a self-employed farmer in Marysville, California,
23  for over 30 years.  In late 2009, he began experiencing mental
24  health issues and required psychiatric treatment.

25  ───────────────────
26  [1] Because oral argument will not be of material assistance, the
    Court ordered this matter submitted on the briefs.  E.D. Cal.
27  Local Rule 230(g).

28  [2] The following facts are derived from Plaintiffs' First Amended
    Complaint ("FAC").

1  On several occasions from 2009 through 2010, Decedent was
2  involuntarily hospitalized pursuant to California Welfare &
3  Institutions Code § 5150 at the Sutter-Yuba Mental Health
4  Services facility ("SYMHS"),[3] which was operated and managed by
5  Defendants County of Sutter and County of Yuba.

6       SYMHS provides a variety of mental health care services to
7  adults residing in Sutter and Yuba counties and to inmates of the
8  Jail.  Because SYMHS has only roughly sixteen inpatient beds,
9  nine to eleven of which are typically filled at any one time,
10 Plaintiffs believe SYMHS staff members personally know, or should
11 know, all patients.

12      Decedent was first hospitalized at SYMHS on approximately
13 November 30, 2009.  During that time, he was documented as
14 psychotic, delusional and grandiose.  Defendant Barnett and other
15 staff evaluated and treated Decedent and diagnosed him with,
16 among other things, "Bipolar I Disorder, Most Recent Episode
17 Manic, Severe with Psychotic Features."

18      On various occasions, Decedent did indeed exhibit delusional
19 and paranoid behavior, and, eventually, on or around January 14,
20 2010, Decedent entered a restaurant with a gun and began making
21 erratic statements.  As a result of that incident, Decedent was
22 arrested, criminal charges were filed against him, and he was
23 taken to the Jail.

24 ///

25 ///

26

27 [3] On two occasions, Decedent was involuntarily held for
   additional periods pursuant to California Welfare & Institutions
28 Code § 5250.

3

1  According to Plaintiffs, the Jail has the capacity to house
2  approximately two-hundred prisoners, and, given its relatively
3  small size, Jail staff and supervisors must therefore have, or
4  reasonably should have, personal knowledge of all prisoners,
5  especially those exhibiting psychotic behaviors.

6        On January 15, 2010, while still housed at the Jail,
7  Decedent was referred to SYMHS for a psychiatric evaluation, at
8  which time SYMHS staff again documented his psychiatric history,
9  which included his history of delusions.  In addition, later in
10 January, after Decedent had been released from the Jail, he was
11 again treated at SYMHS, pursuant to one of the above-mentioned
12 involuntary holds, by Defendants Barnett and Meer and other
13 staff, some of whom confirmed Decedent's serious psychiatric
14 diagnoses and recommended 15-minute safety checks and daily
15 treatment.

16       Subsequently, on or around January 27, 2010, the Sutter
17 County Superior Court judge presiding over Decedent's then-
18 pending criminal case ordered Decedent to undergo a separate
19 psychological evaluation to determine whether he was competent to
20 stand trial.  The physician conducting that evaluation concluded
21 that Decedent's highly unstable psychiatric condition rendered
22 him incompetent to be tried.

23       Approximately one month later, on March 1, 2010, another
24 Sutter County Superior Court judge ordered a placement evaluation
25 of Decedent.  A different physician than the one who evaluated
26 Decedent's competency confirmed Decedent's psychiatric history
27 and recommended that Decedent receive outpatient treatment.
28 ///

1      Later, on March 25, 2010, Decedent attended a psychiatric
2  appointment with Defendant Meer, who documented that Decedent
3  remained delusional.

4      Sometime after this last appointment, Decedent, who still
5  continued to experience paranoia and delusions, began to believe
6  he was being "direct[ed]" to drive to his nephew's home in Idaho.
7  Decedent eventually followed that "direction" but was returned to
8  California by his nephew.  In the meantime, however, Decedent had
9  missed a court date and, as a result, a warrant had been issued
10 for his arrest.

11     Upon his return to California, Decedent was again taken to
12 SYMHS for evaluation and treatment.  SYMHS staff confirmed
13 Decedent's prior diagnosis of Bipolar I Disorder, Manic with
14 Severe Psychotic Features, and identified his need for inpatient
15 hospitalization or "state hospital placement."  Defendant Barnett
16 also documented that Decedent was sharing delusions of "end
17 times."

18     Notwithstanding these observations, on April 2, Defendants
19 discharged and transferred Decedent, pursuant to the pending
20 warrant, to the custody of Sutter County Sheriff's Department,
21 and he was again placed at the Jail.  According to Plaintiffs,
22 Defendants transferred Decedent to the Jail in contravention of
23 California Welfare & Institutions Code § 5152(a) and despite
24 their knowledge of Decedent's urgent need for inpatient care.
25 Plaintiffs also generally allege that, at the time of Decedent's
26 discharge, Defendant Barnett and SYMHS staff provided a wholly
27 inadequate treatment plan for Decedent.
28 ///

1    Plaintiffs nonetheless further aver that, on the day of
2 Decedent's transfer, Defendant Zil advised a Jail nurse that
3 Decedent was to continue taking his current medications.  Two
4 days later, SYMHS and/or Sutter County Sheriff's Department staff
5 documented Decedent's "continued delusions" and need for further
6 psychiatric review, and, on April 8, Defendant Zil personally met
7 with Decedent.

