1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                          EASTERN DISTRICT OF CALIFORNIA
10
11   CYNDIE DENNY BOCK, et al.,               No.  2:11-cv-00536-MCE-GGH
12                   Plaintiffs,
13          v.                                MEMORANDUM AND ORDER
14   COUNTY OF SUTTER, et al.,
15                   Defendants.
16
17          This action for damages was initiated by the estate and surviving family members

18   of Rodney Louis Bock ("Decedent").  Plaintiffs Estate of Rodney Louis Bock, by and

19   through Cyndie Denny Bock, as Administrator, Kimberly Bock, Kelly Bock, Hillary Bock,

20   M.B., a minor through her guardian ad litem Cyndie Denny Bock, Laura Lynn Bock, and

21   the Estate of Robert Bock (collectively "Plaintiffs") seek to recover from Defendants

22   County of Sutter; County of Yuba; J. Paul Parker, Sutter County Sheriff's Department

23   Sheriff ("Parker"); David Samson, Sutter County Jail Division Commander ("Samson");

24   Norman Bidwell, Sutter County Jail Corrections Lieutenant ("Bidwell"); John S. Zil ("Zil");

25   Christopher Barnett ("Barnett"); Bobby Joe Little ("Little"); David Calapini ("Calapini");

26   Shaun Fliehman ("Fliehman"); R.C.; Katy Mullin ("Mullin"); Denise McGinnis

27   ("McGinnis"); and the Sutter County Jail Facility Manager ("Facility Manager")

28   ///

1

1   (collectively, "Defendants") for injuries sustained as a result of Decedent's suicide while

2   incarcerated at Sutter County Jail ("Jail").  Presently before the Court is Defendants'

3   Motion to Dismiss ("Motion") Plaintiffs' Third Amended Complaint ("TAC").[1]  For the

4   following reasons, Defendants' Motion is GRANTED in part and DENIED in part.[2]

5

6                                  **BACKGROUND**[3]

7

8          Decedent was a self-employed farmer in Marysville, California, for over 30 years.

9   In late 2009, he began experiencing mental health issues and required psychiatric

10  treatment.  On several occasions from 2009 through 2010, Decedent was involuntarily

11  hospitalized pursuant to California Welfare & Institutions Code § 5150 ("Section 5150")

12  at the Sutter-Yuba Mental Health Services facility ("SYMHS"),[4] which was operated and

13  managed by Defendants County of Sutter and County of Yuba.

14         SYMHS provides a variety of mental health care services both to adults residing

15  in Sutter and Yuba counties and to inmates at the Jail.  Because SYMHS has only

16  roughly sixteen inpatient beds, nine to eleven of which are typically filled at any one time,

17  Plaintiffs believe SYMHS staff members personally know, or should know, all patients.

18  ///

19  ///

20  ///

21  _____

22         [1]  Within the Motion, Defendants also seek to strike Plaintiffs' punitive damages
    allegations and move alternatively for a more definite statement.  Despite the potentially

23  different standards governing these requests, the Court will for convenience refer to
    Defendants' Motion generally as a Motion to Dismiss.

24
           [2] Because oral argument will not be of material assistance, the Court ordered this

25  matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

26         [3] The following facts are derived from Plaintiffs' TAC.

27
           [4] On two occasions, Decedent was involuntarily held for additional periods

28  pursuant to California Welfare & Institutions Code § 5250 ("Section 5250").

1    Decedent was first hospitalized at SYMHS on approximately November 30, 2009.

2   During that time, he was documented as psychotic, delusional and grandiose.

3   Defendant Barnett, a psychiatrist employed by SYMHS, and other staff evaluated and

4   treated Decedent and diagnosed him with, among other things, "Bipolar I Disorder, Most

5   Recent Episode Manic, Severe with Psychotic Features."

6    On various occasions, Decedent did indeed exhibit delusional and paranoid

7   behavior, and, eventually, on or around January 14, 2010, Decedent was arrested as a

8   result of an incident at an Applebee's restaurant.  Criminal charges were filed against

9   him, and he was taken to the Jail.  According to Plaintiffs, the Jail has the capacity to

10   house approximately two-hundred prisoners, and, given its relatively small size, Jail staff

11   and supervisors must therefore have, or reasonably should have, personal knowledge of

12   all inmates, especially those exhibiting psychotic behaviors.

13    On January 15, 2010, while still housed at the Jail, Decedent was referred to

14   SYMHS for a psychiatric evaluation, at which time SYMHS staff again documented his

15   psychiatric history, which included his history of delusions.  In addition, later in January,

16   after Decedent had been released from the Jail, he was again treated at SYMHS,

17   pursuant to one of the above-mentioned involuntary holds, by Barnett and other staff,

18   some of whom confirmed Decedent's serious psychiatric diagnoses and recommended

19   15-minute safety checks and daily treatment.

20    In the meantime, on or around January 27, 2010, the Sutter County Superior

21   Court judge presiding over Decedent's then-pending criminal case ordered Decedent to

22   undergo a separate psychological evaluation to determine whether he was competent to

23   stand trial.  The physician conducting that evaluation concluded that Decedent's highly

24   unstable psychiatric condition rendered him incompetent to be tried.

25    Just over one month later, on March 1, 2010, another Sutter County Superior

26   Court judge ordered a placement evaluation of Decedent.  A different physician than the

27   one who evaluated Decedent's competency confirmed Decedent's psychiatric history

28   and recommended that Decedent receive outpatient treatment.

1   Subsequently, in late March, Decedent, who still continued to experience

2   paranoia and delusions, began to believe he was being "direct[ed]" to drive to his

3   nephew's home in Idaho.  Decedent eventually followed that "direction," but was

4   returned to California by his nephew.  In the interim, however, Decedent had missed a

5   court date and, as a result, a warrant had been issued for his arrest.

6   On April 1, 2010, Decedent was again taken by his family to SYMHS for

7   evaluation and treatment.  Barnett confirmed Decedent's prior diagnosis of Bipolar I

8   Disorder, Manic with Severe Psychotic Features, and identified his need for inpatient

9   hospitalization or "state hospital placement."  The next day, Barnett determined that

10  Decedent needed at least an additional two weeks of involuntary psychiatric

11  hospitalization pursuant to Section 5150.  Decedent was thereafter required pursuant to

12  Section 5150 to remain hospitalized for a 72-hour period of treatment and evaluation

13  unless his psychiatrist believed after personal observation that he could leave earlier.

14  Notwithstanding these observations, that same day, Barnett discharged and

15  transferred Decedent, pursuant to the pending warrant, to the custody of Sutter County

16  Sheriff's Department, and he was again placed at the Jail.  According to Plaintiffs,

17  Defendants transferred Decedent to the Jail in contravention of Welfare & Institutions

18  Code § 5152 ("Section 5152") and despite their knowledge of Decedent's urgent need

19  for inpatient care.  Plaintiffs also allege that, at the time of Decedent's discharge,

20  Defendant Barnett and SYMHS staff provided a wholly inadequate treatment plan for

21  Decedent.  In addition, Plaintiffs allege that Defendant Fliehman, as Deputy Officer of

22  Sutter County Jail, improperly booked Decedent into the Jail without conducting an

23  adequate assessment of his suicide risk and thus erroneously placed Decedent in a

24  general population jail cell.  Decedent was held in custody at Sutter County Jail as a

25  pretrial detainee from April 2, 2010, until April 29, 2010.

