MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
AARON J. FISCHER – 247391
KATHRYN G. MANTOAN – 239649
LORI E. RIFKIN – 244081
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
afischer@rbgg.com
kmantoan@rbgg.com
lrifkin@rbgg.com

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN, LC
155 Montgomery Street, Suite 901
San Francisco, California 94104-4166
Telephone: (415) 982-2600
Facsimile: (415) 358-4562
Email: gerilynngreen@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Estate of RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK; HILLARY BOCK; M.B., minor through her mother and guardian ad litem Cyndie Denny Bock; and LAURA LYNN BOCK; Estate of ROBERT BOCK,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SUTTER; COUNTY OF YUBA; J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; DAVID SAMSON, Sutter County Jail Division Commander; NORMAN BIDWELL, Sutter County Jail Corrections Lieutenant; JOHN S. ZIL; CHRISTOPHER BARNETT; BOBBY JOE LITTLE; DAVID CALAPINI; SHAUN FLIEHMAN; R.C.; KATY MULLIN; DENISE MCGINNIS; SUTTER COUNTY JAIL FACILITY MANAGER; and Does I through XL, inclusive,<br><br>Defendants. | Case No. CIV 11-cv-00536 (MCE) (GGH)<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT ON PLAINTIFFS' MOTION TO COMPEL**<br><br>Judge: Hon. Kendall J. Newman<br>Date: May 2, 2013<br>Time: 10:00 am<br>Crtrm.: 25 |

# TABLE OF CONTENTS


Page

I. PLAINTIFFS' POSITION ..... 1

A. Details of Meet and Confer ..... 2

B. Statement of the Nature of the Action and its Factual Disputes ..... 6

1. Relevant Procedural Background ..... 6

2. Factual Background ..... 8

C. Plaintiffs' Argument as to Discovery Requests at Issue ..... 10

1. Personnel and Staff Development Files for Defendants McElfresh, Crane, and Rai ..... 10

2. Improperly Withheld Documents from Personnel Files of Defendants Calapini and Barnett ..... 11

(a) Defendant Calapini's Personnel File Documents Related to Termination for Failures to Conduct Safety Procedures at Jail and Lying about those Failures ..... 12

(b) Defendant Barnett's Personnel File Documents Related to Written Reprimand Regarding Failures in Admission and Discharge Procedures ..... 15

3. Investigative Reports, and Other Documents Related to Mr. Bock, Submitted to or Received from the Department of Justice and the Sutter County District Attorney ..... 16

4. Responsive Documents Identified in Deposition Testimony that Have Not Been Produced ..... 17

5. Responsive Documents Obtained Through a Reasonable Search of Electronic Files on County-Issued Devices of Individual Defendants and Relevant Custodians ..... 18

D. Plaintiffs Are Entitled to Reasonable Expenses in Bringing the Instant Motion Given the County's Failure to Comply with Its Discovery Obligations ..... 20

II. DEFENDANTS' POSITION ..... 23

A. Defendants MCELFRESH, RAINBOW CRANE and BALJINDER RAI ..... 25

B. Plaintiffs' Motion for Disclosure of Calapini's Records Should be Denied ..... 25

C. In-Camera Review and a Protective Order is Necessary ..... 27


[782656-6]

D. Plaintiffs' Motion for Disclosure of Dr. Barnett's Records Should be Denied ........ 28

E. Plaintiffs' Motion Regarding DOJ or Sutter County District Attorney Records Should be Denied ........ 28

F. The Motion to Compel Electronic Media Should be Denied ........ 29

G. The Motion to Compel Production of Documents "Identified in Deposition Testimony that Have Not Been Produced" Should be Denied ........ 29

H. The Motion for Sanctions Should Be Denied ........ 30

Plaintiff Estate of Rodney Bock, by and through CYNDIE DENNY BOCK, as Administrator ("the Estate" or "Plaintiffs"), and Defendant COUNTY OF SUTTER ("the County" or "Defendant County") hereby submit the following Joint Statement re Discovery Disagreement regarding Plaintiffs' motion to compel Defendant County of Sutter to comply with its discovery obligations as to the following:

(1) Personnel and staff development files for Defendants McElfresh, Crane, and Rai;

(2) Specific personnel file documents for Defendants Barnett and Calapini that have been withheld by the County on privilege grounds;

(3) Documents, including investigative reports and related materials, submitted to or received from the Department of Justice and the Sutter County District Attorney that relate to the death of Rodney Bock;

(4) Documents that have not been produced, but which County employees have testified in deposition exist and are responsive to previous document requests; and

(5) Documents, including but not limited to emails, obtained through a reasonable search of the County-issued devices of individual defendants and other relevant custodians.

Plaintiffs further seek an order awarding attorney's fees and costs incurred in bringing the instant motion as a sanction under Rule 37(a)(5)(A).

## I. PLAINTIFFS' POSITION

At the September 6, 2012 hearing on Plaintiffs' motion to compel, Magistrate Judge Hollows made clear to Defendants' counsel that "we're going to get the discovery flowing in this case," to which Defendants' counsel agreed. Hr'g Tr. 1:12-16. This unfortunately has not occurred. While the parties have continued to meet and confer, Defendants have continued to refuse to produce substantial discoverable materials.

Defendants' delays and failures to meet its discovery obligations has been a consistent theme in this litigation to date. The now-pending motion is the *fourth* motion to

compel that the Estate has been forced to file.[1] (Plaintiffs have been forced to file another motion to compel regarding the upcoming Rule 34 inspection of Sutter County Jail that has been noticed for May 30, 2013.) Defendants' delays and obstruction have increased the time and expenses incurred in this litigation and stalled depositions due to lack of document production necessary for such depositions. A pattern has emerged in which the County fails to respond to the Estate's overtures, forces the Estate to seek relief from the Court, and only belatedly complies with its obligations to avoid answering for its conduct before this Court.[2] Plaintiffs' counsel has been forced to spend enormous time and resources seeking clearly discoverable materials and information.

The Court denied Defendants' motion to dismiss Plaintiffs' claims in August 2012, and entered a scheduling order setting a settlement before Magistrate Judge Edmund F. Brennan on July 25, 2013. Dkt. No. 69. There is an urgent need to move discovery forward for purposes of reaching a possible resolution at the scheduled settlement conference, and for purposes of meeting all deadlines set by the Court in this case.

**A. Details of Meet and Confer**

Since Magistrate Judge Hollows issued his order directing Defendant County to comply with various discovery obligations in September 2012, the parties have conferred extensively, including by email, letter correspondence, phone, and in person, on the discovery matters detailed herein. A summary of the specific meet and confer history for each discovery dispute at issue in this motion is set forth below. Unfortunately, these meet and confers have been defined by the County's delay and lack of substantive response.

---

[1] Defendant County also moved for a protective order to prevent discovery from proceeding; the Court denied that motion in part and ordered that certain discovery proceed immediately, and that all discovery proceed following a brief stay. Dkt. No. 24.

[2] For example, digital color photographs of Mr. Bock's jail cell on the night of his death, formally requested in November 2011 and again in October 2012, and which the County explicitly promised would be produced in December 2012, and again in January 2012, were produced only after the Estate was forced to file a motion to compel on March 4, 2013. Dkt. Nos. 65, 68.

**Personnel and staff development files of Defendants McElfresh, Crane, and Rai (Part I.C.1)**: Plaintiffs served discovery requests for the personnel and staff development files of Defendants McElfresh, Crane, and Rai on October 19, 2012 (Third Set Requests for Production Nos. 1-3). On November 30, 2012, Mr. Whitefleet, counsel for Defendant Sutter County, represented during a telephonic meet and confer that the County was working to gather these documents and would produce them after these three Defendants formally appeared in the case. These three defendants formally appeared in the case on December 10, 2012, Dkt. No. 60, but no responsive documents have been produced. On March 21, 2013, when Defendant County had produced no personnel and staff development files in the four months since the meet and confer (and five months since the discovery requests were served), Plaintiffs' counsel sent a letter to Mr. Whitefleet asking that these documents be produced promptly. The County has provided no further response or production to date. Declaration of Aaron J. Fischer ("Fischer Decl.") ¶¶ 20-22, Ex. J.