8    Also at around this same time, the physician who had
9 conducted Decedent's original court-ordered placement evaluation
10 sent a letter to the court retracting his outpatient treatment
11 recommendation.  Shortly thereafter, on April 19, the judge who
12 had ordered Decedent's placement evaluation found Decedent
13 incompetent to stand trial, suspended all pending proceedings,
14 and ordered that Decedent be transferred to Napa State Hospital
15 for treatment.  Defendant Parker, who as Sheriff was under a
16 statutory duty to ensure Decedent was transferred in accordance
17 with the Court's order, and all other Defendants, nonetheless
18 failed to transfer Decedent in accordance with that order.

19    By April 24, Decedent was unstable and unkempt, was talking
20 to himself and to inanimate objects and was refusing his
21 medication.  According to Plaintiffs, no further evaluation of
22 Decedent was conducted, however, nor was any further treatment
23 undertaken.  To the contrary, Defendant Meer, who was scheduled
24 to follow up with Decedent on April 28, failed to attend that
25 appointment.
26 ///
27 ///
28 ///

1    Plaintiffs thus allege Defendants failed to appropriately
2 assess and medicate Decedent upon his incarceration at the Jail.
3 More specifically, Plaintiffs allege Defendants failed to
4 appropriately assess Decedent's suicide risk.  Consequently, on
5 April 29, using items that Plaintiffs allege should not have been
6 permitted in Decedent's cell due to his psychiatric condition,
7 Decedent fashioned a noose and hanged himself from the upper
8 bunk.  When he was found, there were large amounts of blood
9 covering the cell floor and walls, apparently a result of
10 Decedent banging his head against the wall in a very violent
11 manner.  Decedent died in his cell.

12    By this suit, Plaintiffs now assert eleven causes of action
13 against Defendants arising out of Decedent's death.  Defendants
14 moved to dismiss each claim and to strike Plaintiffs' request for
15 punitive damages.  For the following reasons, Defendants' Motion
16 to Dismiss is GRANTED and Defendants' request to strike
17 Plaintiffs' prayer for punitive damages is DENIED as moot.

18

19                              **STANDARD**

20

21    Pursuant to Federal Rule of Civil Procedure 12(b)(6),[4] all
22 allegations of material fact must be accepted as true and
23 construed in the light most favorable to the nonmoving party.
24 Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.
25 1996).
26 ///

27 _____

28 [4] All further references to "Rule" or "Rules" are to the Federal
Rules of Civil Procedure unless otherwise noted.

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the [...] claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2)... requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment ...."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party ... carries the greatest weight."  Eminence Capital, 316 F.3d at 1052 (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).
///

**ANALYSIS**

At the outset, the Court notes that Plaintiffs seek relief for the events that transpired from April 1 to April 29, 2010. See Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plt. Opp.") (ECF No. 16) at pg. 1.  In viewing the facts in the light most favorable to the non-moving party, however, Decedent's treatment at SYMHS prior to April 1, 2010, as well as other events leading up his detention in April 2010, are relevant to Plaintiffs' claims and will be considered herein.

**A.    Plaintiffs' First Through Third Causes of Action for Deliberate Indifference to Decedent's Serious Medical Needs.**

In their first through third causes of action, Plaintiffs seek relief under the Fourteenth Amendment for Defendants' alleged deliberate indifference to Decedent's serious medical needs.  The first cause of action is directed at all Defendants, while the second and third causes of action are asserted against the municipal and supervisory defendants, respectively.  The Court now addresses Plaintiffs' claims by category of Defendant.

**1.    Plaintiffs' First Cause of Action Alleged Against the Individual Defendants.**

According to Plaintiffs, Defendants Zil, Barnett, and Meer "knew there was a strong likelihood that [Decedent] was in danger of serious personal harm...," and their failure to provide mental heath care to him thus constituted deliberate indifference in violation of the Fourteenth Amendment.

10

1  Defendants argue that Plaintiffs failed to plead facts sufficient
2  to demonstrate Defendants Zil, Barnett and Meer's actions
3  violated Decedent's constitutional rights.

4          As opposed to prisoner claims under the Eighth Amendment, a
5  pretrial detainee is entitled to be free of cruel and unusual
6  punishment under the due process clause of the Fourteenth
7  Amendment.  Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979);
8  Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017-18 (9th Cir.
9  2010).  A pretrial detainee's due process right in this regard is
10  violated when a defendant fails to promptly and reasonably
11  procure competent medical aid when the pretrial detainee suffers
12  a serious illness or injury while confined.  Estelle v. Gamble,
13  429 U.S. 97, 104-05 (1976).  In order to establish a plausible
14  claim for failure to provide medical treatment, a plaintiff must
15  plead sufficient facts to permit the Court to infer that:
16  (1) Decedent had a "serious medical need"; and (2) a Defendant
17  was "deliberately indifferent" to that need.  Jett v. Penner,
18  439 F.3d 1091, 1096 (9th Cir. 2006); cf. Farmer v. Brennan,
19  511 U.S. 825, 834 (1994).  A serious medical need exists when
20  "failure to treat a prisoner's condition could result in further
21  significant injury or the unnecessary and wanton infliction of
22  pain."  Jett, 439 F.3d at 1096 (internal citations and quotations
23  omitted).
24  ///
25  ///
26  ///
27  ///
28  ///