26  ///

27  ///

28  ///

4

1    During that time, Defendant Zil, who actually authored a Sutter County Jail
2  Suicide Prevention Handbook in which he identified signs of suicide risk among jail
3  inmates (e.g., visual or auditory hallucinations, severe paranoia, delusions and ideas of
4  grandeur), was assigned as Decedent's treating physician.  Zil was informed of
5  Decedent's condition and prescribed him psychiatric medication.  In total, Zil had one
6  clinical contact with Decedent.  Given these facts, Plaintiffs allege that Zil knew or should
7  have known that Decedent was refusing to take his prescribed psychiatric medications.

8    In the meantime, the physician who had conducted Decedent's original court-
9  ordered placement evaluation sent a letter to the court retracting his outpatient treatment
10 recommendation.  Shortly thereafter, on April 19, the judge who had ordered Decedent's
11 placement evaluation found Decedent incompetent to stand trial, suspended all pending
12 proceedings, and ordered that Decedent be transferred to Napa State Hospital for
13 treatment.  Plaintiffs allege that Defendants Parker in his role as Sutter County Sheriff,
14 Samson as Jail Commander, Bidwell as Jail Lieutenant, and the Sutter County Jail
15 Facility Manager knew or should have known about this order, but nonetheless failed to
16 transfer him, despite the fact the State Hospital was prepared to accept Decedent for
17 treatment and had transmitted notice of its acceptance to these Defendants.

18   Plaintiffs further allege that Defendants Little and Calapini as officers assigned to
19 Decedent's general housing pod, R.C. who was responsible for providing mental health
20 and/or medical services at the Jail, and Sutter County Jail Nurses Mullin and McGinnis
21 each had interactions with and observations of Decedent in the days prior to his death.
22 It is alleged that each Defendant observed and documented one or more indicators that
23 Decedent required further treatment.

24   By April 24, Decedent was unstable and unkempt, was talking to himself and to
25 inanimate objects and was refusing his medication.  According to Plaintiffs, no further
26 evaluation of Decedent was conducted, however, nor was any further treatment
27 undertaken.
28 ///

1        Plaintiffs thus allege Defendants failed to appropriately assess and medicate

2   Decedent upon his incarceration at the Jail.  More specifically, Plaintiffs allege

3   Defendants failed to appropriately assess Decedent's suicide risk.  In addition, Plaintiffs

4   contend that, on April 29, 2010, Defendants Little and Calapini were responsible for

5   conducting hourly safety checks of Decedent.  They failed, however, to conduct the 8:00

6   p.m. check and, consequently, using items that Plaintiffs allege should not have been

7   permitted in Decedent's cell due to his psychiatric condition, Decedent fashioned a

8   noose and hanged himself from the upper bunk.  When he was found, there were large

9   amounts of blood covering the cell floor and walls, apparently a result of Decedent

10   banging his head against the wall in a very violent manner.  Defendants Little, Calapini,

11   Fliehman and McGinnis purportedly failed to timely respond or provide life-saving

12   intervention or treatment to Decedent.  Decedent died in his cell.

13        Since that time, the Sutter County Grand Jury issued a report finding, among

14   other things, that the Jail has known deficiencies with relation to its provision of mental

15   health care and medical treatment to inmates.  For example, the Grand Jury found

16   deficiencies such as inadequate medical staffing, lack of required training on suicide

17   prevention and other medical treatment, non-compliant medical policies and procedures

18   and a non-compliant medical program.  According to the Grand Jury, those deficiencies

19   were "unacceptable."  Plaintiffs also allege that, since Decedent's death, several other

20   inmates have also passed away from preventable causes.

21        By this suit, Plaintiffs now assert eleven causes of action against Defendants

22   arising out of Decedent's death.  Defendants move to dismiss each claim and/or for a

23   more definitive statement and move to strike Plaintiffs' prayer for punitive damages.  For

24   the foregoing reasons, Defendants' Motion is GRANTED in part and DENIED in part.

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STANDARD**

**A.  Motion to Dismiss for Failure to State a Claim.**


On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[5], all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'"  Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  Id.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  The Court also is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

Furthermore, "Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citation omitted).

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**B. Motion for More Definite Statement.**

Before interposing a responsive pleading, a defendant may move for a more definitive statement if "a pleading...is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A Rule 12(e) motion is proper when the plaintiff's complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted. Gay-Straight Alliance Network v. Visalia Unified Sch. Dist., 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).

///

///

///

8

1   Due to the liberal pleading standards in the federal courts embodied in Rule 8(e)

2   and the availability of extensive discovery, courts should not freely grant motions for

3   more definitive statements.  Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp.

4   940, 949 (E.D. Cal. 1981).  Indeed, a motion for a more definitive statement should be

5   denied unless the information sought by the moving party is not available or is not

6   ascertainable through discovery.  Id.

7

8   **ANALYSIS**

9   **A. Plaintiffs' first claim for relief against the individual Defendants for their
      deliberate indifference to Decedent's serious medical needs.**

10

11

12   In their first through third causes of action, Plaintiffs seek relief under the

13   Fourteenth Amendment for the individual Defendants' alleged deliberate indifference to

14   Decedent's serious medical needs.  As opposed to prisoner claims under the Eighth

15   Amendment, a pretrial detainee is entitled to be free of cruel and unusual punishment

16   under the due process clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S.

17   520, 537 n.16 (1979); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017-18 (9th Cir.

18   2010).  A pretrial detainee's due process right in this regard is violated when a defendant

19   fails to promptly and reasonably procure competent medical aid when the pretrial

20   detainee suffers a serious illness or injury while confined.  Estelle v. Gamble, 429 U.S.

21   97, 104-05 (1976).  In order to establish a plausible claim for failure to provide medical

22   treatment, a plaintiff must plead sufficient facts to permit the Court to infer that:

23   (1) Decedent had a "serious medical need"; and (2) a Defendant was "deliberately

24   indifferent" to that need.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); cf. Farmer

25   v. Brennan, 511 U.S. 825, 834 (1994).  A serious medical need exists when "failure to

26   treat a prisoner's condition could result in further significant injury or the unnecessary

27   and wanton infliction of pain."  Jett, 439 F.3d at 1096 (internal citations and quotations

28   omitted).

9

1   The deliberate indifference standard has been specifically applied to inmates' suicide

2   prevention.  Clouthier v. County of Contra Costa, 591 F.3d 1232, 1241 (9th Cir. 2010).

3           The Supreme Court, in Farmer, explained in detail the contours of the "deliberate

4   indifference" standard.  Specifically, a Defendant is not liable under the Fourteenth

5   Amendment for his part in allegedly denying necessary medical care unless he knew "of

6   and disregard[ed] an excessive risk to [Decedent's] health or safety."  511 U.S. at 837.

7   Deliberate indifference lies "somewhere between the poles of negligence at one end and

8   purpose or knowledge at the other."  Id. at 836.  Deliberate indifference contains both an

9   objective and subjective component: "the official must both be aware of facts from which

10   the inference could be drawn that a substantial risk of serious harm exists, and he must

11   also draw that inference."  Id.  Plaintiffs "need not show that a prison official acted or

12   failed to act believing that harm actually would befall an inmate; it is enough that the

13   official acted or failed to act despite his knowledge of a substantial risk of serious harm."

14   Id. at 842.

15           With regard to the subjective "knowledge" component, the Supreme Court
         held that: [Whether a defendant] had the requisite knowledge of a
16           substantial risk is a question of fact subject to demonstration in the usual
         ways, including inference from circumstantial evidence ... and a fact finder
17           may conclude that a prison official knew of a substantial risk from the very
         fact that the risk was obvious.
18

19   Id. (emphasis added).  However, it is not enough to demonstrate that a reasonable

20   person should have known of the risk.  A reasonable trier of fact must be able to properly

21   infer that the particular Defendant did in fact know of the risk.  Id. at 842-843; see also

22   Wilson v. Seiter, 501 U.S. 294, 299 (1991).  The threshold for inaction to constitute

23   deliberate indifference is high.  See Conn v. City of Reno, 591 F.3d 1081, 1097 (9th Cir.