**Specific personnel file documents of Defendants Calapini and Barnett that have been withheld based on asserted privileges (Part I.C.2)**: In September and October 2012, following Magistrate Judge Hollow's order regarding discovery, the parties negotiated a protective order governing the disclosure of, *inter alia*, confidential personnel and staff development files of individual defendants. After the protective order was approved by the Court on October 16, 2012 (Dkt. No. 51), Defendant County produced some personnel file documents along with a privilege log on October 25, 2012. Fischer Decl. ¶ 23 (These documents did not include the McElfresh, Crane, and Rai files, discussed above.) Plaintiffs' counsel attempted to confer with Mr. Whitefleet as to the withheld documents for more than a month thereafter, placing calls and leaving several messages requesting a meet and confer on this and other discovery issues on November 12, November 13, November 14, November 16, November 20, November 26, November 27, and November 29. *Id.* ¶ 24. On November 30, 2012, Plaintiffs' counsel contacted Mr. Whitefleet by phone and the parties did meet and confer on the withheld personnel

files, at which time Mr. Whitefleet generally described the contents of the withheld personnel file documents now at issue. *Id.* ¶ 25. Plaintiffs' counsel requested that the documents discussed in Part I.C.2, *infra*, be produced; on December 5, 2012, in another meet and confer phone call, Mr. Whitefleet stated that the County likely would not produce these documents absent a court order, but would confer with his client on the matter. *Id.* ¶ 28. More than four months passed. Having received no response, Plaintiffs' counsel then sent a letter, dated March 21, 2013, to Mr. Whitefleet requesting that these withheld documents be produced. *Id.* Ex. J. The County has provided no further response.

**Investigation reports and related materials (Part I.C.3)**: On December 5, 2012, counsel discussed by phone the Estate's October 19, 2012 discovery request for investigative reports and related materials submitted to or received from the Department of Justice and the Sutter County District Attorney that relate to Mr. Bock's death. Mr. Whitefleet stated that responsive documents would be produced. Fischer Decl. ¶¶ 29-30. Plaintiffs' counsel left voicemails requesting an update on this and other outstanding discovery requests on December 10 and 18, 2012, and sent an email again requesting production on December 13, 2012. *Id.* ¶¶ 30-31 & Ex. L. Having received no update or production, Plaintiffs' counsel sent a letter to Mr. Whitefleet requesting prompt production on March 21, 2013. *Id.* Ex. J. Since that time, Plaintiffs have received no responsive documents, nor any update as to the status of production.

**Responsive documents identified in deposition testimony (Part I.C.4)**: At the conclusion of the October 29 and October 30, 2012 depositions, counsel conferred in person as to production of responsive documents that were referenced in deposition testimony but had never been produced. Mr. Whitefleet represented that he would promptly make inquiries regarding their whereabouts. Fischer Decl. ¶¶ 33-35. Plaintiffs' counsel followed up in telephone calls on November 30 and December 5, 2012. *Id.* ¶ 36. On December 13, 2012, Plaintiffs' counsel emailed a further request that these documents be produced. *Id.* Ex. L. Having received no update or production regarding these documents, Plaintiffs' counsel sent a letter, dated March 21, 2013, to Mr. Whitefleet

requesting prompt production. *Id.* Ex. J. Since that time, Plaintiffs have received no such documents, nor any update as to the status of production.

**Responsive documents obtained through a reasonable search of electronic files (Part I.C.5)**: On November 30, 2012, counsel discussed via phone the County's obligation to conduct a reasonable search of electronic files that would be responsive to Plaintiffs' existing discovery requests. Mr. Whitefleet stated that he would make inquiries as to the County's electronic system and capacity to conduct such a search. Fischer Decl. ¶ 37. On December 5, 2012, in further meet and confer, Mr. Whitefleet stated that the County had no update on the electronic search process. *Id.* ¶ 38. On January 7, 2012, the parties again met and conferred on the phone, at which time the Mr. Whitefleet agreed to provide an update as to the status of the County's electronic search no later than January 15, 2013. *Id.* ¶ 39 & Ex. M. On January 22, 2013, Mr. Whitefleet informed Plaintiffs' counsel that the search for responsive documents had identified "over 265,000 email folders" and that a search "has begun." *Id.* ¶ 40 & Ex. N. The next day, Plaintiffs' counsel emailed Mr. Whitefleet regarding the electronic search: "I understand your concerns [regarding the scope of the search] and am more than happy to meet and confer so that we may limit the scope of the review to something more manageable. We have no idea how the data is maintained or organized so we cannot narrow the request without some more information. Can we meet and confer this week to see about narrowing the request?" On January 25, 2013, Mr. Whitefleet declined to meet and confer, responding "I am attempting to work with my client to speed up the process to identify if there are any email documents that are responsive as best as I can." *Id.* ¶ 40 & Ex. O. Two months passed. On March 22, 2013, having received no update or production, Plaintiffs' counsel sent a letter requesting prompt production of any identified documents and proposing a procedure for a reasonable search of electronic files including but not limited to emails, asking for a response by March 27, 2013. *Id.* ¶ 41 & Ex. P. The County has provided no response or production of responsive electronic documents to date.

### B. Statement of the Nature of the Action and its Factual Disputes

#### 1. Relevant Procedural Background

This action arises from the death of Rodney Bock ("Mr. Bock") in the Sutter County Jail ("Jail") on April 29, 2010. Plaintiffs' Fourth Amended Complaint ("4AC") (the now-operative complaint) includes claims for cruel and unusual punishment and violation of substantive due process under Section 1983 against all defendants, and California state law claims for professional negligence, negligence/negligence per se, failure to summon medical care, negligent supervision, training, hiring and retention, and wrongful death.

Plaintiffs filed the original complaint on February 24, 2011, and subsequently filed a First Amended Complaint ("FAC") on May 25, 2011. *See* Dkt. Nos. 1, 6. Defendants moved to dismiss the FAC on July 5, 2011. Dkt. No. 11. While the motion was under submission, the Estate served its First Set of Interrogatories and First Set of Requests for Production on Defendant County of Sutter on November 8, 2011. Fischer Decl. Ex. A. (No interrogatories are the subject of the current motion.) The County served only objections on December 12, 2011, and that same day moved for a protective order and for a temporary stay of discovery on the grounds that (1) the Rule 26(f) conference had not occurred, and (2) discovery could not proceed while Defendants' motion to dismiss the FAC was pending. Dkt. No. 21 at 2. By written order on January 9, 2012, Magistrate Judge Hollows rejected the County's first argument, and further ordered that the "Plaintiffs may immediately obtain discovery regarding identities of potential Doe Defendants" and that "all remaining discovery [would be] stayed for thirty days from the date of this order." Dkt. No. 24 at 2, 5. When Defendants failed to comply with Magistrate Judge Hollows' discovery order, and after further meet and confer, The Estate filed a motion to compel on February 3, 2012. Dkt. No. 25. Prior to the hearing on the motion, the County provided a partial production responsive to the Estate's First Set of Requests for Production; the Estate withdrew without prejudice its motion in order to permit an opportunity to review the contents of Defendants' production. Dkt. No. 27.