11

1    The Supreme Court, in <u>Farmer</u>, explained in detail the
2  contours of the "deliberate indifference" standard.
3  Specifically, a Defendant is not liable under the Fourteenth
4  Amendment for his part in allegedly denying necessary medical
5  care unless he knew "of and disregard[ed] an excessive risk to
6  [Decedent's] health or safety." 511 U.S. at 837. Deliberate
7  indifference contains both an objective and subjective component:
8  "the official must both be aware of facts from which the
9  inference could be drawn that a substantial risk of serious harm
10  exists, and he must also draw that inference." <u>Id.</u> Plaintiffs
11  "need not show that a prison official acted or failed to act
12  believing that harm actually would befall an inmate; it is enough
13  that the official acted or failed to act despite his knowledge of
14  a substantial risk of serious harm." <u>Id.</u> at 842.

15    Negligence in diagnosing or treating a medical condition
16  does not, however, give rise to a claim under the Eighth
17  Amendment. <u>See</u> <u>Estelle</u>, 429 U.S. at 106. Moreover, a difference
18  of opinion between the prisoner and medical providers concerning
19  the appropriate course of treatment does not give rise to an
20  Eighth Amendment claim. <u>See</u> <u>Jackson v. McIntosh</u>, 90 F.3d 330,
21  332 (9th Cir. 1996).

22    In the FAC, Plaintiffs allege that Defendant Zil, a
23  psychiatrist contracted to provide care to SYMHS patients and
24  Sutter County Jail inmates, treated Decedent in November and
25  December of 2009, as well as in April 2010. On April 2, 2010,
26  Defendant Zil allegedly communicated with a nurse at SYMHS and
27  ordered that Decedent continue taking his currently prescribed
28  medications.

1  In addition, on April 8, Defendant Zil personally met with

2  Decedent.[5]  While Plaintiffs nonetheless claim that Defendant Zil

3  failed to adequately assess and treat Decedent, those conclusory

4  allegations are insufficient to state a claim for deliberate

5  indifference.  Indeed, Plaintiffs have directed most of their

6  allegations at "Defendants" generally, making it impossible to

7  discern which Defendants were responsible for which actions.

8      More to the point, Plaintiffs have not alleged any facts

9  indicating Defendant Zil, or any other Defendant for that matter,

10 actually had any indication Decedent might intend to cause harm

11 to himself.  For example, while Plaintiffs allege that Defendants

12 Barnett and Meer, both psychiatrists employed by SYHMS, evaluated

13 and treated Decedent prior to his April incarceration, Plaintiffs

14 fail to allege that either Defendant had contact with Decedent

15 during anytime in April 2010.  In addition, although Plaintiffs

16 allege that Defendant Meer missed an April 28, 2010, appointment

17 with Decedent, there are no facts pled demonstrating that

18 Defendant Meer had a "sufficiently culpable mind" in doing so.

19 See Farmer, 511 U.S. at 834.  Accordingly, while a failure to

20 treat Decedent's condition could potentially give rise to a

21 constitutional violation, Plaintiffs have not pled the requisite

22 facts relating to the individual Defendants.  Plaintiffs' first

23 cause of action directed at Defendants Zil, Barnett and Meer is

24 thus dismissed with leave to amend.

25 ///

26

27 [5] Plaintiffs have advised in their Opposition that they intend to
   amend their pleading based on newly discovered facts indicating
28 Defendant Zil never visited Decedent or provided any treatment at
   the jail.  Pls. Opp. 9 n.5.

## 2. Plaintiffs' First and Third Causes of Action Alleged Against the Supervisory Defendants.

In their first and third claims for relief, Plaintiffs allege that Defendants Parker, Sherry, Bhattal and Luz are liable for the deliberate indifference of other named Defendants because the other Defendants' acts were a direct and proximate result of customs, practices, and policies of these supervisory Defendants. Defendants argue that Plaintiffs' claims against the supervisory Defendants must be dismissed because Plaintiffs failed to identify any pertinent policies or practices attributable to Defendants Parker, Sherry, Bhattal and Luz and because Plaintiffs improperly ascribe all purported failures very generally to the Defendants as a group.

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)).

///

///

14

1  In other words, each government official may only be held liable

2  for his own misconduct.  <u>Bowell v. Cal. Substance Abuse Treatment</u>

3  <u>Facility</u>, 2011 WL 2224817, at *4 (E.D. Cal. June 7, 2011).

4      However, government officials acting as supervisors may be

5  liable under § 1983 under certain circumstances.  A defendant may

6  be held liable as a supervisor under § 1983 if there exists

7  either: "(1) his or her personal involvement in the

8  Constitutional deprivation, or (2) a sufficient causal connection

9  between the supervisor's wrongful conduct and the constitutional

10  violation."  <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989).

11  Thus, Section 1983 actions against supervisors are proper as long

12  as a sufficient causal connection exists and the plaintiff was

13  deprived under color of law of a federally secured right.

14  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting

15  <u>Redman v. Cnty. of San Diego</u>, 942 F.2d 1435, 1447 (9th Cir.

16  1991)).

17      The requisite causal connection between a supervisor's

18  wrongful conduct and the violation of the prisoner's

19  constitutional rights can be established in a number of ways.