24   2009) (holding that the magnitude of the risk must be "so obvious that [the defendant]

25   must have been subjectively aware of it").

26   ///

27   ///

28   ///

1    The crux of the individual Defendants' motion to dismiss Plaintiffs' first cause of

2  action is that "Plaintiffs admit [Decedent] was seen by mental health providers, and was

3  prescribed medications, but fall short of alleging any Defendant was aware of any

4  suicidal ideation for which they failed to reasonably act."  Motion, 1:20-2:1.  Defendants

5  are correct that the TAC contains no allegation indicating Decedent ever stated he was

6  suicidal.  The Court nonetheless finds Plaintiffs' remaining allegations sufficient to state a

7  deliberate indifference claim against each of the individual Defendants for, as explained

8  below: 1) improper transfer of Decedent from SYMHS to the Jail; 2) failure to provide

9  medical care at the Jail; and 3) failure to transfer Decedent from the Jail to the State

10  Hospital.

11

12                    **1.  Improper transfer from SYMHS to the Jail (against Defendants
                              Barnett and Fliehman).**

13

14    Plaintiffs' deliberate indifference cause of action arising out of Decedent's

15  purportedly improper discharge from SYMHS for transfer to the Jail is directed at

16  Defendants Barnett and Fliehman.  As to Barnett, Plaintiffs contend he failed to properly

17  complete a suicide assessment when Decedent was discharged to the Jail, despite

18  having been held for less than the 72-hours mandated by state law.  See Cal. Welf. &

19  Inst. Code § 5152(a).  Barnett purportedly confirmed Decedent's diagnosis of Bipolar I

20  disorder, Manic with Severe Psychotic Features, and recommended interventions,

21  including provision of a "safe and structured milieu" and "redirection as required [and]

22  observ[ation] for safety" to protect Decedent.  TAC, ¶ 83.  In addition, Barnett determined

23  that Decedent required at least two additional weeks of involuntary psychiatric

24  hospitalization pursuant to Section 5250.  Barnett nonetheless discharged Decedent just

25  one day into his involuntary hold, despite having the subjective knowledge that the Jail

26  "could not, and would not, provide the necessary hospital-level treatment" Decedent

27  required.  Id., ¶¶ 88-89.

28  ///

1   Given Plaintiffs' allegations that Barnett was subjectively aware that Decedent's

2   condition posed safety concerns, and that Barnett disregarded those concerns in

3   discharging Decedent, Plaintiffs have adequately stated a claim against this Defendant.

4           Plaintiffs similarly aver that Fliehman improperly booked Decedent into the Jail

5   without conducting an adequate assessment of his suicide risk and that Fliehman thus

6   erroneously placed Decedent in a general population jail cell.  According to Plaintiffs,

7   Fliehman had access to and reviewed Decedent's discharge documentation and other

8   SYMHS materials indicating that he had been committed due to his grave disability, that

9   he was psychotic, grandiose and delusional, with markedly impaired insight and

10  judgment and that he had been further diagnosed as described above.  Despite this

11  knowledge, Fliehman allegedly placed Decedent in a general population single cell

12  without providing for appropriate safety observations.  These allegations are sufficient

13  under Rule 8 to support an inference that Fliehman knew Decedent suffered from a

14  serious mental illness that could result in his self-harm and that Fliehman was

15  deliberately indifferent to that risk.  Accordingly, Defendants' Motion to Dismiss is

16  DENIED as to both Barnett and Fliehman.

18          **2.  Failure to provide medical care at the Jail (against Defendants Zil,
            Little, Calapini, R.C., Mullin and McGinnis).**

21          First, as to Defendant Zil, Decedent's treating physician at the Jail, Plaintiffs

22  allege he prescribed Decedent lithium, a drug used to treat bipolar disorder and to

23  reduce the risk of self-harm.  Plaintiffs further aver that Zil knew that Decedent had been

24  involuntarily hospitalized, that he was delusional, that he was diagnosed with psychosis,

25  that he was expressing grandiose ideas and that he was refusing to take his prescribed

26  medication.  Finally, Plaintiffs allege that Zil authored a Sutter County Jail Suicide

27  Prevention Handbook, in which he listed many of Decedent's symptoms as "well-known

28  signs of suicide risk among jail inmates."  TAC, ¶ 104.

12

1   Based on these facts, Plaintiffs have sufficiently alleged that Zil knew Plaintiff had a

2   serious mental illness that could result in his own self-harm and that Zil was deliberately

3   indifferent to that risk.  Zil's Motion to Dismiss Plaintiffs' first cause of action is thus

4   DENIED.

5       Plaintiffs' allegations as to Defendants Calapini, Little, Mullin, McGinnis and R.C.

6   are sufficient as well.  According to Plaintiffs, each of these Defendants was aware that

7   Decedent: 1)  had been transferred to the Jail from SYMHS where he was being

8   involuntarily hospitalized pursuant to Section 5150; 2) was still delusional, suffering from

9   hallucinations or was psychotic;  3) was engaging in acts of self-harm in his cell; and 4)

10  was refusing psychiatric medications, which placed Decedent at increased risk of self-

11  harm and suicide.  These allegations, taken together, support the inference that each

12  Defendant, "knowing of Decedent's need for a different treatment, disregarded

13  Decedent's serious medical needs and therefore deliberately denied, delayed or

14  interfered with that treatment, thus exhibiting deliberate indifference."  Smith v. County of

15  San Diego, 2012 WL 628307, *5 (S.D. Cal. Feb. 27, 2012).  Defendants' Motion to

16  Dismiss Plaintiffs' first cause of action as to Calapini, Little, Mullin, McGinnis and R.C. is

17  thus DENIED.

18

19              **3.  Failure to transfer Decedent from the Jail to the State Hospital
                     (against Defendants Parker, Samson, Bidwell and Facility**
20                   **Manager).**

21

22      Plaintiffs' deliberate indifference claim against Defendants Parker, Samson,

23  Bidwell and the Jail Facility Manager is based on their failure to timely transfer Plaintiff to

24  the Napa State Hospital.  According to Plaintiffs, on April 19, 2010, Decedent was

25  ordered to be promptly transferred to that psychiatric facility.  That order was placed in a

26  county file that was available to SYMHS and Jail staff.  Plaintiffs aver that Defendant

27  Parker knew or should have known of this order and that he failed to timely effect

28  Decedent's transfer.

1   Plaintiffs likewise contend that Defendant Samson, who was responsible for inmate

2   admissions and discharges, and Defendant Bidwell, who was also responsible for

3   transfer of mentally or medically ill inmates, were both informed or should have been

4   informed of that order and that the Facility Manager reviewed the April 19 transfer order

5   as well.  Finally, Plaintiffs contend that Napa State Hospital had notified Sutter County

6   that Decedent was approved for admission and that each Defendant had been informed

7   of such approval.  These Defendants nonetheless failed to timely effectuate Decedent's

8   transfer.  Accordingly, despite their knowledge of Decedent's psychiatric history already

9   detailed above, Defendants were deliberately indifferent to Decedent's need for inpatient

10  treatment.  Plaintiffs have thus adequately stated a claim here, and Defendants' Motion

11  to Dismiss is DENIED as to Parker, Samson, Bidwell and Facility Manager.

12

13    **B. Plaintiffs' first and second claims for relief against the County of Sutter
          and County of Yuba for deliberate indifference to Decedent's serious
14        medical needs.**

15

16      A municipality may be liable for violating a party's constitutional rights resulting

17  from a policy, ordinance, or regulation pursuant to a governmental custom.  Monell v.