On February 8, 2012, Judge England granted Defendants' motion to dismiss without prejudice (except as to the seventh cause of action as applied to the municipal defendants), and granted Plaintiffs leave to amend. *See* Dkt. No. 26. Based on Plaintiffs' further investigation as well as the partial production of documents provided by the County, Plaintiffs were able to address the issues raised by the Court in its order dismissing the FAC. On March 9, 2012, Plaintiffs timely filed their Second Amended Complaint, and on March 27, 2012 filed their Third Amended Complaint. *See* Dkt. Nos. 28-31. On April 26, 2012, Defendants again filed a motion to dismiss all claims. Judge England denied Defendants' motion as to the Third Amended Complaint's Causes of Action 1, 2, 3, 4, 7, 8, 9, 10 (in part), and 11 on August 31, 2012. Dkt. No. 42. On November 6, 2012, Plaintiffs filed their 4AC. Dkt. No. 56. All Defendants filed their answer to the 4AC on December 10, 2012. Dkt. No. 60.

Both while Defendants' motion to dismiss was pending, and since the Court denied the motion as to nine claims, Plaintiffs have diligently continued to seek legitimate discovery. The Estate served a Second Set of Requests for Production on June 19, 2012, and served a Third Set of Requests for Production on October 19, 2012. Fischer Decl. Exs. C & E. Also, after months of meeting and conferring, during which the County did not provide an adequate production or verified interrogatory answers responsive to the Estate's First Set of Requests for Production and First Set of Interrogatories, the Estate again moved to compel and for sanctions on August 10, 2012. Dkt. No. 41. The County served amended responses to the Estate's Requests for Production and amended (though still unverified) interrogatory responses days before the hearing on Plaintiffs' motion, and produced additional responsive (though still incomplete) documents and video recordings prior to the hearing (including just minutes before the hearing began). Magistrate Judge Hollows granted Plaintiffs' motion to compel in part, orally issuing several directives regarding Defendants' discovery obligations and denying Plaintiffs' request for sanctions. Dkt. No. 42.

The parties continued to meet and confer on outstanding discovery. On March 4,

2013, the Estate again moved to compel discovery, this time as to digital color photographs responsive to its First and Third Sets of Requests for Production, which were served on November 8, 2011 (Request No. 1) and on October 19, 2012 (Request No. 10), respectively. Dkt. No. 65. Prior to the hearing on the motion, the County finally produced the requested photographs; the Estate accordingly withdrew its motion without prejudice. Dkt. No. 68.

On March 28, 2013, Judge England issued a scheduling order, setting a discovery cut-off date of April 9, 2014, and setting a settlement conference before Magistrate Judge Brennan for July 25, 2013. Dkt. No. 69.

**2. Factual Background**

The essential facts of the case, as detailed in the 4AC, are as follows:

Mr. Bock was a successful, self-employed farmer and businessman with a history of mental illness. 4AC ¶¶ 49-50. In late March 2010, Mr. Bock suffered a psychotic episode that put him in significant and immediate danger of injury and self-harm. *Id.* ¶¶ 78-81. Family members brought him to Psychiatric Emergency Services at SYMHS for emergency hospitalization. *Id.* ¶ 81.

Defendant Christopher Barnett, a County employee and mental health clinician, found Mr. Bock to be gravely disabled—that is, unable to care for his basic needs—and admitted him for a 72-hour period of treatment and evaluation pursuant to Cal. Welf. & Inst. Code § 5150. 4AC ¶¶ 82-84. This was the third time in six months that Mr. Bock had been involuntarily committed at SYMHS. *See id.* ¶¶ 52-77 (detailing history of involuntary psychiatric hospitalizations of Mr. Bock by County personnel). County employees, including Defendant Barnett, documented that Mr. Bock required a "safe and structured [setting]," "observ[ation] for safety," and a "state hospital placement." *Id.* ¶ 84. Defendant Barnett also initiated the process for involuntarily hospitalizing Mr. Bock for two additional weeks, documenting that Mr. Bock still required inpatient treatment. *Id.* ¶ 85. Yet on April 2, 2010 (just one day after Mr. Bock's admission at the hospital), Defendant Barnett discharged Mr. Bock from the hospital, and Defendant Fliehman

effectuated a transfer of Mr. Bock from the SYMHS hospital facility to Sutter County Jail pursuant to an outstanding warrant; the outstanding warrant was based on Mr. Bock's failure to appear at a court hearing the occurred while he was suffering his psychotic episode. *Id.* ¶¶ 86-97. Once at the jail, Mr. Bock was placed into a high-security single cell and was denied critically needed observation and psychiatric treatment. *See id.* ¶ 95.

Over the next twenty-seven (27) days, while confined to that cell, Mr. Bock decompensated further, resulting in a psychotic, delusional breakdown. His decompensation and breakdown were witnessed and documented by jail custody and mental health staff, who failed to provide Mr. Bock the life-saving psychiatric treatment he desperately needed. 4AC ¶¶ 98-105, 113-141. On April 19, 2010, as Mr. Bock's psychiatric condition deteriorated, the court handling Mr. Bock's pending case ordered that he be transferred to Napa State Hospital for inpatient psychiatric hospitalization and required that he take prescribed anti-psychotic medication. *Id.* ¶¶ 106-111. This court order was conveyed to Defendants but they never effectuated it, instead keeping Mr. Bock confined to his single jail cell for the next ten days, when he died after a violent suicide by hanging in his cell. *Id.* ¶¶ 110-111.

In the week before he died, Mr. Bock refused psychiatric medications that had been prescribed to protect him from self-harm. On or about April 24, 2010, Defendant Rainbow Crane observed and documented that Mr. Bock had not taken his psychiatric medications for several days and that he was experiencing delusions and hallucinations and making alarming statements suggesting suicidal thoughts, such as "I am the voice … my father in heaven … we are going to do the devils tomorrow." 4AC ¶ 120. Defendant Crane, however, simply noted "Follow up PRN [as needed];" Defendants provided no additional evaluation or treatment. *Id.* On Monday, April 26, 2010, Mr. Bock's family members visited him and observed his manifest crisis-level condition; he had stopped shaving, demonstrated highly delusional and paranoid behaviors, and made statements relating to his need to die. *Id.* ¶ 126. Custody and jail staff Defendants observed and documented Mr. Bock's medication refusal and his attendant dramatic deterioration, but did nothing in

the intervening days to provide him urgently needed treatment. *Id.* ¶¶ 113-132. On the evening of Thursday, April 29, 2010, during a two-hour period in which custody staff skipped regular observational rounds at the jail, Mr. Bock committed suicide alone in a cell in which he never should have been placed, and from which a court had ordered that he be removed and transferred for necessary inpatient psychiatric treatment. *Id.* ¶¶ 136-142.

**C. Plaintiffs' Argument as to Discovery Requests at Issue**

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Lema v. City of Modesto*, Case No. 1:10-cv- 02180 AWI GSA, 2012 U.S. Dist. LEXIS 16044, at *5 (E.D. Cal. Feb. 8, 2012) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998)); *see also* Fed. R. Civ. P. 33(a) advisory committee's note (1970) (noting that the objecting party has the obligation to "justify his objections" on a motion to compel). With respect to each of the discovery disputes discussed herein, the County cannot meet its burden, and the Court should issue an order compelling prompt production.

**1. Personnel and Staff Development Files for Defendants McElfresh, Crane, and Rai**

In the Estate's Third Set of Requests for Production, served more than six months ago on October 19, 2012, the Estate requested "ALL personnel files and staff development files, INCLUDING the disciplinary record, and ANY other DOCUMENTS RELATING TO the hiring, training, duties, performance, assignment, OR mental and physical condition" of Defendants Lewis McElfresh (Request No. 1), Rainbow Crane (Request No. 2), and Baljinder Rai (Request No. 3). The County responded on November 26, 2012, that it "will produce a portion of the personnel file[s], subject to the executed Protective Order, together with a privilege log of those documents withheld."