20  Plaintiffs may show that a supervisor set in motion a series of

21  acts by others, or knowingly refused to terminate a series of

22  acts by others, which the supervisor knew or reasonably should

23  have known would cause others to inflict a Constitutional injury.

24  <u>Dubner v. City of S.F.</u>, 266 F.3d 959, 968 (9th Cir. 2001).

25  Similarly, a supervisor's own culpable action or inaction in the

26  training, supervision, or control of his subordinates may

27  establish supervisory liability.  <u>Starr</u>, 652 F.3d at 1208.

28  ///

15

Finally, a supervisor's acquiescence in the alleged
constitutional deprivation, or conduct showing deliberate
indifference toward the possibility that deficient performance of
the task may violate the rights of others, may establish the
requisite causal connection.  Id.; Menotti, 409 F.3d at 1149.

Defendants correctly argue that, as with the individual
Defendants, Plaintiffs have failed to plead facts demonstrating
each supervisory Defendant's role in any alleged deprivation.[6]
Without some specific allegations against each named Defendant,
Plaintiffs' claims cannot withstand Defendants' Motion to
Dismiss.

### 3.   Plaintiff's First and Second Causes of Action Alleged Against the Municipal Defendants.

In their first and second claims for relief, Plaintiffs
allege that Defendants County of Sutter and County of Yuba
violated the Fourteenth Amendment because the individually named
Defendants' deliberate indifference toward Decedent was a direct
and proximate result of County of Sutter and County of Yuba's
policies, customs or practices.

///

///

///

---

[6] The Court is cognizant that Plaintiffs have attempted to allege
Defendant Parker failed to comply with the superior court order
to transfer Decedent to Napa State Hospital.  While such a
failure would certainly be significant, Plaintiffs have alleged
no facts indicating Sheriff Parker had or should have had any
indication the court order had been issued or that Defendant
Parker failed to act on any such information.

16

1  Defendants argue that because there was an actual policy in place

2  regarding the identification and treatment of mental disorders,

3  Plaintiffs' claims dependent on other policies regarding the

4  treatment of inmates are inconsistent and must fail.  Defendants

5  also argue that the policies identified by Plaintiffs were not

6  the moving force behind any alleged constitutional violations.

7       A municipality may be liable for violating a party's

8  constitutional rights resulting from a policy, ordinance, or

9  regulation pursuant to a governmental custom.  <u>Monell v. Dep't of</u>

10 <u>Social Servs.</u>, 436 U.S. 658 (1978).  The policy must be the

11 "moving force" behind the constitutional violation.  <u>Villegas v.</u>

12 <u>Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950 (9th Cir. 2008).

13 Section 1983 requires that there is an actual connection or link

14 between the actions of a defendant and the deprivation alleged to

15 have been suffered by the plaintiff.  <u>Id.</u>

16      In order to survive Defendants' Motion to Dismiss, then,

17 Plaintiffs must allege sufficient facts to permit the court to

18 infer the plausibility of each of the following elements: (1) an

19 employee violated the Plaintiffs' constitutional rights; (2) the

20 municipality has customs or policies that amount to deliberate

21 indifference to those rights; and (3) those customs or policies

22 were the <u>moving force</u> behind the violation of the employee's

23 constitutional rights.  <u>Gibson v. County of Washoe</u>, 290 F.3d

24 1175, 1193-94 (9th Cir. 2002).  As set forth in the preceding

25 sections, Plaintiffs have failed to plead facts sufficient to

26 demonstrate any employee violated Plaintiffs' constitutional

27 rights.  Accordingly, Plaintiffs' claims against Defendants

28 County of Sutter and County of Yuba must fail*.*

17

1        **B.   Plaintiffs' Fourth Cause of Action for Loss of**
2             **Parent/child Relationship.**

3        Plaintiffs' fourth cause of action asserts that all

4   Defendants violated the First and Fourteenth Amendments by

5   depriving Plaintiffs of their liberty interest in the parent-

6   child relationship.  The due process claim protects the right to

7   familial relations between family members.  See, e.g., Stanley v.

8   Illinois, 405 U.S. 645, 651 (1972) ("The integrity of the family

9   unit has found protection in the Due Process Clause of the

10  Fourteenth Amendment....") (citing Meyer v. Nebraksa, 262 U.S.

11  390, 399 (1923)).  However, only official conduct that "shocks

12  the conscience" is cognizable as a due process violation.  County

13  of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citing

14  Rochin v. Cal., 342 U.S. 165, 172-73 (1952)).  The threshold

15  question in such cases is "whether the behavior of the

16  governmental officer is so egregious, so outrageous, that it may

17  fairly be said to shock the contemporary conscience." Lewis,

18  523 U.S. at 847 n. 8.  The type of conduct which is most likely

19  to rise to the "conscience-shocking level" is "conduct intended

20  to injure in some way unjustifiable by any government interest."

21  Id. at 849.  Conduct which was not intentional, but rather was

22  deliberately indifferent, may nevertheless rise to the

23  conscience-shocking level in some circumstances.  Id. at 849-50.