18  Dep't of Social Servs., 436 U.S. 658 (1978).  The policy must be the "moving force"

19  behind the constitutional violation.  Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950,

20  957 (9th Cir. 2008).  Section 1983 requires that there is an actual connection or link

21  between the actions of a defendant and the deprivation alleged to have been suffered by

22  the plaintiff.  Id.  In sum, to survive Defendants' Motion to Dismiss, then, Plaintiffs must

23  allege sufficient facts to permit the court to infer the plausibility of each of the following

24  elements: (1) an employee violated the Plaintiffs' constitutional rights; (2) the municipality

25  has customs or policies that amount to deliberate indifference to those rights; and (3)

26  those customs or policies where the moving force behind the violation of the employee's

27  constitutional rights.  Gibson v. County of Washoe, 290 F.3d 1175, 1193-94 (9th Cir.

28  2002).

14

1    By way of their Motion to Dismiss, Defendants contend first that Plaintiffs have

2  failed to allege an underlying constitutional violation as required under <u>Monell</u>.  Second,

3  Defendants point out a distinction between a one-time occurrence and a more

4  comprehensive or ongoing policy.  Lastly, Defendants argue that Plaintiffs fail to allege a

5  causal connection between any policy and the resulting constitutional violations.  In other

6  words, Defendants argue that Plaintiffs have not demonstrated that Defendants'

7  omissions directly caused Decedent's suicide.

8    First, as detailed above, Plaintiffs' TAC adequately alleges constitutional

9  violations by employees of both the County of Sutter and the County of Yuba.  In

10  addition, Plaintiffs specifically allege the existence of a number of the entity Defendants'

11  policies, customs or practices that purportedly contributed to Decedent's death.  Namely,

12  Plaintiffs allege that those policies and practices include, but are not limited to, the

13  following:

14    Failure to conduct appropriate and complete suicide assessments;

15    Failure to create and implement appropriate mental health treatment
16    plans;

     Failure to follow clinical judgments and recommendations;
17
     Failure to promptly evaluate and transfer inmates to a psychiatric hospital
18    who are gravely disabled and at risk of serious harm;

19    Failure to take precautions to prevent suicide among high risk and
     mentally ill inmates;
20
     Failure to implement appropriate emergency treatment policies;
21
     Failure to provide appropriate staffing and training at the Jail to provide
22    minimally adequate treatment for seriously ill inmates.

23  TAC, ¶ 159.  Given the early stage of this litigation, in which the facts are not fully

24  developed, the Court declines to hold that Plaintiffs cannot plausibly show that the above

25  policies, procedures or customs amount to deliberate indifference.

26  ///

27  ///

28  ///

1    Finally, any of these policies could likewise plausibly be found to be the "moving

2    force" behind the constitutional violation alleged here.  "[F]or liability to attach in this

3    circumstance the identified deficiency in a city's training program must be closely related

4    to the ultimate injury." City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989).  In other

5    words, there must be a causal link between the municipal policy or custom and the

6    claimed constitutional violation.  Id.  The "closely related" or "moving force" requirement

7    is akin to the tort law causation standard of proximate cause.  See Harper v. City of Los

8    Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).  "[P]roximate cause, although derived

9    from tort law, fairly describes a Plaintiffs' causation burden with respect to a municipal

10   liability claim under § 1983."  Cash v. County of Erie, 654 F.3d 324, 342 (2d Cir. 2011)

11   (internal citations omitted).  Specifically, the court must determine whether the

12   constitutional deprivation was a foreseeable result of the alleged inadequate training.

13   Cf. Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir.

14   1981) (explaining that causation in the context of certain Section 1983 cases "closely

15   resembles the standard 'foreseeability' formulation of proximate cause").  Again based

16   on the early stage at which this question is presented here, and drawing all inferences in

17   Plaintiffs' favor, the Court cannot hold as a matter of law that the entity Defendants'

18   policies were not the moving force behind the deprivation of Decedent's constitutional

19   rights.[6]  Defendants' Motion to Dismiss the first and second causes of action as to the

20   County of Sutter and the County of Yuba is thus DENIED.

21        [6] The Court's decision is not changed by the existence of an express policy
22   requiring that "[i]nmates with suspected mental disorders, who are a potential danger to
     themselves or others or appear to be gravely disabled shall be promptly evaluated and,
23   if clinically indicated, transferred to an appropriate psychiatric treatment
     facility….Regardless of the time of presentation, significantly disordered behavior should
24   be evaluated promptly, within twenty-four hours at the latest.  The Jail Lieutenant or Jail
     Facility Manager will be contacted and will make every effort to transfer mentally
25   disordered inmates to appropriate treatment facilities.  All attempts and efforts to
     implement the transfer of such inmates, whether successful or not, shall be
26   documented." TAC, ¶ 127.  Rather, if, as alleged in the TAC, a valid policy is either
     unconstitutionally applied or not applied, "the city is liable if the employee has not been
27   adequately trained and the constitutional wrong has been caused by that failure to train."
     City of Canton, 489 U.S. at 387.

28

1   **C. Plaintiffs' first and third claims for relief against the Supervisory**
2       **Defendants for deliberate indifference to Decedent's serious medical**
        **needs.**

3

4       Defendants move to dismiss claims against Defendants Parker, Samson and

5   Bidwell on "supervisory liability" grounds.  Plaintiffs argue that each of said Defendants

6   knew that Decedent was prematurely and improperly transferred to Sutter County Jail

7   and that Defendants improperly created an environment in which credentialed custody

8   staff did not possess the authority to determine who could be sent to the hospital.

9   Plaintiffs assert that Defendants Parker, Samson and Bidwell "tacitly encouraged, ratified

10  and/or approved of the acts and/or omissions" which allegedly violated Decedent's

11  constitutional rights.  TAC, ¶ 166.  Plaintiffs argue that the Court should infer that

12  ignoring inmates' serious medical needs was customary and wrongfully condoned by

13  said Defendants.  For their part, Defendants contend that Plaintiffs' allegations are too

14  vague and inchoate because they lack specific facts regarding each supervisory

15  Defendant's role in the alleged constitutional violations.

16      "In order for a person acting under color of state law to be liable under section

17  1983 there must be a showing of personal participation in the alleged rights deprivation:

18  there is no respondeat superior liability under section 1983." Jones v. Williams, 297 F.3d

19  930, 934 (9th Cir. 2002).  "Supervisory liability is imposed against a supervisory official in

20  his individual capacity for his own culpable action or inaction in the training, supervision,

21  or control of his subordinates, for his acquiescence in the constitutional deprivations of

22  which the complaint is made, or for conduct that showed a reckless or callous

23  indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th

24  Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)).  In

25  other words, each government official may only be held liable for his own misconduct.

26  Bowell v. Cal. Substance Abuse Treatment Facility, 2011 WL 2224817, at *4 (E.D. Cal.

27  June 7, 2011).

28  ///

1    However, government officials acting as supervisors may be liable under § 1983

2    under certain circumstances.  A defendant may be held liable as a supervisor under §

3    1983 if there exists either: "(1) his or her personal involvement in the Constitutional

4    deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

5    conduct and the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir.

6    1989).  Thus, Section 1983 actions against supervisors are proper "as long as a

7    sufficient causal connection is present and the plaintiff was deprived under color of law

8    of a federally secured right."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting

9    Redman v. County of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991)).

10    The requisite causal connection between a supervisor's wrongful conduct and the

11    violation of the prisoner's constitutional rights can be established in a number of ways.

12    Plaintiffs may show that a supervisor set in motion a series of acts by others, or

13    knowingly refused to terminate a series of acts by others, which the supervisor knew or

14    reasonably should have known would cause others to inflict a Constitutional injury.