Each of these Defendants appeared in the case with the filing of Defendants' Answer to the 4AC on December 10, 2012. A stipulated protective order that covers "portions of personnel records of persons employed with the Sutter County Sheriff's

Office, Sutter County Jail, and/or Sutter-Yuba Mental Health Services facility" was approved by the Court on October 16, 2012, and would apply to any sensitive documents responsive to the above-mentioned requests for production. Dkt. No. 51. To date, no responsive documents or privilege log have been produced.

There is no dispute that documents responsive to these requests are discoverable. The County has previously produced personnel file documents for other individual Defendants. The parties' counsel have met and conferred regarding discovery of the McElfresh, Crane, and Rai personnel and staff development files. *See* Part I.A, *supra*. Plaintiffs' counsel has communicated Plaintiffs' intention to depose these specific Defendants as soon as practicable, and requested that their personnel and staff development files be produced in advance of their deposition to avoid the costly and avoidable need to continue the deposition on a separate day for questioning about documents contained in these documents. Fischer Decl. ¶ 22. The County has nonetheless failed to meet its discovery obligations, causing unnecessary delay. The County now agrees to a "date certain" for production but commits to no such date. The County further represents that the delay has been "unfortunately, due to the press of other business," and blames Plaintiffs for Defendants' counsel's apparent failure to read his own email (ignoring the fact that follow-up requests were made, by phone, as far back as the fall of 2012). An order for prompt production by a date certain is necessary and appropriate.

Plaintiffs request that the Court order that these documents, along with a privilege log describing any documents withheld, be produced within one week, and to certify to the Court in writing within one week that all responsive documents have been produced.

**2. Improperly Withheld Documents from Personnel Files of Defendants Calapini and Barnett**

The Estate has requested "ALL personnel files and staff development files, INCLUDING the disciplinary record, and ANY other DOCUMENTS RELATING TO the hiring, training, duties, performance, assignment, OR mental and physical condition" of, *inter alia*, Defendant David Calapini (Second Set, Request 11, served June 19, 2012), and

Defendant Christopher Barnett (First Set, Request No. 22, served November 8, 2011). In the County's partial production of October 25, 2012, the County withheld the following critical and highly relevant documents responsive to these requests: (1) for Officer Calapini, Notice of Hearing and Notice of Termination documents, dated April 4, April 23, May 3, May 21, and June 21, 2012, which Defendants' counsel has indicated involve the termination of Officer Calapini for his failures to conduct safety procedures – specifically, a fire drill – at Sutter County Jail and his lying about these failures; and (2) for Dr. Barnett, a written reprimand dated November 17, 2011, which Defendants' counsel has indicated involves reported deficiencies in completing admission and discharge documentation. Fischer Decl. ¶ 23 & Ex. K.

These documents are unquestionably relevant to the Estate's claims that County employees were inadequately trained and acted with deliberate indifference to Mr. Bock's urgent need for mental health care. Despite a stipulated protective order protecting any sensitive documents responsive to the requests now at issue, Dkt. No. 51, Defendants have withheld the above-mentioned documents.

No legitimate privilege has been or can be asserted to justify withholding these documents, and an order compelling prompt production of these documents is warranted.[3] Plaintiffs seek an order directing the County to produce these highly relevant and discoverable documents within one week, and to certify to the Court in writing within one week that all responsive documents have been produced.

**(a) Defendant Calapini's Personnel File Documents Related to Termination for Failures to Conduct Safety Procedures at Jail and Lying about those Failures**

The County has withheld Defendant Calapini's personnel documents regarding his

---

[3] Plaintiffs have agreed not to seek production at this time of the vast majority of withheld personnel file documents, including individual Defendants' "employee profile forms" and "employment applications," although such documents are discoverable under applicable law. Plaintiffs reserve the right to seek such production at a later date, as appropriate.

failures to conduct safety procedures – specifically, conducting a fire drill – at Sutter County Jail and lying about such failure, on the ground that they are (1) irrelevant, (2) personal and confidential, and (3) privileged under California Penal Code § 832.7(a). Fischer Decl. Ex. K at 3. None of these claims justify withholding these documents.

First, the documents are relevant to Plaintiffs' claims against Calapini and the County. Calapini was responsible for supervising and ensuring the safety of Mr. Bock in the days and hours before his death. *See* 4AC ¶ 116. Despite interaction with Mr. Bock and observation of his mental illness, Calapini failed to conduct a suicide risk assessment, contact medical services, or take any other steps to ensure necessary treatment and Mr. Bock's safety. 4AC ¶¶ 116, 129, 130. Defendant Bobby Joe Little, another correctional officer, has testified that Calapini was the officer responsible for the last safety check purportedly done prior to the discovery of Mr. Bock's hanging body. Fischer Decl. Ex. I (Little Dep. Tr. 73:8-74:12). Defendants' counsel has indicated that Calapini was fired in 2012 for failures to follow jail procedures related to safety at the jail, and lying about such failures. Fischer Decl. ¶ 26. Calapini's failure to follow basic policies or procedures regarding safety is relevant because it makes it more likely that he also failed to follow the jail's policies regarding mentally ill inmates when he was supervising Mr. Bock. *See* Fed. R. Evid. 401 (evidence is relevant if it has "any tendency" to make a fact more likely). The fact that this other safety-related misconduct and lying did not occur at the same time as Mr. Bock's death does not change the relevance analysis. The information and documents sought clearly meet the bounds of discovery, as they are relevant to Defendant Calapini's performance of important safety-related duties, and are reasonably calculated to lead to the discovery of admissible evidence. Calapini's conduct related to compliance with jail procedures also bears on the question, under *Monell*, whether the County failed to properly train Officer Calapini, supervise him, or adequately enforce its policies. Evidence of Calapini's adherence (or non-adherence) to safety procedures at Sutter County Jail, both on the night of Mr. Bock's death and in the days prior to Mr. Bock's death, and of his honesty on such matters, is critically relevant and

should be produced.

Second, any concerns about the "personal and confidential" nature of these public employee personnel files have been appropriately addressed through entry of a stipulated protective order.

Third, California Penal Code § 832.7(a) provides no basis for the County's withholding these records. Section 832.7 states that, under California law, peace officer or custodial officer personnel records are "confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." This state law provision does not, however, in any way prevent a document from being discoverable in federal litigation, which is governed by federal – not state – rules of privilege. *See* Fed. R. Evid. 501 advisory committee note (federal "common law" governs claim of privilege in federal question cases); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005).

This is no less true in Section 1983 actions that include pendant state law claims where plaintiffs seek law enforcement personnel records through discovery. *See Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 638 (E.D. Cal. 2010) (citing *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1169 (C.D. Cal 1998), *aff'd* 216 F.3d 1082 (9th Cir. 2000) (stating "the federal common law of privileges governs both federal and pendent state law claims in federal question cases")); *Jackson v. County of Sacramento*, 175 F.R.D. 653, 654 (E.D. Cal. 1997) ("Despite Defendants' repeated assertions to the contrary, the law of California, the forum state, does not inform federal privilege law," referring to Cal. Pen. Code § 832.7 and related statutes); *Herring v. Clark*, Case No. 1:05-cv-00079-LJO-SMS-PC, 2011 U.S. Dist. LEXIS 63332 (E.D. Cal. June 13, 2011) (in § 1983 action, "arguments that rely on application of California state law [referring to Cal. Pen. Code §832.7] are disregarded").