24  ///

25  ///

26  ///

27  ///

28  ///

1    Plaintiffs' instant claim is predicated on the allegations

2   set forth in Plaintiffs' first, second, and third causes of

3   action.  More specifically, Plaintiffs allege that the

4   "aforementioned acts and/or omissions of Defendants in being

5   deliberatively indifferent to [Decedent]," through their direct

6   actions or failure to take measures to prevent Decedent's

7   suicide, amount to a violation of the Plaintiffs' rights under

8   the substantive due process clauses of the first and fourteenth

9   amendments.  For the same reasons already discussed in the

10  preceding section, Plaintiffs' general allegations that

11  Defendants were deliberately indifferent to Decedent's serious

12  medical needs are likewise insufficient to demonstrate that any

13  Defendant's conduct "shocks the conscience."  Indeed, Plaintiffs

14  did not plead facts demonstrating any Defendant's conduct meets

15  the requisite standard to establish a substantive due process

16  violation.  Accordingly, Plaintiffs' fourth claim for relief is

17  dismissed with leave to amend.

18

19          **C.    Plaintiffs' Fifth Cause of Action for Violation of**
                   **Title Ii of the Americans with Disabilities Act and**
20                 **Section 504 of the Rehabilitation Act.**

21

22    In their fifth cause of action, Plaintiffs allege that

23  Defendants County of Sutter and County of Yuba discriminated

24  against Decedent in violation of the Americans with Disabilities

25  Act ("ADA"), 42 U.S.C. §§ 12131, et seq., and the Rehabilitation

26  Act, 29 U.S.C. §§ 701, et seq., because "he was not placed in a

27  setting, or provided appropriate services, to reasonably

28  accommodate his disability and treatment needs."

                                    19

1   Defendants argue that Plaintiffs' claims under the ADA and

2   Section 504 of the Rehabilitation Act must be dismissed because

3   Plaintiffs fail to present facts identifying how Decedent was

4   denied treatment, or which particular programs Decedent was

5   denied access to, because of his disability.  In their

6   Opposition, Plaintiffs argue that their claims are based on

7   Defendants' total withholding of treatment for Decedent and aver

8   that Decedent "had no way to access services available to

9   non-disabled inmates."

10      Both the ADA and Rehabilitation Act prohibit disability

11  discrimination.  Specifically, Title II of the ADA provides that

12  "no qualified individual with a disability shall, by reason of

13  such disability, be excluded from participation in or be denied

14  the benefits of the services, programs, or activities of a public

15  entity, or be subject to discrimination by such entity."

16  42 U.S.C. § 12132.  The ADA defines "public entity" in relevant

17  part as "any State or local government" or "any department,

18  agency, special purpose district, or other instrumentality of a

19  State or States or local government," 42 U.S.C.

20  § 12131(1)(A)-(B), and the Supreme Court has found that "[s]tate

21  prisons fall squarely within the [statute's] definition of public

22  entity."  <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S.

23  206, 210 (1952) (internal quotations and citations omitted).

24  ///

25  ///

26  ///

27  ///

28  ///

1    Section 504 of the Rehabilitation Act states that "[n]o otherwise

2    qualified handicapped individual in the United States...shall,

3    solely by reason of his handicap, be excluded from the

4    participation in, be denied the benefits of, or be subjected to

5    discrimination under any program or activity receiving Federal

6    financial assistance."  29 U.S.C. § 794.  Both the ADA and the

7    Rehabilitation Act have been found to apply to services,

8    programs, and activities for detainees.  See, e.g., Pierce v.

9    County of Orange, 526 F.3d 1190, 1214-1215 (9th Cir. 2008).

10         Although Plaintiffs allege Decedent did not receive adequate

11   medical treatment, there are no facts in the FAC demonstrating

12   that Defendants did not provide treatment to Decedent because he

13   was disabled.  See Alexander v. Tilton, 2009 WL 464486 at *7

14   (E.D. Cal. Feb. 24, 2009) (finding plaintiff's allegations that

15   he did not receive proper medical treatment did not state a claim

16   under the ADA or Rehabilitation Act).  Put differently,

17   Plaintiffs have not pled that Decedent was treated differently

18   than other inmates who did not suffer from a disability.  Compare

19   Peacock v. Terhune, 2002 WL 459928 at *2 (E.D. Cal. Jan. 23,

20   2002) (finding a plaintiff stated a claim under the ADA because

21   he alleged he was treated differently, as a paraplegic, than

22   other inmates who did not suffer from the same, or a similar,

23   disability).  Although Plaintiffs argue in their opposition that

24   Decedent did not have access to services that were made available

25   to non-disabled inmates, Plaintiffs do not cite to any part of

26   their FAC to substantiate their position.

27   ///

28   ///

21

1          Plaintiffs do cite a case from the Northern District to

2     support their argument that "'outright denial of medical

3     services'...may be 'so unreasonable as to demonstrate that

4     [defendants] were discriminating against [plaintiff] because of

5     his disability.'" Anderson v. County of Siskiyou, 2010 WL 3619821

6     at *5 (N.D. Cal. Sept. 13, 2010) (quoting Kiman v. New Hampshire

7     Dep't of Corr., 451 F.3d 274, 285 (1st Cir. 2006)).  However,

8     that case has not been cited by any court for that proposition,

9     and other courts within this circuit have, to the contrary,

10    required plaintiffs to plead facts demonstrating they were

11    treated differently because of their disabilities.  See Peacock,

12    2002 WL 4599928 at *2; Alexander, 2009 WL 464486 at *7.  More

13    importantly, the Ninth Circuit has made clear that "[t]he ADA

14    prohibits discrimination because of disability, not inadequate

15    treatment for disability."  Simmons v. Navajo County, Ariz.,

16    609 F.3d 1011, 1022 (9th Cir. 2010).  Accordingly, this Court

17    declines to follow Anderson and finds that Plaintiffs have failed

18    to plead facts sufficient to allege that the Defendants

19    discriminated against Decedent because of his disability.