15    Dubner v. City of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001).  Similarly, a

16    supervisor's own culpable action or inaction in the training, supervision, or control of his

17    subordinates may establish supervisory liability.  Starr, 652 F.3d at 1208.  Finally, a

18    supervisor's acquiescence in the alleged constitutional deprivation, or conduct showing

19    deliberate indifference toward the possibility that deficient performance of the task may

20    violate the rights of others, may establish the requisite causal connection.  Id.; Menotti,

21    409 F.3d at 1149.

22    The Court dismissed Plaintiffs' supervisory liability claim in their First Amended

23    Complaint on the basis that it did not sufficiently plead facts demonstrating each

24    supervisory Defendant's role in any alleged deprivation.  However, the additional facts

25    pled in Plaintiffs' TAC allow the Court to infer that a reasonable trier of fact, after

26    discovery, could reasonably find that the supervisory Defendants were aware of and

27    failed to act on constitutional violations regularly practiced by the Sutter County Jail.

28    ///

18

1    The very fact that, as alleged, Decedent's court-ordered transfer, which could have

2    saved his life, was purportedly disregarded implicates the supervisors because the type

3    of error alleged suggests that the mistake was a result of flawed measures which were

4    likely implemented by employees in managerial roles.  Defendants' Motion to Dismiss

5    Plaintiffs' Supervisory Liability claim against Defendants Parker, Samson and Bidwell is

6    therefore DENIED.

7

8        **D. Plaintiffs fourth claim for relief for loss of parent/child relationship.**

9

10        Plaintiffs' fourth cause of action asserts that all Defendants violated the First and

11   Fourteenth Amendments by depriving Plaintiffs of their liberty interest in the parent-child

12   relationship.  Defendants attack those allegations on the basis that Plaintiffs' allegations

13   are so overly broad that they fail to state a claim.

14        The due process claim protects the right to familial relations between family

15   members.  See, e.g., Stanley v. Illinois, 405 U.S. 645, 651 (1972) ("The integrity of the

16   family unit has found protection in the Due Process Clause of the Fourteenth

17   Amendment....") (citing Meyer v. Nebraska, 262 U.S. 390, 399 (1923)).  However, only

18   official conduct that "shocks the conscience" is cognizable as a due process violation.

19   County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citing Rochin v. Cal., 342

20   U.S. 165, 172-73 (1952)).  The threshold question in such cases is "whether the

21   behavior of the governmental officer is so egregious, so outrageous, that it may fairly be

22   said to shock the contemporary conscience."  Lewis, 523 U.S. at 847 n. 8.  The type of

23   conduct which is most likely to rise to the "conscience-shocking level" is "conduct

24   intended to injure in some way unjustifiable by any government interest."  Id. at 849.

25   Conduct which was not intentional, but rather was deliberately indifferent, may

26   nevertheless rise to the conscience-shocking level in some circumstances.  Id. at 849–

27   50.

28   ///

19

1    Plaintiffs' instant claim is predicated on the allegations set forth in Plaintiffs' first,

2  second, and third causes of action.  More specifically, Plaintiffs allege that the

3  "aforementioned acts and/or omissions of Defendants in being deliberatively indifferent

4  to [Decedent]," through their direct actions or failure to take measures to prevent

5  Decedent's suicide, amount to a violation of the Plaintiffs' rights under the substantive

6  due process clauses of the First and Fourteenth Amendments.  TAC, ¶ 171.  For the

7  same reasons already discussed in the preceding sections, Plaintiffs' allegations that

8  Defendants were deliberately indifferent to Decedent's serious medical needs are

9  likewise sufficient to demonstrate that any Defendant's conduct "shocks the conscience."

10  Indeed, Plaintiffs have pled adequate facts demonstrating that Defendants' conduct

11  meets the requisite standard to establish a substantive due process violation.

12  Accordingly, Defendants' Motion to Dismiss Plaintiffs' fourth claim for relief is DENIED.

13

14    **E.  Plaintiffs' fifth claim for relief for violation of Title II of the Americans
    with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.**

15

16

17    In their fifth cause of action, Plaintiffs allege that Defendants County of Sutter and

18  County of Yuba discriminated against Decedent in violation of the Americans with

19  Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Section 504 of the

20  Rehabilitation Act, 29 U.S.C. § 794, et seq., "based on the denial of appropriate

21  placement, services, and setting that were necessary to reasonably accommodate his

22  mental disability needs" at the Jail.  TAC, ¶ 180.  Plaintiffs further allege that Defendants

23  failed to provide accommodations for Decedent's disability, "resulting in the denial of the

24  benefits of the Jail's services, programs, and/or activities that included the care and

25  custody necessary for an inmate to survive his pre-trial detention without serious injury."

26  Id., ¶ 132.

27  ///

28  ///

1   Defendants argue that Plaintiffs' claims under the ADA and Section 504 of the

2   Rehabilitation Act must be dismissed because Plaintiffs fail to present facts identifying

3   how Decedent was denied treatment, or which particular programs Decedent was denied

4   access to, because of his disability.  In their Opposition, Plaintiffs argue that their claims

5   are based on Defendants' total withholding of treatment for Decedent and aver that

6   Decedent was "unable to access the care available to non-disabled inmates."

7   Opposition, 20:15-16.

8       Both the ADA and Rehabilitation Act prohibit disability discrimination.  Specifically,

9   Title II of the ADA provides that "no qualified individual with a disability shall, by reason

10  of such disability, be excluded from participation in or be denied the benefits of the

11  services, programs, or activities of a public entity, or be subject to discrimination by such

12  entity." 42 U.S.C. § 12132.  The ADA defines "public entity" in relevant part as "any

13  State or local government" or "any department, agency, special purpose district, or other

14  instrumentality of a State or States or local government," 42 U.S.C. § 12131(1)(A)-(B),

15  and the Supreme Court has found that "[s]tate prisons fall squarely within the [statute's]

16  definition of public entity."  Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206,

17  210 (1952) (internal quotations and citations omitted).  Section 504 of the Rehabilitation

18  Act states that "[n]o otherwise qualified handicapped individual in the United States . . .

19  shall, solely by reason of his handicap, be excluded from the participation in, be denied

20  the benefits of, or be subjected to discrimination under any program or activity receiving

21  Federal financial assistance." 29 U.S.C. § 794.  Both the ADA and the Rehabilitation Act

22  have been found to apply to services, programs and activities for detainees.  See, e.g.,

23  Pierce v. County of Orange, 526 F.3d 1190, 1214-1215 (9th Cir. 2008).

24      Although Plaintiffs allege Decedent did not receive adequate medical treatment,

25  there are no facts in the TAC demonstrating that Defendants did not provide treatment to

26  Decedent because he was disabled.  See Alexander v. Tilton, 2009 WL 464486, at *7

27  (E.D. Cal. Feb. 24, 2009) (finding plaintiff's allegations that he didn't receive proper

28  medical treatment did not state a claim under the ADA or Rehabilitation Act).

1   Put differently, Plaintiffs have not pled that Decedent was treated differently than other

2   inmates who did not suffer from a disability.  Peacock v. Terhune, 2002 WL 459928, at

3   *2 (E.D. Cal. Jan. 23, 2002) (finding a plaintiff stated a claim under the ADA because he

4   alleged he was treated differently as a paraplegic than other inmates who did not suffer

5   from the same or a similar disability).  While Plaintiffs continue to allege that Decedent

6   had a greater risk of harm than other inmates, they fail to show that Decedent was

7   denied benefits that others were offered.  Indeed, Plaintiffs do not allege that any other

8   inmates were offered mental health services or in-house clinical visits that Decedent was

9   denied.