Even if the Court were to recognize a privilege similar to the state law asserted, these documents still must be disclosed through discovery. Section 832.7 prevents disclosure of personnel records "except by discovery pursuant to Sections 1043 and 1046

of the Evidence Code." Cal. Pen. Code § 832.7(a). The California Evidence Code itself creates only a limited privilege, and allows for discovery of such records where good cause is shown. *See* Calif. Evid. Code §§ 1040, 1043. To support withholding of such records, the County must demonstrate that the "public interest in confidentiality outweighs the necessity for disclosure in the interest of justice." *Jackson*, 175 F.R.D. at 655. In civil rights cases, "current case law suggests the privacy interests police officers have in their records do not outweigh a Plaintiffs' interests in civil rights cases," especially where, as here, a protective order is in place. *Martinez v. City of Pittsburg*, Case No. C 11-01017 SBA (LB), 2012 U.S. Dist. LEXIS 27225, at *10-11 (N.D. Cal. Mar. 1, 2012) (citing cases); *see also Duenez v. City of Manteca*, Case No. 2:11-cv-1820 LKK AC, 2013 U.S. Dist. LEXIS 24954, at *10-11 (E.D. Cal. Feb. 22, 2013) ("Documents that are a part of the personnel records of officers defending civil rights actions, while containing sensitive information, are within the scope of discovery.").

**(b) Defendant Barnett's Personnel File Documents Related to Written Reprimand Regarding Failures in Admission and Discharge Procedures**

The County claims that Defendant Barnett's written reprimand is privileged only because it is "irrelevant." Fischer Decl. Ex. K at 1. This claim should be rejected.

The written reprimand is clearly relevant to the Estate's claims. As represented by Defendants' counsel during meet and confer, Dr. Barnett received a written reprimand, dated November 17, 2011, regarding deficiencies in his admission and discharge documents for patients. Fischer Decl. ¶ 27. Dr. Barnett, Mr. Bock's treating physician at Sutter-Yuba Mental Health Services, authorized the premature (and illegal) discharge of Mr. Bock from a three-day involuntary hospitalization pursuant to Section 5150 of the state's Welfare & Institutions Code for transfer to Sutter County Jail, where he died later that month. 4AC ¶¶ 84-89. Dr. Barnett discharged Mr. Bock on April 2, 2010, despite the fact that he determined, *on the same day*, that Mr. Bock in fact required at least two additional weeks of involuntary psychiatric hospitalization given his gravely disabled condition. Plaintiffs allege that this discharge was dangerous and improper, and that it also

violated state law enacted to protect seriously mentally ill individuals like Mr. Bock. *See id.* ¶ 87 (asserting that Dr. Barnett violated Cal. Welf. & Inst. Code § 5152(a), which provides that a Section 5150 patient may "be released before 72 hours have elapsed *only if* the psychiatrist directly responsible for the person's treatment believes, as a result of the psychiatrist's personal observations, that [the patient] no longer requires evaluation or treatment" (emphasis added)).

Dr. Barnett's failures to adhere to appropriate admission and discharge requirements is relevant because it makes it more likely that he also failed to provide an appropriate treatment and discharge plan for Mr. Bock. *See* Fed. R. Evid. 401 (evidence is relevant if it has "any tendency" to make a fact more likely). The fact that the failures documented in the reprimand did not occur at the same time as Mr. Bock's death does not change the relevance analysis, as it bears on whether Dr. Barnett has a pattern of failing to take appropriate care of his mentally ill patients, of whom Mr. Bock was one. It also bears on the question, under *Monell*, whether the County failed to properly train Dr. Barnett, supervise him, or adequately enforce its policies. Such evidence is clearly relevant and its production should be ordered without delay.

### 3. Investigative Reports, and Other Documents Related to Mr. Bock, Submitted to or Received from the Department of Justice and the Sutter County District Attorney

On November 8, 2011, the Estate served a discovery request for "ANY and ALL internal or third party reports, records, OR recordings RELATED to RODNEY BOCK, the detention of RODNEY BOCK, OR the death of RODNEY BOCK." Fischer Decl. Ex. A (Pl.'s First Set Request for Production No. 1). The Estate subsequently clarified its request in a narrower request, served October 19, 2012, for production seeking "ALL DOCUMENTS submitted to or received from the Department of Justice and Sutter County District Attorney RELATING TO the death of Rodney Bock." Fischer Decl. Ex. E (Pl.'s Third Set Request for Production No. 4). The County responded to the October 2012 discovery request by stating that "insofar as this request seeks documents *from the Sutter County jail*, Defendant responds as follows: none." Fischer Decl. Ex. F (Def.'s Response

to Pl.'s Third Set Request for Production No. 4, Nov. 26, 2012) (emphasis added). Counsel met and conferred on December 5, 2012, at which time counsel for the Estate clarified that the request was for such documents in the custody or control of the County of Sutter, and was *not limited to documents kept at Sutter County Jail*. Fischer Decl. ¶ 30. The County agreed to make inquiries and to provide an update within one week. *Id.* After the County failed to provide the promised update in December, January, or February, the Estate contacted the County in writing on March 21, 2013, to again request responsive documents that were in the custody or control of the County (and not limited to documents held at Sutter County Jail). *See id.* Ex. J. The County has provided no response, and has produced no responsive documents to date.

Plaintiffs request that the County be ordered to conduct an appropriate search of documents responsive to this request, and to certify to the Court in writing within one week that all responsive documents have been produced.

**4. Responsive Documents Identified in Deposition Testimony that Have Not Been Produced**

During October 2012 depositions of percipient witnesses, documents responsive to the Estate's discovery requests but that have not been produced were specifically identified by testifying Sutter County Jail employees. At the conclusion of those depositions, counsel conferred as to production of these missing documents, and Mr. Whitefleet represented that he would promptly make inquiries regarding their whereabouts. Fischer Decl. ¶¶ 33-35. Nearly six months later, the County has not produced these relevant and important documents nor provided any update as to their status, including whether they have been lost or destroyed by Defendants.

First, Sutter County Jail nurse Nikole Perian, who observed Mr. Bock on the date of his death and was present at the scene immediately after the discovery of his hanging body, testified that, shortly after Mr. Bock's death, she wrote a report on a "progress note" about details of the incident and gave that note to the Sutter County Jail nurse manager, Brent Garbett. *See* Fischer Decl. Ex. 10 (Perian Dep. at 116:24-118-14). This document is of

course highly relevant, and responsive to the Estate's request for "ALL DOCUMENTS OR COMMUNICATIONS, including ANY and ALL notes, reports, [etc.] . . . RELATING TO RODNEY BOCK, the detention of RODNEY BOCK, OR the death of RODNEY BOCK." Fischer Decl. Ex. A (Pl.'s First Set Request for Production No. 1). It should be produced without further delay.

Second, correctional officer Khushwant Randhawa (nee Singh), who was on duty in Mr. Bock's housing pod and in fact found Mr. Bock's hanging body, testified that the only written materials he recalled receiving as part of his jail correctional officer training was a "training book." *See* Fischer Decl. Ex. G (Randhawa Dep. at 148:9-149:6, 150:3-12, 158:10-21). This document is also relevant and responsive to the Estate's request for "ALL DOCUMENTS, INCLUDING written POLICIES, procedures, practices, texts manuals, memoranda, OR training materials . . . RELATING TO SHERIFF'S DEPARTMENT OR JAIL POLICIES." Fischer Decl. Ex. A (Pl.'s First Set Request for Production No. 8). As with the Perian "progress note," this training book has not been produced.

Plaintiffs request that the Court order the County to produce these documents within one week, or to show cause why such responsive documents have not been produced, including if such documents have been lost or destroyed and if so, the date and circumstances of the loss or destruction of these documents.