20    Defendants' Motion to Dismiss Plaintiffs' fifth cause of action

21    is GRANTED with leave to amend.

22

23          **D.   Plaintiffs' Sixth Cause of Action for Violation of
24               California's Unruh Civil Rights Act.**

25          Plaintiffs allege that Defendants County of Sutter and

26    County of Yuba violated California Civil Code §§ 51 and 52

27    ("Unruh Act") by failing to reasonably accommodate Decedent's

28    disability and treatment needs.

                                   22

1  Defendants argue Plaintiffs' claim must be dismissed because

2  SYMHS and Sutter County Jail are not "business establishments"

3  subject to the Unruh Act.

4        The Unruh Act provides that "[a]ll persons within the

5  jurisdiction of this state are free and equal, and...are entitled

6  to the full and equal accommodations, advantages, facilities,

7  privileges, or services in all business establishments of every

8  kind whatsoever."  Cal. Civ. Code § 51(b).  Although the

9  California Supreme Court has found that the Legislature intended

10 the term "business establishment" be interpreted "in the broadest

11 sense reasonably possible," Isbister v. Boys' Club of Santa

12 Cruz, Inc., 40 Cal. 3d 72, 78 (1985), the Unruh Act has yet to be

13 applied to claims against correctional facilities, see Lee v.

14 Wilkinson, 2009 WL 2824758 at *7 (E.D. Cal. 2009).  Instead,

15 several district courts have explicitly found that prisons are

16 not business establishments under the Unruh Act.  See Taormina v.

17 Cal. Dep't of Corr., 946 F. Supp. 829, 834 (S.D. Cal. 1996);

18 Wilkins-Jones v. County of Alameda, 2010 WL 4780291 at *9 (N.D.

19 Cal. 2010) (finding defendant County of Alameda was not liable

20 under Unruh Act).  The Court finds this authority persuasive and

21 holds that Sutter County Jail is not a business establishment

22 under the Unruh Act.[7]  Accordingly, Plaintiffs claim under the

23 Unruh Act arising out of Decedent's treatment at Sutter County

24 Jail fails.

25 _____

26 [7] Plaintiffs' analogy to public school districts is unpersuasive,
   as it has been well established that public school districts are
27 business establishments subject to the Unruh Act.  See, e.g.,
   D.K. ex rel. G.M. v. Solano County Office of Educ., 2008 WL
28 5114965 at *6 (E.D. Cal. Dec. 2, 2008).

1   Notably, Plaintiffs do not distinguish between SYMHS and

2   Sutter County Jail in their FAC or Opposition.  Without deciding

3   whether SYHMS is subject to the Unruh Act at this point, the

4   Court finds it also appropriate to dismiss Plaintiffs' claims

5   relating to Decedent's treatment at SYMHS because Plaintiffs have

6   not alleged facts substantiating their conclusory allegation that

7   Decedent was discriminated against in violation of the Unruh Act

8   while at SYMHS.

9

10   **E.   Plaintiffs' Seventh Cause of Action for Professional**
         **Negligence/medical Malpractice.**

11

12   Plaintiffs allege Defendants County of Sutter, County of

13   Yuba, Zil, Barnett and Meer were negligent in their failure to

14   properly assess and treat Decedent's serious mental illness.

15   First and foremost, the entity Defendants move to dismiss

16   this claim on the ground that they are immune from liability

17   because Plaintiffs failed to provide a statutory basis for the

18   cause of action.  Under California Government Code section 815,

19   "a public entity is not liable for an injury, whether such injury

20   arises out of an act or omission of the public entity or a public

21   employee or any other person, except as provided by statute."

22   Cal. Gov. Code § 815(a).  Plaintiffs concede that Defendants'

23   Motion to Dismiss should be granted as to the County of Sutter

24   and County of Yuba in light of Section 815.  Accordingly, this

25   claim against Defendants County of Sutter and County of Yuba is

26   dismissed without leave to amend.

27   ///

28   ///

24

1    Turning to the individually named Defendants, Plaintiffs

2  generally allege that Defendants Zil, Barnett and Meer were

3  negligent in their failure to appropriately assess and evaluate

4  Decedent, to prescribe necessary psychiatric medication, to

5  ensure compliance with that medication and to ensure proper

6  treatment.  Plaintiffs further allege that Defendant Barnett was

7  negligent in discharging Decedent from SYMHS to Sutter County

8  Jail in early April 2010.

9    These Defendants argue that they are immune from liability

10  under California Government Code sections 855.6 and 855.8.

11  Section 855.6 shields a public employee from liability "for

12  injury caused by the failure to make a[n] examination, or to make

13  an adequate [] examination,...for the purpose of determining

14  whether [a] person has a...mental condition that would constitute

15  a hazard to the health and safety of himself or others."