10          Therefore, because the pleadings do not adequately demonstrate that the other

11  inmates were offered any services that Decedent was denied as a result of his disability,

12  this Court finds that Plaintiffs have failed to plead facts sufficient to allege that the

13  Defendants discriminated against Decedent because of his disability.  Defendants'

14  Motion to Dismiss Plaintiffs' fifth cause of action is thus GRANTED with leave to amend.

15

16          **F.  Plaintiffs' sixth claim for relief for violation of California's Unruh Civil
            Rights Act.**

17

18

19          Plaintiffs allege that Defendants County of Sutter and County of Yuba violated

20  California Civil Code §§ 51 and 52 ("Unruh Act") by failing to reasonably accommodate

21  Decedent's disability and treatment needs.  Defendants argue Plaintiffs' claim must be

22  dismissed because SYMHS and Sutter County Jail are not "business establishments"

23  subject to the Unruh Act.

24          The Unruh Act prohibits "business establishments" from engaging in intentional

25  discrimination.  Cal. Civ. Code § 51(b).  Although the California Supreme Court has

26  found that "the Legislature intended the phrase 'business establishment' be interpreted

27  'in the broadest sense reasonably possible,'" the Unruh Act has yet to be applied to

28  claims against correctional facilities.

22

1    <u>Isbister v. Boys' Club of Santa Cruz, Inc.</u>, 40 Cal. 3d 72, 78 (1985) (internal citations

2    omitted).  Instead, several district courts have explicitly found that prisons are not

3    business establishments under the Unruh Act.  <u>See</u>, <u>e.g.</u>, <u>Taormina v. Cal. Dep't of</u>

4    <u>Corr.</u>, 946 F. Supp. 829, 834 (S.D. Cal. 1996); <u>Wilkins-Jones v. County of Alameda</u>,

5    2010 WL 4780291, at *9 (N.D. Cal. Nov. 16, 2010).  The Court finds this authority

6    persuasive and holds that Sutter County Jail is not a business establishment under the

7    Unruh Act.  Accordingly, Plaintiffs claim under the Unruh Act arising out of Decedent's

8    treatment at Sutter County Jail fails.

9        Plaintiffs nonetheless correctly argue that SYMHS is subject to the Unruh Act

10    because it is a public health facility.  Numerous courts have considered medical facilities

11    to be business facilities.  <u>See</u>, <u>e.g.</u>, <u>North Coast Women's Care Med. Group, Inc. v. San</u>

12    <u>Diego County Superior Court</u>, 44 Cal. 4th 1145, 1153 (2008) ("A medical group providing

13    medical services to the public has been held to be a business establishment for

14    purposes of the [Unruh] Act.") (hereafter, "<u>North Coast</u>"); <u>Washington v. Blampin</u>, 226

15    Cal. App. 2d 604 (Cal. App. 1964) ("There is nothing novel in referring to the practice of

16    medicine as a business.").  Defendants contend that the case Plaintiffs rely on, <u>North</u>

17    <u>Coast</u>, is distinguishable because it concerns a private medical group and SYMHS is a

18    public medical facility.  This argument is unpersuasive because the Unruh Act prohibits

19    discrimination in places of public accommodation and covers "all business

20    establishments of every kind whatsoever."  <u>Warfield v. Peninsula Golf & Country Club</u>,

21    10 Cal. 4th 594, 599-615 (1995); <u>Isbister</u>, 40 Cal. 3d at 75.  This Court therefore now

22    holds that a public medical facility is a "business establishment" for purposes of the

23    Unruh Act.  <u>See</u> <u>Isbister</u>, 40 Cal. 3d at 75.

24        That being said, the Unruh Act provides that "[a]ll persons within the jurisdiction of

25    this state are free and equal, and...are entitled to the full and equal accommodations,

26    advantages, facilities, privileges, or services in all business establishments of every kind

27    whatsoever."  Cal. Civ. Code § 51(b).

28    ///

The purpose of the Unruh Act "is to compel a recognition of the equality of citizens in the right to the peculiar service afforded" by the entities covered by the acts. *Marina Point, Ltd. v. Wolfson,* 30 Cal. 3d 721, 738 (1982) (quoting Piluso v. Spencer, 36 Cal. App. 416, 419 (Cal. Ct. App. 1918)).  In addition, the Unruh Civil Rights Act protects only against intentional discrimination.  Pack v. Fort Washington II, 689 F. Supp. 2d 1237, 1249 (E.D. Cal. 2009).  Nowhere in Plaintiffs' TAC do they adequately suggest SYMHS engaged in intentional discrimination again Decedent, as prohibited by Cal. Civ. Code § 51(b).  Thus, Plaintiffs do not adequately allege SYMHS discriminated against Decedent.  Accordingly, because Plaintiffs cannot establish that Sutter County Jail is a "business establishment," or that SYMHS intentionally discriminated against Decedent, Defendants' Motion to Dismiss Plaintiffs' Unruh Act claim is GRANTED with leave to amend.

### G. Plaintiffs' seventh claim for relief for professional negligence/medical malpractice.

Plaintiffs allege Zil and Barnett were negligent in their failure to properly assess and treat Decedent's serious mental illness, to prescribe necessary psychiatric medication, to ensure compliance with that medication, and to ensure proper treatment. Plaintiffs further allege that Defendant Barnett was negligent in discharging Decedent from SYMHS to Sutter County Jail in early April 2010.

These Defendants argue to the contrary that they are immune from liability under California Government Code §§ 855.6 and 855.8.  Section 855.6 shields a public employee from liability "for injury caused by the failure to make a[n] examination, or to make an adequate [] examination,...for the purpose of determining whether [a] person has a...mental condition that would constitute a hazard to the health and safety of himself or others."

///

24

1  Similarly, Section 855.8 provides that a public employee is not liable "for injury resulting

2  from diagnosing or failing to diagnose that a person is afflicted with mental illness [] or

3  from failing to prescribe for mental illness...." Cal. Gov. Code § 855.8(a).  Defendants

4  argue that Plaintiffs' allegations regarding their alleged failure to properly assess and

5  evaluate Decedent, as well as their alleged failure to prescribe appropriate medications,

6  fall squarely within Sections 855.6 and 855.8, and therefore, they are immune from

7  liability on that basis.

8        Plaintiffs nonetheless argue that the immunity granted under Section 855.6 does

9  not apply in "situation[s] where the defendant fails to provide medical care for a prisoner

10 in obvious need of such care," as set forth in Lum v. City of San Joaquin, 756 F. Supp.

11 2d 1243 (E.D. Cal. 2010).  Plaintiffs contend that Decedent was obviously in need of

12 medical care, pointing to Decedent's serious mental illnesses and visible symptoms

13 stemming from those illnesses.  They argue that Zil knew of these symptoms and yet he

14 wrongfully failed to order further evaluations or direct observation therapy.  They further

15 allege that Barnett stated that Decedent needed at least two additional weeks of

16 hospitalization given his symptoms and instead inappropriately (and illegally) approved

17 Decedent's transfer to the jail in a negligent manner.  Plaintiffs allege sufficient facts to

18 survive dismissal with respect to claims arising out of Zil's alleged failure to properly

19 evaluate Decedent or prescribe medication for Decedent's mental condition and

20 Barnett's failure to properly evaluate Decedent or prescribe medications and negligent

21 discharge.  Moreover, determining whether or not Decedent's illnesses and symptoms

22 made it "obvious" to Defendants Zil and Barnett that Decedent was suicidal requires a

23 heavy fact-finding process, which is best left to a jury.  Accordingly, Defendants' Motion

24 to Dismiss Plaintiffs' professional negligence/medical malpractice claim is DENIED.