**5. Responsive Documents Obtained Through a Reasonable Search of Electronic Files on County-Issued Devices of Individual Defendants and Relevant Custodians**

In the Estate's November 8, 2011 First Set Requests for Production, the Estate requested "ALL notes, reports, logs, photographs, emails, text messages, digital data . . . OR any other information . . . RELATING TO RODNEY BOCK, the detention of RODNEY BOCK, OR the death of RODNEY BOCK." Fischer Decl. Ex. A (Pl.'s First Set Request for Production No. 1). Defendant County has not produced any responsive emails to date, nor has the County produced any electronic files following a reasonable search of appropriate county-issued devices of individual Defendants and other relevant

custodians, despite repeated attempts by Plaintiffs to meet and confer and reach agreement on the parameters of such a search.

Responsive emails and electronic files almost certainly exist. At her deposition, Sutter County Jail nurse Perian testified that Sutter County-issued employee email accounts are used to discuss issues related to jail inmates' health and mental health. Fischer Decl. Ex. H (Perian Dep. at 56:9-24).

On November 30, 2012, counsel met and conferred regarding a process for the identification and production of responsive electronic documents (including but not limited to emails), as well as the identification of search terms and custodians; Mr. Whitefleet responded that, before a process is discussed, he first wanted to make inquiries with County employees on the matter. Fischer Decl. ¶ 37. On December 5, 2012, during a further meet and confer, Mr. Whitefleet represented to counsel that a search for emails containing the terms "Bock" and "suicide" was in the process of being conducted by the County. He declined to provide a date by which responsive emails would be produced to Plaintiff. *Id.* ¶ 38. One month later, Plaintiffs' counsel arranged another meet and confer on January 7, 2013, during which Mr. Whitefleet stated that he would provide an update as to the status of production of responsive electronic files, including emails, no later than January 15, 2013. When January 15 passed without any update, and after attempting to contact Mr. Whitefleet by phone on that date, Plaintiffs' counsel followed up via email , requesting a response from the County. *Id.* Ex. M. Mr. Whitefleet replied on January 22, 2013, stating that the process of reviewing email documents "has begun" but declining to describe what this process was or when production would take place. *Id.* ¶ 40, Ex. N. When Plaintiffs' counsel requested a meet and confer about the parameters of the search and means to appropriately narrow it, Mr. Whitefleet declined. *See id.* Ex. O; Part I.A, *supra*. On March 22, 2013, having received no further update from the County for two months, Plaintiffs' counsel sent further correspondence regarding the search for responsive electronic files, with a specific proposal for the search process and timeline. *Id.* Ex. P. In the month since that time, the County has provided no production and no information as to

what, if any, search for responsive electronic files has occurred.

Defendants now represent that they have "identified numerous email folders regarding 'Bock,' which counsel for Defendants have reviewed through the folders in alphabetical order thus far up into the 'M's." *See* infra. Yet, despite repeated requests by Plaintiffs, Defendants have provided no information as to what "folders" are being searched, or how. Defendants are also vague as to the types of documents in the search, suggesting that it is a "County wide search of its email system," which would appear not to cover any electronic files not kept on local or storage drives rather than in email folders.

This delay, dating back 18 months, frustrates Plaintiffs' efforts to pursue complete and efficient discovery, including deposing Defendants and witnesses who may have created, sent, or received electronic mail or files regarding Mr. Bock, important materials to be discussed during the depositions. The Court should order that the County produce within one week all emails and electronic documents already identified, in native format with metadata intact, along with a written description of the electronic search process, including the terms that were used, any date restrictions, and the systems and custodians subject to such search. Plaintiffs request that the Court also order that the County promptly conduct a search consistent with the procedures outlined in Plaintiffs' March 22, 2013 letter (Fischer Decl. Ex. P) and produce all responsive electronic documents, with a privilege log provided for any withheld documents.

### D. Plaintiffs Are Entitled to Reasonable Expenses in Bringing the Instant Motion Given the County's Failure to Comply with Its Discovery Obligations

Given the County's failures to comply with its discovery obligations and the substantial time Plaintiffs have had to expend countering the County's delays, Plaintiffs request that the Court award attorney's fees and costs as an appropriate sanction. The County should be required under Rule 37(a)(5)(A) to pay Plaintiffs' attorney's fees and costs incurred in bringing the instant motion. Such an order is appropriate given the County's unreasonable withholding of plainly discoverable materials over a period of several months.

Rule 37(a)(5)(A) states in relevant part:

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). "[A]ny failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play." 8B C. Wright & A. Miller, *Federal Practice and Procedure*, § 2284 (3d ed. 2010).[4]

Bad faith is not required to award payment of reasonable expenses; the standard is whether there was substantial justification for the conduct. *See* Fed. R. Civ. P. 37(a)(5)(A); *see also Marquis v. Chrysler Corp*., 577 F.2d 624, 642 (9th Cir. 1978). The County's repeated delays and stonewalling described above as to these discovery requests is not substantially justified. Rather, the County's manipulative behavior wastes the parties' and the Court's time and has unnecessarily increased litigation costs. *See L.H. v. Schwarzenegger*, Case No. CIV S-06-2042 LKK GGH, 2008 U.S. Dist. LEXIS 86829, at *17-18 (E.D. Cal. May 14, 2008) (granting plaintiffs' request for sanctions where "Defendants' conduct necessitated plaintiffs bringing the instant motion, and required the court to devote its own resources to th[e] matter," and where "Defendants' excuses [we]re not satisfactory" and had "the earmarks of purposeful foot dragging on discovery").

Moreover, none of the conditions articulated in subsections (i) through (iii) of

---

[4] The County's reliance on *U.S. v. Kahaluu Constr. Co.*, 857 F.2d 600 (9th Cir. 1988) is misplaced. *Kahaluu* addresses the propriety of sanctions under Rule 37(b), not an award of reasonable expenses incurred in bringing a motion to compel under Rule 37(a)(5).

Section 37(a)(5)(A) are present here, such that the County might be exempted from paying Plaintiffs' reasonable expenses. Plaintiffs diligently requested documents from the County on multiple occasions, exchanging dozens of voicemails, emails, letters, and telephone calls with counsel for the County in an effort to resolve this dispute without court involvement. The County's nondisclosure is not "substantially justified"; rather, its failure to produce resulted from its cavalier attitude toward the discovery rules.

Nor do any "other circumstances" make an award of expenses unjust. "[I]f a failure to comply has occurred, it becomes incumbent upon the disobedient party to show that his failure is justified or that special circumstances would make an award of expenses unjust." *David v. Hooker Ltd.*, 560 F.2d 412, 419 (9th Cir. 1977) (citing Fed. R. Civ. P. 37 advisory committee's note (1970).). The County has engaged in foot-dragging resulting in a substantial delay in providing even basic discovery. Such behavior has occurred despite the Court's order more than one year ago that all discovery could proceed beginning in February 2012 and the Court's additional orders and admonitions the County's obligation to comply with discovery obligations in September 2012. The County's decision to ignore its discovery obligations should result in an award of attorney's fees and costs. These unjustified failures have caused and continue to cause substantial prejudice to Plaintiffs, and have required Plaintiffs to seek relief from this Court time after time.

Accordingly, Plaintiffs requests that the Court require the County to pay Plaintiffs' reasonable expenses incurred in bringing the instant motion upon Plaintiffs' submission of itemized expenses, including attorney's fees and costs.

## II. DEFENDANTS' POSITION[5]

**Introduction**

Defendants respectfully disagree with Plaintiffs' characterizations of the facts regarding the discovery, alleged meet and confer efforts by Plaintiffs or claimed need for some of the requested documents. Contrary to Plaintiffs' assertions, the issues presented in this single motion are the first time raised before the court,[6] are at various stages of meet and confer, some even only involved Plaintiffs' informal requests, and some with no meet and confer.