16  Similarly, Section 855.8 provides that a public employee is not

17  liable "for injury resulting from diagnosing or failing to

18  diagnose that a person is afflicted with mental illness [] or

19  from failing to prescribe for mental illness...."  Cal. Gov. Code

20  § 855.8(a).  Defendants correctly argue that Plaintiffs'

21  allegations regarding their alleged failure to properly assess

22  and evaluate Decedent, as well as their alleged failure to

23  prescribe appropriate medications, fall squarely within sections

24  855.6 and 855.8, and therefore, they are immune from liability on

25  that basis.

26  ///

27  ///

28  ///

1    Plaintiffs nonetheless argue that the immunity granted under

2    section 855.6 does not apply in "situation[s] where the defendant

3    fails to provide medical care for a prisoner in obvious need of

4    such care," as set forth in <u>Lum v. City of San Joaquin</u>,

5    756 F. Supp. 2d 1243 (E.D. Cal. 2010).  However, Plaintiffs do

6    not cite to any facts pled in their FAC demonstrating that it was

7    "obvious" to Defendants Zil, Barnett and Meer that Decedent

8    needed any care that they failed to provide.  Accordingly,

9    Defendants' Motion to Dismiss is granted with respect to

10   Plaintiffs' negligence claims arising out of Defendants' alleged

11   failure to properly evaluate Decedent or prescribe medication for

12   any mental condition.

13   Plaintiffs' allegations regarding Defendants' alleged

14   failure to ensure Decedent complied with his prescriptions and

15   received appropriate treatment arguably fall within an exception

16   to immunity codified in Section 855.8(d).  <u>See</u> Cal. Gov. Code

17   § 855.8(d) (employee not shielded from liability for an injury

18   "caused by his negligent or wrongful act or omission in

19   administering any treatment prescribed for mental illness....").

20   Defendants, however, correctly point out that Plaintiffs' FAC

21   does not contain facts relating to each individually named

22   Defendant's failure to ensure compliance with prescriptions or

23   proper treatment.  Indeed, Plaintiffs only allege that Defendant

24   Zil and other Defendants provided "grossly inadequate treatment"

25   and that Defendant Meer failed to keep an appointment with

26   Decedent.  These allegations alone do not demonstrate that any

27   Defendant failed to properly administer any prescribed treatment,

28   consequently causing Decedent's death.

1  Accordingly, Defendants' Motion to Dismiss Plaintiffs' seventh

2  claim for relief is granted as to this theory as well.

3      Finally, although Plaintiffs allege Defendant Barnett

4  negligently discharged Decedent on April 2, 2010, there are no

5  facts in the FAC to support this allegation.  See FAC at ¶¶ 79-85

6  (alleging, generally, that Defendants should not have discharged

7  Decedent).  Plaintiffs allege that Decedent was seen by Defendant

8  Barnett, but they do not plead any facts relating to a decision

9  made by Defendant Barnett regarding Decedent's transfer from

10  SYHMS to Sutter County Jail.  Id.  Accordingly, without factual

11  support, Plaintiffs' claim that Defendant Barnett negligently

12  discharged Decedent must be disregarded, see Twombly, 550 U.S. at

13  555, and Defendants' Motion to Dismiss Plaintiffs' seventh claim

14  for relief relating to Defendant Barnett's allegedly negligent

15  discharge of Decedent is granted.  Plaintiffs' seventh cause of

16  action is thus dismissed with leave to amend.

17

18      **F.   Plaintiffs' Eight Cause of Action for Negligence/**
        **Negligence Per Se.**

19

20      Plaintiffs allege that all individually named Defendants had

21  a duty to operate and manage SYMHS and Sutter County Jail, as

22  defined by various laws, standards and regulations, and

23  Defendants' breach of those duties caused Decedent's injuries.

24  Defendants correctly argue that Plaintiffs have failed to

25  identify any specific statute, ordinance or regulation in support

26  of their claim, and for this reason, Plaintiffs' claim for

27  negligence per se is dismissed with leave to amend.

28  ///

1  See Twombly, 550 U.S. at 555; Cal. Evid. Code § 669 (1967);

2  accord Lorbeer v. American Tel. & Tel. Co., 958 F.2d 377 (9th

3  Cir. 1992) (finding a plaintiff's negligence per se claim failed

4  "because he [did] not idenif[y] a specific, relevant statutory

5  violation...").

6

7      **G.    Plaintiffs' Ninth Cause of Action for Negligent**
           **Supervision, Training, Hiring and Retention.**
8

9      Plaintiffs allege Defendants Parker, Sherry, Bhattal and

10 Luz were negligent in hiring, supervising, training and retaining

11 employees and thus caused Decedent's injuries.   Defendants

12 correctly argue that Plaintiffs' claim must be dismissed because

13 Plaintiffs have failed to provide a statutory basis for their

14 cause of action.

15     Plaintiffs' ninth claim is really a claim against the

16 entities and not the employees.   See, e.g., Sanders v. City of

17 Fresno, 2006 WL 1883394, *11 ("'Failure to train...is a "direct"

18 act on the part of the entity, not on the part of the

19 employee.'") (quoting Reinhardt v. Santa Clara County, 2006 WL

20 662741 (N.D. Cal. Mar. 15, 2006)); see also Megargee ex rel.