25 ///

26 ///

27 ///

28 ///

1

2

**H. Plaintiffs' eighth claim for relief for negligence/negligence per se (against Defendants Barnett and Fliehman).**

3

4      Plaintiffs allege that Defendants Barnett and Fliehman acted negligently and

5    improperly, breached their respective duties, and as a direct and proximate result,

6    Decedent and Plaintiffs suffered injuries and damages.  Accordingly to Plaintiffs, as

7    already stated, Barnett was responsible for completing multiple psychiatric evaluations of

8    Decedent, as well as for planning his treatment and placement.  In fact, Barnett allegedly

9    ordered the involuntary emergency psychiatric hospitalization of Decedent for at least 72

10   hours of treatment pursuant to Section 5150, after which he determined that Decedent

11   likely required two weeks of involuntary psychiatric hospitalization.  Yet, Barnett

12   nonetheless discharged Decedent from the psychiatric hospital after only 24 hours, in

13   violation of Section 5152.  In opposition, Defendants argue that, despite these facts,

14   Plaintiffs do not adequately allege Decedent was placed on an <u>involuntary</u> 72-hour hold

15   because a family member voluntarily turned him over to SYMHS so Section 5152 should

16   not apply.  In addition, according to Defendants, the transfer did not cause Decedent's

17   later death, and Section 5152 was not designed to prevent this later-occurring suicide.

18       As to Fliehman, Plaintiffs allege he violated Section 5150 when he booked

19   Decedent in the Sutter County Jail and placed him in a general population single cell

20   "with no direct observation for safety, although he knew or should have known that

21   [Decedent] required <u>at least</u> two (2) weeks of <u>additional</u> involuntary psychiatric

22   hospitalization given his psychotic condition and inability to provide for his own needs."

23   TAC, ¶¶ 6-7 (emphasis in original).  In opposition here, however, Defendants argue that

24   the booking at the jail was pursuant to the outstanding warrant, not Section 5150.

25   Defendants further argue that the transfer did not cause Decedent's later death and that

26   Section 5150 was not designed to prevent this later-occurring suicide.

27   ///

28   ///

26

1    To allege a sufficient claim for negligence per se, Plaintiffs must identify a specific

2 statute, ordinance, or regulation in support of their claim.  See Cal. Evid. Code § 669(a)

3 ("The failure of a person to exercise due care is presumed if: (1) He violated a statute,

4 ordinance, or regulation of a public entity; (2) The violation proximately caused death or

5 injury to a person or property; (3) The death or injury resulted from an occurrence of the

6 nature which the statute, ordinance, or regulation was designed to prevent; and (4) The

7 person suffering the death or the injury to his person or property was one of the class of

8 persons for whose protection the statute, ordinance, or regulation was adopted.");

9 accord Lorbeer v. American Tel. & Tel. Co., 958 F.2d 377 (9th Cir. 1992) (finding a

10 plaintiff's negligence per se claim failed "because he [did] not identif[y] a specific,

11 relevant statutory violation...").  In light of the above arguments, the Court finds that

12 Plaintiffs adequately allege facts that Barnett violated Section 5152 by allegedly

13 discharging Decedent before the required 72-hour time and before finding that Decedent

14 no longer needed treatment.  Moreover, the Court finds that Plaintiffs adequately allege

15 facts that Fliehman violated Section 5150 when he purportedly knowingly placed

16 Decedent into an unapproved facility incapable of providing adequate support.

17 Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim for negligence per se is

18 DENIED.

19

20    **I.   Plaintiffs' ninth claim for relief for failure to furnish/summon medical
21        care (against Defendants Little, Calapini, Fliehman, R.C., Mullin and
         McGinnis).**

22

23    Plaintiffs allege that Defendants Little, Calapini, Fliehman, R.C., Mullin, and

24 McGinnis knew, or had reason to know, that Decedent was in need of immediate

25 medical and mental health care, yet they failed to take action to summon or provide care,

26 resulting in Decedent's death, thereby violating California Government Code §§ 844.6

27 and 845.6.

28 ///

1   Plaintiffs further allege that Defendants failed to timely respond to Decedent's "psychotic

2   episode" when "he engaged in numerous acts of self-harm before hanging himself...."

3   TAC, ¶ 205.  Defendants nonetheless argue that Plaintiffs do not allege that these

4   Defendants had actual or constructive knowledge that Decedent was in need of

5   immediate medical care.

6        A claim for failure to furnish medical care is based on a violation of California

7   Government Code § 845.6, which states in pertinent part:

8        Neither a public entity nor a public employee is liable for injury proximately
     caused by the failure of the employee to furnish or obtain medical care for
9        a prisoner in his custody; but... a public employee, and the public entity
     where the employee is acting within the scope of his employment, is liable
10       if the employee knows or has reason to know that the prisoner is in need
     of immediate medical care and he fails to take reasonable action to
11       summon such medical care...

12  Plaintiffs allege that Little "observed [Decedent] banging himself against his cell door,

13  yelling about or at people who did not exist, describing various hallucinations, and

14  refusing his psychiatric medication."  TAC, ¶ 114.  Plaintiffs also allege that Officer

15  Calapini had significant interaction with Decedent in April 2010 and that he "observed

16  [Decedent] engaging in acts of self-harm in his cell, having delusions and hallucinations,

17  and refusing his psychiatric medication."  Id., ¶ 115.  Moreover, Plaintiffs allege that

18  Fliehman was in contact with Decedent at the time he was placed and booked in the

19  Sutter County Jail, and that Fliehman was on notice of Decedent's psychotic condition

20  and need for emergency treatment.  Plaintiffs further contend that Defendant R.C. "was

21  informed on or about April 24, 2010 that [Decedent's] condition had deteriorated to an

22  alarming level; that he was unstable and talking to himself and to inanimate objects; and

23  that he was refusing his medications."  Id., ¶ 116.  They also allege that R.C. observed

24  and documented that Decedent "was experiencing delusions and hallucinations, and

25  was making alarming statements suggesting suicidal thoughts."  Id., ¶ 117.

26  ///

27  ///

28  ///

1    As to Nurses Mullin and McGinnis, Plaintiffs allege that they observed and recorded

2    Decedent's refusal to take his psychiatric medications, observed him engaging in acts of

3    self-harm and having delusions and hallucinations.  Id., ¶¶ 118-19.

4          The Court finds that Plaintiffs allege sufficient facts as to each Defendant to

5    support the claim that each had actual or constructive knowledge that Decedent was in

6    need of immediate medical care and that each failed to summon care.  See, e.g., Jett,

7    439 F.3d 1091 (finding disputed issues of fact precluded summary judgment on the

8    inmate-plaintiff's failure to summon medical care claim because a doctor ordered follow-

9    up visits for plaintiff following a fracture to his thumb and plaintiff filed repeated requests

10   to be seen by a health care provider, which were ignored by defendants); see also

11   Twombly, 550 U.S. at 555.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim

12   for failure to summon medical care is DENIED.

13

14         **J.  Plaintiffs' tenth claim for relief for negligent supervision, training, hiring
            and retention.**

15

16

17         Plaintiffs allege Defendant County of Sutter was negligent in hiring, supervising,

18   training, and retaining employees and thus caused Decedent's injuries.  According to

19   Plaintiffs, Defendant's failure resulted in the violation of three statutes that establish a

20   specific duty of care and/or basis for liability, including violation of Sections 5150 and

21   5152 and of California Government Code § 845.6.  Defendants argue that Plaintiffs'

22   claim must be dismissed because Defendant is immune under California Government

23   Code § 815 and because "California does not recognize a common law tort claim of

24   negligence against a public entity for the negligent 'selection, training, retention,

25   supervision, and discipline' of its employees."  Motion, 20:5-12.  However, as stated in

26   the Court's previous Order, pursuant to California Government Code § 815, a public

27   entity can be held directly liable in tort as specifically provided by statute.  Caldwell v.