Specifically, as to the personnel records of Defendants MCELFRESH, CRANE, and RAI, Defendants have agreed to produce some of the records under the Protective Order, and will identify those portion of the personnel records believed to nonetheless be protected in a privilege log, as have already been produced of numerous other defendants, including complained-of records of Defendants BARNETT and CALAPINI. That there has been some delay in processing the records of MCELFRESH, CRANE, and RAI is unfortunate, but is not intended to obstruct discovery or caused any prejudice to Plaintiffs. Defendants will agree to provide those on a date certain.

As to those personnel records identified in a privilege log regarding Defendants BARNETT and CALAPINI, there was a single conversation on or about November 29, 2012, which counsel for Defendants explained why the records were privileged and/or not

---

[5] Defendants note Plaintiffs' twenty-page portion of this joint statement was received electronically only for the first time on April 22, 2013, while counsel for Defendants was in scheduled for multiple depositions in another case with Kathryn Mantoan from Rosen Bien & Galvan (see above caption) in the case of <u>Estate of Prasad v. County of Sutter, et al</u>, USDC EDCA Case No. 12-00592. The timing of the depositions and late draft clearly imply counsel for Plaintiffs in both cases are purposefully attempting to provide no time to allow to prepare a response.

[6] For example, at the September 6, 2012 hearing, Magistrate Judge Hollows noted Plaintiffs' lack of clarity in meet and confer, together with the clearly overlybroad requests made Defendants' objections justified, and ordered Plaintiffs to conduct further meet and confer, albeit not about any of the issues raised in the instant motion.

relevant, and Plaintiffs have conducted no substantive meet and confer efforts since then. (Declaration of John R. Whitefleet). Plaintiffs failed to make any effort to explain why they believed such documents are relevant or not confidential, particularly when there is no evidence such are relevant to this action. In this motion, Plaintiffs merely speculate as to the relevance and have no evidence they are. Assuming arguendo the court finds good cause, an in-camera review of said is appropriate to determine relevancy and balance the privacy rights versus need for discovery.

Despite no evidence Defendant County has any documents from the Department of Justice or Sutter County District Attorney, and the response of "none," Plaintiffs insist an order be issue to turn over. Defendants have produced over 650 documents, and are unaware of any documents to which Plaintiffs refer, and submit no evidence to support their speculation. The response to the request as "none" was sufficient.

Plaintiffs next complain of documents "Identified in Deposition Testimony that Have Not Been Produced." As the court is likely aware, a deponent may often believe documents exist, when they in fact do not. Defendant County has produced all documents it was able to locate. Progress notes are typically placed into medical files, which has been produced, training records are part of personnel records, and if were made part of, have (or will be) produced.

Plaintiffs requested a County-wide search of electronic documents, and Plaintiffs correctly note the County identified numerous email folders regarding "Bock", which counsel for Defendants have reviewed through the folders in alphabetical order thus far up into the "M"s to see if there are responsive documents in each folder. Thus far, Defendants do not believe there are any responsive documents. Such an exhaustive search unfortunately simply takes an extraordinary amount of man-hours to review.

Plaintiffs inappropriately seek to combine these issues as if there were some nefarious discovery delays when Plaintiffs have identified no prejudice at all. There has been no deadlines breached, discovery remains wide open, and the court has only recently set such deadlines. As such, sanctions are not warranted.

**A. Defendants MCELFRESH, RAINBOW CRANE and BALJINDER RAI**

In Requests for Production of Documents Set three, Plaintiffs requested "ALL personnel files and staff development files, INCLUDING the disciplinary record, and ANY other DOCUMENTS RELATING TO the hiring, training, duties, performance, assignment, OR mental and physical condition" of Defendants MCELFRESH, CRANE and RAI

In responses served on November 26, 2012, Defendants objected to each in that each:

> "request seeks to invade the privacy of the individual about whom the records pertain, is overly broad particularly as to "ALL personnel files and staff development files" "mental and physical condition" and "disciplinary record" is not limited to the time and scope, compound, and/or seeks documents which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and/or is protected by the California Penal Code sections 832.5 et seq.. The request also harassing in its scope. Without waiver of said objections, and insofar as [defendant] has not yet appeared in the action, Defendant will produce a portion of the personnel file, subject to the executed Protective Order, together with a privilege log of those documents withheld."

Plaintiffs correctly state these defendants appeared in the case on December 10, 2012. There are several hundred pages to review and unfortunately, due to the press of other business, counsel for Defendants has been delayed in processing the documents. However, there has been no intentional delay. While counsel for Plaintiffs claim he transmitted correspondence in late March 2013 inquiring about same, counsel for Defendants have repeatedly noted to counsel for Plaintiff that relying solely on email for communications is not reliable, and counsel for Defendants never saw the correspondence. (Declaration of John R. Whitefleet). It is agreed that a date certain can be set for production with a privilege log.

**B. Plaintiffs' Motion for Disclosure of Calapini's Records Should be Denied**

Having conducted no depositions, Plaintiffs speculate that the after-incident withheld documents are relevant or not otherwise private. Having no evidence, nor conducted any meaningful meet and confer, Plaintiffs guess the documents meet the good

cause requirement for production. They are wrong.

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794 at * 1 (S.D. Cal. May 14, 2009). However, "the initiation of a lawsuit does not, by itself, grant parties the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose." Ceramic Corp. of American v. Inka Maritime Corp., Inc. 163 F.R.D. 584, 589 (C.D. Cal. 1995). Federal courts recognize a constitutionally-based right of privacy that can be raised in response to discovery requests. Soto v. City of Concord, 162 F.R.D. 603, 616 (9th Cir. 1976). In the context of the disclosure of law enforcement files, courts have recognized that privacy rights are not inconsequential. Id. These privacy interests must be balanced against the weight afforded to federal law in civil rights cases against police departments. Id.

Equally important, the Supreme Court has recognized a privacy interest derived implicitly from the United States Constitution. Whalen v. Roe, 429 U.S. 589, 599-600 (1977). Further, in Pagano v. Oroville Hosp., 145 F.R.D. 683, 695-99 (E.D. Cal. 1993), this Court recognized a privacy interest derived from Article 1, Section 1 of the California Constitution. The Court invoked a five-part test to determine the scope of the privacy interests. The factors considered include: (1) the probable encroachment of the individual's privacy right ... and the magnitude of the encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment. Id. at 698-699.

Counsel for Plaintiffs conducted no meet and confer, and thus conducted no

consideration of the five factors. Moreover, Plaintiffs guess about the nature of its termination because they conducted no deposition discovery to determine its relevancy. Plaintiffs purposely misstate what they were told about the termination in an effort to make it relevant. Contrary to counsel for Plaintiffs' statement that the 2012 termination was for "failures to follow jail procedures related to inmate safety" – it was about a staff fire drill – something that has no relation to the issues in this case. Plaintiffs speculate that "it makes it more likely that he also failed to follow the jail's policies regarding mentally-ill inmates when he was supervising Mr. Bock" as wholly supported by any evidence, and would otherwise clearly be inadmissible. Such bare speculation without any citation to any evidence or authority in support cannot reasonably be said to justify production of Calapini's termination documents. On this additional basis, the motion should be denied.

Moreover, the factors weigh heavily in favor of non-disclosure. There can be no doubt the documents setting forth the investigation into the incident leading to his subsequent termination boldy encroaches on Calapini's right to privacy, which is traditionally recognized. Plaintiffs have conducted no discovery to place the termination in context. Equally important, given that there is not one iota of any evidence the matters are related, it appears particularly burdensome and intrusive to produce the documents simply to satisfy curiosity. Accordingly, Calapinis' privacy rights prevail. Accordingly, all documents regarding Calapini's termination should not be disclosed.

**C. In-Camera Review and a Protective Order is Necessary**

Assuming arguendo the court finds disclosure may be warranted, Calapini requests in camera review to definitively determine if the documents from Calapini's personnel file, including his termination are indeed relevant and discoverable.

In addition, following an in-camera review, should the court determine documents are discoverable, Defendants requests a protective orders specific as to these documents. An entry of a protective order is warranted where there is "good cause" and justice so requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed.R.Civ.Pro. 26(c); Phillips v. General Motors Corp., 307 F.3d 1206,

1210-11 (9th Cir. 2002). Assuming the court resolves the dispute as to which documents should be disclosed, a protective order should issue.

**D. Plaintiffs' Motion for Disclosure of Dr. Barnett's Records Should be Denied**

Plaintiffs again speculate about the relevancy of the document requested, a written reprimand dated November 17, 2011, regarding "deficiencies in his admission and discharge documents for patients." There is no evidence to support same. There is no evidence the reprimand is related to this case or any issues in this case. Counsel for Plaintiffs were told the document was about timeliness of said discharge summaries that occurred in August 2011, which is not related to any issue in this case or the death of Bock in April 2010. Regardless, an in-camera review will clearly establish it is not relevant. Assuming the court finds relevancy, a protective order is appropriate.

**E. Plaintiffs' Motion Regarding DOJ or Sutter County District Attorney Records Should be Denied**

The request was "ALL DOCUMENTS submitted to or received from the Department of Justice and Sutter County District Attorney RELATING TO the death of Rodney Bock." The Response was "Objection. Assumes facts, compound, vague, overly broad, calls for speculation. Without waiver, and insofar as this request seeks documents from the Sutter County jail, Defendant responds as follows: none."

Having conducted no discovery to determine if in fact any documents were generated or received from the DOJ or DA, Plaintiffs speculate that such exist without any evidentiary support. Plaintiffs claim to take issue with "insofar as this request seeks documents from the Sutter County jail", but have actually twisted it claiming the response was limited to documents "kept at Sutter County Jail", which it does not state as such. Counsel for Defendants explained this was attempted to limit the response insofar as the County has no possession custody or control of documents from the Department of Justice and Sutter County District Attorney. Insofar as Plaintiffs meant some other department within the county besides the jail, Defendants are left to speculate and merely claiming

"the whole County" sheds no light on the request. Defendants have adequately responded.

**F. The Motion to Compel Electronic Media Should be Denied**

In response to the request for "ALL notes, reports, logs, photographs, emails, text messages, digital data . . . OR any other information . . . RELATING TO RODNEY BOCK, the detention of RODNEY BOCK, OR the death of RODNEY BOCK," following meet and confer, Defendant County agreed to conduct a County wide search of its email system for responsive documents related to "Bock". Counsel for Plaintiffs correctly noted there were identified numerous folders for which counsel for Defendants needed to review to determine if there are any responsive documents. While counsel for Plaintiffs note counsel for Defendants represented a number of folders to be reviewed, the number of over 200,000 was not representative of the number of folders, which can only be roughly approximated as 20,000 folders. Counsel for Defendants has reviewed approximately half and not identified any responsive documents, and is endeavoring to review them as time permits.

However, Plaintiffs have not identified any particular person to focus on save Sutter County Jail nurse Perian. And while she believed that Sutter County issued employee email accounts are used to discuss issues related to jail inmates' health and mental health, there is no evidence Ms. Perian actually used her email to communicate about decedent or his issues. Accordingly, Defendants are willing to keep counsel for Plaintiffs informed of the progress of the folder review, and anticipate such should be completed within the next 90 days. Should Plaintiffs wish to narrow the folders to just named defendants, the search could be completed within 10 days as requested by Plaintiffs.

**G. The Motion to Compel Production of Documents "Identified in Deposition Testimony that Have Not Been Produced" Should be Denied**

As the court is likely aware, a deponent may often believe documents exist, when they in fact do not. Plaintiffs attempt to bring in the requests under a vague and overlybroad request for all documents about decedent or any training. Defendant County has produced all documents it was able to locate. For example, had Plaintiffs conducted

PMK depositions, they would have learned progress notes are typically placed into inmates' medical files in the ordinary course of business, which has already been produced. Plaintiffs failed to explore any other location the documents may exist, and the County is not required to speculate.

Moreover, that an employee Khushwant Randhawa (nee Singh), who is not a named defendant, testified that the only written materials he recalled receiving as part of his jail correctional officer training was a "training book" in 2009 does not require disclosure of the alleged "training book" even if the County knew how to locate a document given to an employee that was not in his personnel file, which is otherwise confidential. The request for "ALL DOCUMENTS, INCLUDING written POLICIES, procedures, practices, texts manuals, memoranda, OR training materials . . . RELATING TO SHERIFF'S DEPARTMENT OR JAIL POLICIES" does not equate to justify every employee turning over all training materials ever received, particularly when training records are confidential and kept in the ordinary course as part of the personnel records. Plaintiffs did not fully explore where such documents existed today, and have conducted no PMK discovery to establish same. Therefore, the motion should be denied.

**H. The Motion for Sanctions Should Be Denied**

Plaintiffs purport to seek sanctions, although the notice caption does not state as such, do not state against whom, nor is any amount stated. For these failures alone, sanctions cannot be awarded. Therefore, the motion should be denied.

Assuming arguendo the court entertains the motion, Defendants submit sanctions are unsupported. Plaintiffs claim rule 37(d) of the Federal Rules of Civil Procedure provides a basis for sanctions. However, as against Defendant County, there is no evidence for a failure to respond to any particular discovery request. Accordingly, sanctions under Rule 37(d) of the Federal Rules of Civil Procedure is not called for. Likewise, Plaintiffs fail to establish appropriate meet and confer efforts, particularly as to confidential personnel records in accordance Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure, prior to filing a motion to compel. Plaintiffs' attempts to meet relevance of

records based solely on counsel for Plaintiffs' speculation that documents exist, such as regarding the DOJ or DA, supports that this motion would appear to be made as a mere fishing expedition. Therefore, for each of the foregoing reasons, the motion for sanctions should be denied.

Equally important, sanctions relating to discovery matters are only appropriate where a party violates a discovery order issued by the court. F.R.C.P. 37(b)(2); U.S. v. Kahaluu Construction Co., 857 Fed. 2d 600, 602 (9th Cir. 1988). Plaintiffs' lack of depositions discovery is no fault of Defendants, and the mere fact that there has been some delay in getting documents is no impediment to conducting depositions. Rather, Plaintiffs appear to be requesting sanctions apparently for having to bring this Motion to Compel Production of Documents. However, Plaintiffs have provided no argument or any legal authority to support any award of sanctions against Defendants in such circumstances. Moreover, Plaintiffs have not set forth any reason or authority to support a granting of their Motion to Compel Discovery that would be a basis for a Motion for Sanctions. As such, Plaintiffs' request for sanctions is unjustified.

Plaintiffs' reliance on L.H. v. Schwarzenegger, 2008 U.S. Dist. LEXIS 86829, 17-18 (E.D. Cal. 2008) is misplaced. There, the court ordered discovery of documents, to which Defendants only partially complied two days before the discovery cutoff, and the court further found Plaintiffs had been prejudiced in terms of further discovery, objections thereto, in preparation of their anticipated summary judgment motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

None of these issues are present here as the court only recently issued its Pretrial Scheduling Order on March 28, 2013, with all percipient witness discovery to be completed by April 9, 2014. Plaintiffs cannot claim any prejudice. For each of the foregoing reasons, the motion for sanctions should be denied.

DATED: April 25, 2013

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Aaron J. Fischer*
Aaron J. Fischer

Attorneys for Plaintiffs

DATED: April 25, 2013

Respectfully submitted,

PORTER SCOTT

By: */s/ John R. Whitefleet*
John R. Whitefleet

Attorney for Defendants