21 Lopez v. Wittman, 2006 WL 2988945, *10 n.2 (E.D. Cal.).   Pursuant

22 to California Government Code § 815, however, public entities

23 cannot be held directly liable in tort except as specifically

24 provided by statute.   Caldwell v. Montoya, 10 Cal. 4th 972, 980

25 (1995).   Neither the parties nor the Court has identified a

26 statutory basis for the entities' liability in this case.   See,

27 e.g., Megargee, 2006 WL 2988945 at *10.   Accordingly, Plaintiffs'

28 ninth cause of action must be dismissed.

### H.   Plaintiffs' Tenth Cause of Action for Failure to Furnish/Summon Medical Care.

Plaintiffs allege that Defendants Parker, Sherry, Bhattal, Luz, Zil, Barnett and Meer knew, or had reason to know, that Decedent was in need of immediate medical and mental health care, yet they failed to take action to summon or provide care. Plaintiffs further allege that Defendants failed to timely respond to Decedent's "psychotic episode" on April 29 when "he engaged in numerous acts of self-harm before hanging himself...." Defendants argue that because Plaintiffs' FAC does not contain any facts relating to each individual Defendants' actual or constructive knowledge of an immediate need for care for a serious or obvious medical condition, however, Plaintiffs' tenth cause of action must be dismissed.

A claim for failure to furnish medical care is based on a violation of California Government Code § 845.6, which states in pertinent part:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but... a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care..."

In their FAC, Plaintiffs only refer to one Defendant specifically that had contact with Decedent at Sutter County Jail between April 2 and April 29, 2010: Defendant Zil.  Specifically, Plaintiffs allege that on April 8, Zil had an in-person psychiatric meeting with Decedent.

///

1   There are no further allegations, however, regarding Zil's

2   knowledge of Decedent's <u>immediate</u> need for medical care and his

3   subsequent failure to summon care.  Although Plaintiffs pled that

4   Defendants generally knew, or should have known, about Decedent's

5   need for further psychiatric treatment, the facts presented by

6   Plaintiffs in their FAC are not sufficient to demonstrate that

7   each named Defendant had actual or constructive knowledge of

8   Decedent's immediate need for care.  <u>Compare</u>, <u>e.g.</u>, <u>Jett</u>,

9   439 F.3d 1091 (finding disputed issues of fact precluded summary

10  judgment on the inmate-plaintiff's failure to summon medical care

11  claim because a doctor ordered follow-up visits for plaintiff

12  following a fracture to his thumb and plaintiff filed repeated

13  requests to be seen by a health care provider, which were ignored

14  by defendants); <u>see also</u> Twombly, 550 U.S. at 555.  Accordingly,

15  Plaintiffs' claim for failure to summon medical care is dismissed

16  with leave to amend.

17

18      **I.   Plaintiffs' Eleventh Cause of Action for Wrongful**
        **Death.**

19

20      Plaintiffs allege that Decedent's injuries in this case are

21  a result of the negligence of all Defendants, and therefore,

22  Defendants are liable under California Code of Civil Procedure

23  377.60 for the funeral and burial expenses incurred by

24  Plaintiffs.  Defendants argue that this claim is duplicative of

25  Plaintiffs' negligence claim as to Defendants Zil, Barnett, and

26  Meer.  Defendants further argue that Plaintiffs fail to allege

27  facts sufficient to state a claim against the remaining

28  Defendants for negligence.

1   Plaintiffs correctly argue that a claim for wrongful death

2   is a separate cause of action.  See Ruiz v. Podolsky, 50 Cal. 4th

3   838, 844 (Cal. 2010).  Indeed, "'[u]nlike some jurisdictions

4   where wrongful death actions are derivative, [section] 377.60

5   creates a new cause of action in favor of the heirs as

6   beneficiaries, based upon their own independent pecuniary injury

7   suffered by loss of a relative, and distinct from any the

8   deceased might have maintained had he survived.'" Id. (quoting

9   Horwich v. Superior Court, 21 Cal. 4th 272, 283 (Cal. 1999).

10  However, Plaintiffs have failed to allege facts sufficient to

11  demonstrate that Defendants' negligence caused Decedent's death.

12  See supra at 5-8.  Accordingly, Defendants' Motion to Dismiss

13  Plaintiffs' eleventh cause of action is granted with leave to

14  amend.

15

16                          **CONCLUSION**

17

18      For the reasons set forth above, Defendants' Motion to

19  Dismiss (ECF No. 11) is GRANTED without leave to amend as to

20  Plaintiffs' seventh cause of action against Defendants County of

21  Sutter and County of Yuba, and GRANTED with leave to amend as to

22  all of Plaintiffs' remaining claims.[8]  Not later than thirty (30)

23  days following the date this Memorandum and Order is

24  electronically filed, Plaintiff may (but is not required to) file

25  a Second Amended Complaint.

26  _____

27  [8] Given that this Court has dismissed Plaintiffs' entire FAC,
    Defendants' additional request to strike Plaintiffs' prayer for
28  punitive damages is DENIED as moot.

1    If no amended complaint is filed within said thirty-day
2  period, without further notice to the parties, those causes of
3  action dismissed by virtue of this Order will be deemed dismissed
4  with prejudice.
5    IT IS SO ORDERED.
6
   Dated: February 7, 2012
7
8                                    _____
9                                    MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                   32