28   Montoya, 10 Cal. 4th 972, 980 (1995).

1        The Court must thus determine whether each of the alleged violated statutes

2   imposes a mandatory duty on the County of Sutter.  *Haggis v. City of Los Angeles*, 22

3   Cal. 4th 490, 498 (2000) ("First and foremost, application of section 815.6 requires that

4   the enactment at issue be *obligatory,* rather than merely discretionary or permissive, in

5   its directions to the public entity; it must *require,* rather than merely authorize or permit,

6   that a particular action be taken or not taken.").  Courts apply the mandatory duty

7   element "rather strictly, and generally find a mandatory duty only if the enactment

8   imposes the duty and provides implementing measures or requires specific conduct." All

9   Angels Preschool/Daycare v. County of Merced, 197 Cal. App. 4th 394, 402 n.8 (Cal.

10  App. 2011).  The mandatory duty requires that the statute not be merely discretionary or

11  permissive, "it must require, rather than merely authorize or permit, that a particular

12  action be taken or not taken" by the public entity.  Haggis, 22 Cal.4th at 498.

13        California Government Code § 845.6 imposes such a mandatory duty.  It states

14  that a public entity "is liable if the employee knows or has reason to know that the

15  prisoner is in need of immediate medical care and he fails to take reasonable action to

16  summon such medical care."   Cal. Gov. Code § 845.6 (emphasis added).  Section 5152

17  similarly requires that a person admitted pursuant to Section 5150 "shall be released

18  before 72 hours have elapsed only if the psychiatrist directly responsible for the person's

19  treatment believes, as a result of the psychiatrist's personal observations, that the

20  person no longer requires evaluation or treatment." Cal. Welf. & Inst. Code § 5152

21  (emphasis added).   The Court determines that Section 5152, in its entirety, especially

22  given its use of the phrase "only if," imposes a mandatory duty.

23        To the contrary, however, Section 5150 states that a person "may" be taken into

24  custody and placed in a facility for treatment and evaluation if, as a result of mental

25  disorder, he is a danger to others, or to himself or herself, or gravely disabled.  Use of

26  the word "may" is permissive, and, therefore, Section 5150 does not impose a

27  mandatory duty.

28  ///

1    Accordingly, the Defendants' Motion to Dismiss Plaintiffs' negligent supervision

2  cause of action as it pertains to Government Code § 845.6 and Section 5152 is DENIED.

3  The Defendants' Motion to Dismiss Plaintiffs' negligent supervision cause of action as it

4  pertains to Section 5150 is GRANTED with leave to amend.

5

6        **K.  Plaintiffs' eleventh claim for relief for wrongful death.**

7

8    Plaintiffs allege that Decedent's injuries in this case are a result of the "wrongful

9  and/or negligent acts and/or omissions of Defendants" and, therefore, Defendants are

10  liable under California Code of Civil Procedure § 377.60 for wrongful death.  Defendants

11  argue that Plaintiffs fail to allege a duty or what duty was breached, and that Plaintiffs'

12  allegations regarding causation are conclusory.

13    In order to adequately allege a wrongful death claim, Plaintiffs must allege a

14  wrongful act or neglect on the part of one or more persons that caused the death of

15  another person.  Garcia v. County of Fresno, 2005 WL 3143429, *6 (E.D. Cal. Nov. 21,

16  2005).  For the reasons already stated, Plaintiffs meet this standard.  Plaintiffs have

17  alleged facts sufficient to demonstrate that Defendants' negligence caused Decedent's

18  death.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' eleventh cause of action is

19  DENIED.

20

21        **L.  Plaintiffs' prayer for punitive damages.**

22

23    Defendants' move to strike Plaintiffs' request for punitive damages.  Rule 12(f),

24  however, is the improper vehicle by which to attack damages allegations.  Whittlestone,

25  Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir. 2010).  Such attacks should

26  instead be made pursuant to Rule 12(b)(6).  Id.  Accordingly, the Court now construes

27  Defendants' instant Motion as a motion to dismiss pursuant to Rule 12(b)(6).

28  ///

31

1    Defendants first attack Plaintiffs' prayer for punitive damages against the medical

2   Defendants (Zil, Barnett, Mullin, and McGinnis) because, prior to initiating this litigation,

3   Plaintiffs did not petition the Court in compliance with California Code of Civil Procedure

4   § 425.13.  To adequately plead a prayer for punitive damages against medical providers

5   under California state law, Plaintiffs must petition the court for punitive damages

6   pursuant to Section 425.13.  Cal. Code Civ. Proc. § 425.13; Thomas v. Hickman, 2006

7   WL 2868967, at *39-41 (E.D.Ca., Oct. 6, 2006).  Defendants correctly point out that

8   Plaintiffs have neither requested nor obtained an order from the Court allowing for

9   recovery of punitive damages against medical defendants for the state claims in

10   accordance with Section 425.13.  Id.  Thus, Plaintiffs' prayer for punitive damages

11   against medical defendants (i.e., Zil, Barnett, Mullins, and McGinnis) for state claims is

12   dismissed with leave to amend.

13    The Court must still nonetheless address Plaintiffs' prayer for punitive damages

14   for state claims against non-medical Defendants and for federal claims against all

15   Defendants.  Punitive damages are appropriate in an action brought under 42 U.S.C.

16   § 1983.  Punitive damages are available "'when the defendant's conduct is shown to be

17   motivated by evil motive or intent, or when it involves reckless or callous indifference to

18   the federally protected rights of others.'"  Kennedy v. Los Angeles Police Dept., 901 F.2d

19   702, 707 (9th Cir. 1989) (quoting Smith v. Wade, 461 U.S. 30, 56 (1971)).  Under

20   California law, "where it is proven by clear and convincing evidence that the defendant

21   has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual

22   damages, may recover damages for the sake of example and by way of punishing the

23   defendant."  Cal. Civil Code § 3294(a).  Malice is defined as despicable conduct done

24   with a willful and conscious disregard of the rights or safety of others and oppression is

25   defined as despicable conduct that subjects a person to cruel and unjust hardship in

26   conscious disregard of that person's rights.  Id., § 3294(c).

27    This Court has already determined that Defendants' actions shock the

28   conscience.  Therefore, Plaintiffs have also adequately alleged Defendants' "conduct

is…motivated by evil motive or intent" and that Defendants' acts were malicious and oppressive.  *Smith,* 461 U.S. at 56; Cal. Civil Code § 3294.  Accordingly, Defendants' Motion to Strike Plaintiffs' Prayer for Punitive Damages, construed as a motion to dismiss, as it relates to Plaintiffs' federal claims against the Individual Defendants and to state claims against Defendants' Bidwell, Facility Manager, Parker, Samson, Little, Calapini, R.C. and Fliehman is DENIED.

**M. Defendants' Motion for More Definite Statement.**

Defendants' Motion for More Definite Statement is DENIED.  Plaintiffs have provided sufficient facts to survive a 12(e) motion because the pleading is not so vague or ambiguous that Defendants cannot frame a responsive pleading.  Fed. R. Civ. P. 12(e).

**CONCLUSION**

For the reasons stated above, County Defendants' Motion (ECF No. 36) is GRANTED in part and DENIED in part, consistent with the foregoing.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint on those issues as to which the motion to dismiss was granted..  If no amended complaint is filed within said twenty (20) day period, without further notice to the parties, the causes of action dismissed by virtue of this Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:  August 30, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE