MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
KATHRYN G. MANTOAN – 239649
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
kmantoan@rbgg.com
lrifkin@rbgg.com
afischer@rbgg.com

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN, LC
22 Battery Street, Suite 888
San Francisco, California 94111-5522
Telephone: (415) 982-2600
Facsimile: (415) 358-4562
Email: gerilynngreen@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Estate of RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK; HILLARY BOCK; MORGEN BOCK; LAURA LYNN BOCK; and Estate of ROBERT BOCK,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SUTTER; COUNTY OF YUBA; J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; DAVID SAMSON, Sutter County Jail Division Commander; NORMAN BIDWELL, Sutter County Jail Corrections Lieutenant; JOHN S. ZIL; CHRISTOPHER BARNETT; BOBBY JOE LITTLE; DAVID CALAPINI; SHAUN FLIEHMAN; RAINBOW CRANE; KATY MULLIN; DONICE MCGINNIS; LEWIS MCELFRESH; BALJINDER RAI; and Does I through XL, inclusive,<br><br>Defendants. | Case No. 2:11-cv-00536-MCE-KJN<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT ON PLAINTIFFS' MOTION TO COMPEL INSPECTION OF SUTTER COUNTY JAIL**<br><br>Judge: Hon. Kendall J. Newman<br>Date: May 9, 2013<br>Time: 10:00 a.m.<br>Crtrm.: 25 |

[803704-4]

## TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | PLAINTIFFS' POSITION | 1 |
| A. | Introduction | 1 |
| B. | Nature of Action | 1 |
| C. | Details of Meet and Confer | 3 |
| D. | Plaintiffs' Argument | 5 |
| II. | DEFENDANTS' POSITION | 8 |
| A. | Introduction/Background | 8 |
| B. | Standards for Demands for Inspection on a Motion to Compel | 10 |
| C. | ARGUMENT | 10 |
| 1. | Plaintiffs' Demand for Informal interviews of random staff should be denied | 10 |
| 2. | Plaintiffs' Demand for Observation of "routine jail operations" should be denied | 13 |
| 3. | Plaintiffs' demand for 5 hour inspection is unreasonable and should be denied | 15 |
| D. | Protective Order | 15 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*B.R.S. Land Investors v. United States*, 596 F.2d 353 (9th Cir. 1979) .......... 15

*Bailey v. Viacom*, 435 Fed. Appx. 85 (3d Cir. 2011) .......... 11

*Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904 (4th Cir. 1978) .......... 7, 11, 13

*Coleman v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 99928 (E.D. Cal. Oct. 30, 2007) .......... 5, 12

*Dusa Pharms., Inc. v. New Eng. Compounding Pharm., Inc.*, 232 F.R.D. 153 (D. Mass. 2005) .......... 14

*G. & P. Amusement Co. v. Regent Theater Co.*, D.C.N.D.Ohio 1949, 9 F.R.D. 721 .......... 10

*Kiblen v. Retail Credit Co.*, 76 F.R.D. 402 (E.D. Wash. 1977) .......... 15

*Martin v. Reynolds Metals Corp.*, 297 F.2d 49 (9th Cir. 1961) .......... 5

*U.S. ex rel. Englund v. L.A. County*, 235 F.R.D. 675 (E.D. Cal. 2006) .......... 7

*U.S. v. Erie County*, 2010 U.S. Dist. LEXIS 26068 (W.D.N.Y. Mar. 19, 2010) .......... 6, 12

**RULES**

Fed. R. Civ. P. 1 .......... 6

Fed. R. Civ. P. 26 .......... 15

Fed. R. Civ. P. 30 .......... 10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 advisory committee's note .......... 6

Notes of the Advisory Committee (2000), Fed. [10] R. Civ. P. 26(b)(1) .......... 13

Wright & Miller, *Federal Practice & Procedure*, § 2040, at 286-287 (1970) .................. 13

Plaintiff Estate of Rodney Bock, by and through CYNDIE DENNY BOCK, as Administrator ("the Estate" or "Plaintiffs"), and Defendant COUNTY OF SUTTER ("the County" or "Defendant County") hereby submit this Joint Statement regarding Plaintiffs' motion to compel inspection of Sutter County Jail.

## I. PLAINTIFFS' POSITION

### A. Introduction

Plaintiffs move to compel Defendant County to permit Plaintiffs access to inspect Sutter County Jail in accordance with Defendant's obligations under Federal Rule of Civil Procedure 34. Defendant has stated its intent to limit the time and scope of Plaintiffs' inspection in a manner that substantially and inappropriately interferes with Plaintiffs' ability to conduct a Rule 34 inspection. Specifically, Defendant County has stated its intent to: (1) impose a time cap of 30-45 minutes on Plaintiffs' inspection; (2) prohibit Plaintiffs from observing routine jail operations during the inspection and suspend operations for the duration of Plaintiffs' inspection; and (3) prohibit Plaintiffs' experts from asking jail staff working at the time of the inspection questions about the routine operations of the jail such that the experts can fairly understand what they are observing. Plaintiffs seek an order compelling Defendant County to permit an inspection of a reasonable duration and scope so that Plaintiffs can fairly inspect the operations relevant to Plaintiffs' claims.

### B. Nature of Action

This action arises from the death of Rodney Bock in Sutter County Jail ("Jail") on April 29, 2010. Plaintiffs' Fourth Amended Complaint ("4AC"), the now-operative complaint, includes claims for Eighth and Fourteenth Amendment violations under Section 1983 against all Defendants, and California state law claims for professional negligence, negligence/negligence per se, failure to summon medical care, negligent supervision, training, hiring and retention, and wrongful death.

In late March 2010, Mr. Bock, a successful self-employed farmer with a history of

mental illness, suffered a psychotic episode that put him in significant and immediate danger of injury and self-harm. *Id.* ¶¶ 78-81. Family members brought Mr. Bock to Psychiatric Emergency Services at SYMHS for emergency hospitalization. *Id.* ¶ 81. County employees at SYMHS determined that Mr. Bock was "gravely disabled" and required a "safe and structured [setting]," "observ[ation] for safety," and a "state hospital placement." *Id.* ¶ 84. Defendant Barnett also initiated the process for involuntarily hospitalizing Mr. Bock for two additional weeks, documenting that Mr. Bock required inpatient treatment. *Id.* ¶ 85. However, rather than providing Mr. Bock with inpatient treatment, Defendants discharged Mr. Bock from the SYMHS hospital facility directly to Sutter County Jail pursuant to an outstanding warrant, which was based on Mr. Bock's failure to appear at a court hearing while he was suffering the psychotic episode for which his family brought him to SYMHS. *Id.* ¶¶ 86-97. At the Jail, Defendants placed Mr. Bock into a high-security single cell and denied him critically needed observation and psychiatric treatment. *See id.* ¶ 95. Over the next twenty-seven days, while confined to that cell, Mr. Bock decompensated further, but Defendants failed to provide him the psychiatric treatment he desperately needed. 4AC ¶¶ 98-105, 113-141. On April 19, 2010, noting Mr. Bock's mental deterioration, the court handling Mr. Bock's pending case ordered that he be transferred to Napa State Hospital for inpatient psychiatric hospitalization and required that he take prescribed anti-psychotic medication. *Id.* ¶¶ 106-111. This court order was conveyed to Defendants but they never effectuated it, instead keeping Mr. Bock confined to his single jail cell for the next ten days, when he died after a violent suicide by hanging in his cell. *Id.* ¶¶ 110-111.

In the week before he died, Mr. Bock refused psychiatric medications that had been prescribed to protect him from self-harm. Custody and jail staff observed and documented Mr. Bock's medication refusal and his attendant deterioration, but did nothing in the intervening days to provide him urgently needed treatment. *Id.* ¶¶ 113-132. On the evening of Thursday, April 29, 2010, during a two-hour period in which custody staff skipped regular observational rounds at the jail, Mr. Bock committed suicide alone in a cell

in which he never should have been placed, and from which a court had ordered that he be removed and transferred for necessary inpatient psychiatric treatment. *Id.* ¶¶ 136-142. Plaintiffs' claims against Defendants include, *inter alia*, allegations that Defendant County's failures with regard to policies, customs, procedures, and practices relating to the provision of supervision, screening, and treatment constituted deliberate indifference to Mr. Bock's physical safety and mental health needs. *Id.* ¶¶ 151-173; 192-202.

**C. Details of Meet and Confer**

On April 1, 2013, Plaintiffs noticed an inspection of Sutter County Jail to take place on May 30, 2013, a date on which the parties have agreed. Plaintiffs' notice included notice of a one-day (8 hours) inspection to include: physically inspecting the cell and housing units where Mr. Bock was housed, areas to which he had access, control rooms or other custody areas used by staff who monitored Mr. Bock, and intake, medical, and mental health screening and treatment areas; observing delivery of mental health and/or medical care to inmates, including screening, clinical contacts, and administration of medication; conferring with jail staff and/or inmates; and inspecting policy and procedure manuals and logs. Declaration of Lori Rifkin In Support of Plaintiffs' Motion to Compel Inspection ("Rifkin Decl.") ¶ 3 & Ex. A (Pls.' Notice of Inspection). On April 10, 2013, Defendant objected to this inspection, indicating, *inter alia*, that any inspection would be capped at 30 minutes, that Plaintiffs would be prohibited from entering certain areas of the Jail included in the notice such as control rooms (in order to observe staff members' lines of sight and ability to monitor inmate activity), and that interactions with jail staff and prisoners would not be allowed. *Id.* ¶ 4 & Ex. B (Defs.' Objections). After an initial exchange of emails, counsel met and conferred telephonically about the inspection dispute on April 16, 2013, and subsequently exchanged additional emails about this dispute. *Id.* ¶ 5. During the April 16 telephone conference, Plaintiffs explained that 30 minutes would be insufficient to conduct an inspection of the jail and offered to stipulate to a half-day (5 hours) inspection, with the agreement that the tour would be conducted as efficiently and expeditiously as possible. *Id.* ¶ 6. Defendant refused to meaningfully negotiate beyond

the 30-minute cap that is stated in its original objection. *Id.*

Defendant's "inability" to understand that one half-hour is an unreasonable time limit for an inspection of Sutter County Jail—which is a custodial environment solely controlled by Defendant and in which every entry and exit between units of the Jail presumably involves security—may also reflect Defendant's miscomprehension about the purpose of a Rule 34 inspection in this case. While one purpose of the inspection of the Jail is to gain a fuller understanding of the layout of various relevant areas of the Jail in relation to the cell where Rodney Bock was housed, another purpose of the inspection—plainly contemplated and permitted under Rule 34 when it refers to inspecting "operations" on land or property controlled by another party—is for Plaintiffs to gain a fuller understanding of the operations of the Jail in relation to the issues in this case. For example, one of the primary issues in this case is whether the practices and procedures (or lack thereof) of Defendant County caused Rodney Bock's death. Consequently, one of the practices and procedures at issue is mental health screening. Another is medication distribution. Another is security rounding. Thus, Plaintiffs designated these routine operations as operations to observe during the inspection as they typically take place. Rifkin Decl. ¶ 3 & Ex. A. During the parties' April 16, 2013 telephonic conference, Defendant's counsel stated Defendant's intention to suspend or significantly alter the normal operations of the Jail while Plaintiffs' inspection takes place, and stated that Plaintiffs would be unable to observe such operations. *Id.* ¶ 7. As the rationale for this position, Counsel offered generalized, vague, and speculative concerns about "security" and "privacy," which he did not substantiate. *Id.* Plaintiffs' counsel explained that observation of these operations are routine for jail inspections conducted by counsel and experts in these types of cases and do not threaten the safety and security of jail operations. *Id*. However, Defendant's counsel declined to elaborate further on these concerns in multiple subsequent emails on this subject, or to change Defendant's position. *Id.*

Plaintiffs also explained the need for Plaintiffs' experts to be able to ask jail staff questions, in the presence of Defendant's counsel, about the routine operations of the jail

as they pass through various areas of the Jail such that the experts can fairly understand what they are observing. Rifkin Decl. ¶ 8. Plaintiffs offered illustrative examples of these types of questions such as: Where are security logs kept? Whose job is it to fill them out? What is the area of the jail you can see on this video monitor? Is this where the mental health screenings are done? *Id.* During one stage of the meet and confer process, Defendant's counsel averred that he may allow one Jail staff member to answer questions, and Plaintiffs agreed that this would be generally sufficient unless that individual did not have sufficient knowledge to provide requested information. However, when Plaintiffs asked Defendant to stipulate to this agreement, Defendant apparently withdrew this offer and returned to its original position of refusing to permit Plaintiffs and their experts to ask any questions of staff. *Id.*

**D. Plaintiffs' Argument**

It is axiomatic that, in order to inspect operations of a Jail, those operations cannot be suspended or substantially altered during the time of the inspection. Although discovery rules are to be liberally construed (*see, e.g.*, *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961)), here, the relevant rule is unambiguous. Rule 34 plainly permits Plaintiffs to notice an inspection of the Jail in order to inspect not only the physical layout, but, also, the operations of the Jail. *See id.* at 57 (crediting dictionary definition of inspect as "'to examine carefully or critically, investigate and test officially'" and noting that "[t]he word 'inspection' has a broader meaning then just looking."). As part of the inspection, Plaintiffs noticed their intention to ask questions of relevant staff about routine jail operations as Plaintiffs and their experts move through the Jail. *See Coleman v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 99928 at *22-23 (E.D. Cal. Oct. 30, 2007) ("In the context of these proceedings, questions by experts directed to prison employees and to class members concerning those matters identified in plaintiffs' inspection requests are properly included as part of an inspection of 'any operation' on the prison facilities to be inspected."). Contrary to Defendant's assertion, this is not an attempt to circumvent formal deposition rules. Rather, in order to understand what Plaintiffs and their experts are

observing, such as what purposes different areas of the Jail serve, what security video feeds show, where in the unit security checks or medication distribution take place, it is common sense that Plaintiffs would need to ask accompanying staff those questions.

Plaintiffs have explained to Defendant's counsel that they will not be asking questions about specific incidents related to Rodney Bock's claims, but, rather, seeking to generally understand the physical layout and operations they are seeing so Plaintiffs' experts can fairly assess the Jail and the operations of the Jail as they relate to the issues in the case. Defendant's counsel will be present for all such questions, and can object or assert privileges if appropriate. *See U.S. v. Erie County*, 2010 U.S. Dist. LEXIS 26068 at *3-4 (W.D.N.Y. Mar. 19, 2010) ("Defendants also maintain that they will be harmed because they cannot object to questions or protect against disclosure of privileged or confidential information. These arguments largely ignore that County attorneys will be present and able to instruct employees during the interviews, thus giving them the opportunity to protect against improper disclosures."). Defendant's counsel's position that the appropriate and preferred approach would be for Plaintiffs to take depositions of every employee whose job duties in some way are relevant to understanding Jail operations as they relate to issues in the case is untenable. Rifkin Decl. ¶ 14. For example, deposing the nurse who delivers medication to the housing units in a conference room will take hours compared with having her answer a few short questions in the unit where she works, while she physically points to her route and the logs where her work is recorded. The same applies to asking staff where medical and mental health records are kept, where screenings are done, how safety checks are conducted, or where staff members observing prisoners housed in the unit where Rodney Bock died are stationed. Defendant's position would result in an incredibly inefficient waste of time and resources that undermines the Federal Rules of Civil Procedure's fundamental goal of "secur[ing] the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 1 advisory committee's note (recognizing "the affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly,

but also without undue cost or delay"); *U.S. ex rel. Englund v. L.A. County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) (explaining that "the goal of the Rules [is] full and efficient discovery, not evasion and word play").

The only case on which Defendant County relies for the proposition that the inspection Plaintiffs noticed is improper under Rule 34 is a Fourth Circuit decision about discovery in a class action employment dispute. There, plaintiffs apparently moved to compel a five-day inspection without describing any of the areas of inquiry to which the inspection was to be directed, nor specifying which areas of the employer's facilities were to be inspected. *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 906 (4th Cir. 1978). In contrast, Plaintiffs in the instant case have noticed a one-day inspection and have specified the relevant areas of the Jail and areas of inquiry. In *Belcher*, the Court also found it persuasive that the defendant spent "a large part of its argument" explaining why the five-day inspection would be an unfair burden on its operations. *Id.* at 907. Here, Defendant County has speculatively asserted that Plaintiffs' inspection will create an unspecified burden to security and operation of the Jail. Moreover, Defendant's argument that the court in the *Coleman* case, decided in this District, did not discuss or authorize inspectors to make direct observation of delivery of medical/mental health care to inmates is irrelevant and unavailing: in that case, plaintiffs' counsel and their experts were permitted to observe those prison operations during the inspections. Rifkin Decl. ¶ 15. Plaintiffs have repeatedly explained to Defendant the relevance of the areas of noticed inspection to the claims stated by Plaintiffs in the 4AC, including the relevance of the operations of the Jail in the areas of supervision, screening, and provision of treatment to claims that policy, procedure, and practice failures by Defendant in these areas constituted deliberate indifference to Mr. Bock's risk of harm and death.

Perhaps because of Defendant's over-narrow view of the proper scope of a Rule 34 inspection, Defendant has sought to limit the entire inspection to half an hour. This is a plainly unreasonable condition. Plaintiffs have explained that they will conduct the inspection as expeditiously as possible and leave as soon as it is completed. An artificial

and arbitrary time limit is unnecessary and would risk wasting the time of Plaintiffs' experts who are travelling considerable distance to conduct the noticed inspection.

Plaintiffs' counsel and their experts are highly experienced in conducting such inspections with minimal intrusion into jail operations, and posing no threat to the safety and security of staff or inmates at the jail. Rifkin Decl. ¶¶ 9-14. Defendant's assertion that this inspection will unreasonably burden the Jail and cause untenable security concerns is supported only by speculative assertions of potential risk. However, the inspection noticed by Plaintiffs is typical of Rule 34 inspections conducted of jails and prisons across the country, and there is no reason it should pose an undue burden on this Jail in particular. Indeed, Lieutenant Bidwell stated that he has "led many tours and inspections of the jail."

## II. DEFENDANTS' POSITION

### A. Introduction/Background

The gravamen of this action arises from the suicide of Rodney Bock while incarcerated at the Sutter County Jail on April 29, 2010. A review of the hundreds of documents produced in this case by defendants clearly shows that Rodney Bock was housed in the same cell in A-pod from April 2, 2010 to April 29, 2010. Videos of the A-pod which depicts the general area have been produced. Photographs of the cell in which Bock was housed, including depicting Bock himself as found, were produced.

Plaintiffs have conducted two depositions; both witnesses described the inside of jail, as well as the procedure and process of the medications pass as conducted specifically in relation to Bock during his incarceration in April 2010. One witness described where security logs are kept.

In or around February 2013, counsel for Plaintiffs informally requested dates for inspection. Counsel for Defendants inquired about the scope of inspection, number of inspectors, names, and so forth, in order to discuss dates with the County, but those inquiries went unanswered by counsel for Plaintiffs. Rather, on April 1, 2013, Plaintiffs simply transmitted a notice of inspection of the Sutter County Jail, unilaterally choosing the arbitrary date of May 30, 2013. In summary, the notice demanded, *inter alia*, the

following:

1. access to the jail for an eight (8) hour period to view essentially any possible area Plaintiffs speculate that decedent Bock could have been in.

2. demands to view current operations including intake, medical, and mental health screening and treatment areas; observing delivery of mental health and/or medical care to inmates, including screening, clinical contacts, and administration of medication.

3. Random interview of staff about operations, access, procedures and the like.

Defendants objected to the Notice on numerous grounds. (*See* DEFENDANTS' OBJECTION TO PLAINTIFFS' FIRST REQUEST FOR INSPECTION, attached as Exhibit A to Declaration of John R. Whitefleet). Despite the objections, Defendant nonetheless agreed that two inspectors could view the hallway leading from the main control room to A-pod where Bock was housed, the booking area, and the cell in which Bock was housed, the single cell recreation area, and the medical treatment area on May 30, 2013, at 1:30 p.m., to last no more than one half-hour. Defendant required any inspectors be properly identified by Plaintiffs, and each execute a Release and Hold Harmless Agreement.

On April 16, 2013, counsel met and conferred. Counsel for Plaintiff modified the demand to a maximum of 5 hours for inspection, demanded 5 inspectors be present, and continued to demand observations of ongoing operations and interviews of random staff.

During the same teleconference, counsel for Defendants requested Plaintiffs articulate the relevance/need to conduct inspecting ongoing operations, and authority for interviews. Counsel for Plaintiffs argued in conclusory fashion that such was allowed under Fed. R. Civ. P. 34, but did not actually articulate what that relevance was.

On that same day, counsel for Defendant agreed to allow up to 5 inspectors, and allow access to the Single Cell Control room. (*See* email dated April 16, 2013.)

Thereafter in several emails, counsel for Defendants requested Plaintiffs articulate the relevancy of inspection demand of ongoing observations to the subject matter involved in the pending action as required pursuant to Rule 26(b), and how the 5 hours represents a reasonable time to conduct the inspection, particularly in light of the small size of the jail

which can be inspected in its entirety in about an hour. (Declaration of Lt. Norm Bidwell.) Plaintiffs made no attempt to do so.

**B. Standards for Demands for Inspection on a Motion to Compel**

Under Rule 34 of the Federal Rules of Civil Procedure, a request for inspection must:

(1) be relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b),

(2) describe with reasonable particularity each item or category of items to be inspected; and

(3) must specify a reasonable time, place, and manner for the inspection.

In order to justify intervention of the court, Plaintiffs must also establish "good cause," which is not shown when the information sought can be obtained through other methods. *See G. & P. Amusement Co. v. Regent Theater Co.*, D.C.N.D.Ohio 1949, 9 F.R.D. 721, 724.

**C. ARGUMENT**

**1. Plaintiffs' Demand for Informal interviews of random staff should be denied**

Plaintiffs may not use Rule 34 to circumvent the formal deposition procedures outlined in Rule 30 of the Federal Rules of Civil Procedure, which require notice to the deponent, the recording of the deposition, and an oath or affirmation that the deponent's testimony be truthful. Fed. R. Civ. P. 30(b)(1), (b)(5)(A), (b)(3). In addition, the Rule 30 deposition procedures also permit counsel to make objections on the record and to appropriately assert privileges, and allow a deponent to review the testimony to ensure accuracy. Fed. R. Civ. P. 30(c)(1), (c)(2), (c)(3), (e).

Such informal interviews conducted under Rule 34 do not provide for the formal protections afforded by Rule 30, including the designations afforded by Rule 30(b)(6) of the Federal Rules of Civil Procedure. Rule 30(b)(6) permits an organization to "designate one or more officers, directors, or managing agents, or designate other persons who

[803704-4]

consent to testify on its behalf …." Fed. R. Civ. P. 30(b)(6). Rule 30(b)(6) therefore provides Defendants with a measure of control over who may speak on behalf of Defendants. *See Bailey v. Viacom*, 435 Fed. Appx. 85, 91 (3d Cir. 2011) (explaining that the testimony of a witness who was not designated to testify pursuant to Rule 30(b)(6) "does not establish a company-wide practice."). An interview pursuant to Rule 34 does not provide for such a designation.

Moreover, any comments or information gleaned outside the Rule 30 process would constitute a highly unreliable basis for expert testimony. While Plaintiffs proffer"illustrative" questions, the questions not only appear to be the kind answered during a deposition testimony, but also Plaintiffs apparently do not intend to limit the questions. Rather, it appears Plaintiffs are seeking carte blanche to ask any "operationally-related questions" which is simply improper. This case is not about "assessing the Jail operations" but about whether the employees were deliberately indifferent to the mental health needs of Bock during his incarceration in 2010.

In addition, "interrogation of the employees, conducted informally" could lead to "a roving deposition, taken without notice, throughout the [facility], of persons who were not sworn and whose testimony was not recorded, and without any right by the defendant to make any objection to the questions asked." *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904 (4th Cir. 1978). The court in *Belcher* noted this danger, coupled with the burden placed on the defendant in accommodating the "roving depositions," was not outweighed by "the degree to which the proposed inspection will aid in the search for the truth." *Id.* at 908-909. Indeed, there would be "small utility" derived from interviews that were conducted informally and directed with little specification renders is "difficult to see how the proposed inspection can have any meaningful direction" particularly in light of facts in this case derive from events in 2010, not currently.

And while Plaintiffs claim they are not seeking to ignore or supplant the deposition process, Plaintiffs nonetheless state "deposing the nurse who delivers medication to the housing units in a conference room will take hours compared with having her answer a few

short questions in the unit where she works, while she physically points to her route and the logs where her work is recorded." Based on this statement, it would appear obvious Plaintiffs are in fact seeking to gain information improperly.

Any reliance of the Magistrate's Order in *Coleman v. Arnold Schwarzenegger* 2007 U.S. Dist. LEXIS 99928 at *22-23 (E.D. Cal. 2007) is misplaced. *Coleman* involved oversight before a three-judge panel "directed to the impact of overcrowding on the delivery of constitutionally adequate medical and mental health care to inmates in California's prisons." In allowing interviews of "top" officials about current operations should they be happen to be around, the court merely cited to "liberal rules" of construction of Rule 34 and cited to no other authority, nor provided any consideration to the above. Given that the *Coleman* matter was part of a complex review and oversight of the operations of the State's correctional facilities, including its operations, Defendants submit the Order is entirely distinguishable, limited to its facts, and may not be relied upon as authority that interviews of staff may be afforded in this case. *Coleman* therefore may not be relied upon as authority that interviews of staff may be afforded in this case.

Plaintiffs' reliance on *U.S. v. Erie County*, 2010 U.S. Dist. LEXIS 26068 (W.D.N.Y. 2010) is also unavailing. Like *Coleman*, in *Erie County*, the Department of Justice was attempting to evaluate whether changes can be made at the Erie County Holding Center to decrease incidents of preventable suicides and suicide attempts. In other words, the case did not deal with a section 1983 plaintiff attempting to prove civil liability out of past incident, but once again involved oversight of current operations. Accordingly, *Erie County* does not assist Plaintiffs or is otherwise distinguishable.

Ultimately, Plaintiffs fail to set forth the relevancy and good cause necessary to order random interviews of staff. It is clear that the information sought can be obtained through other methods such that no interviews should be allowed. Defendants have previously identified individuals that were on duty or may have had contact with Mr. Bock. Therefore, the motion should be denied.

**2. Plaintiffs' Demand for Observation of "routine jail operations" should be denied**

"Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted." *Belcher*, 588 F.2d at 908. In other words, merely because Rule 34 permits inspection of operations, does not mean Plaintiffs are permitted to do so. Indeed, Defendant is unaware of any authority that has authorized observations of ongoing operations with inmates inside a jail.

"The degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Id.* "[T]he right to discovery is a qualified right that does not extend to making unnecessary and unwarranted excursions onto the property of another under the guise of supportable litigative needs." *Belcher*, 588 F.2d at 908, n. 12 citing Wright & Miller, *Federal Practice & Procedure*, § 2040, at 286-287 (1970).

As noted above, discovery must be relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b), and establish that the information sought cannot be obtained through other methods. Likewise, the actual scope of discovery is determined " according to the reasonable needs of the action." Notes of the Advisory Committee (2000), Fed. [10] R. Civ. P. 26(b)(1).

Plaintiff have offered no explanation for the relevancy to observe current ongoing operations of a medication pass, provision of mental health care, screening, or booking process, as to the facts of this case. The fallacy of the scope of inspection is revealed where Plaintiffs claim to wish to observe "what security feeds" observe - despite that numerous video have already been produced which clearly depicts the views of such feeds; such video is clearly best evidence of what those views are. Likewise, Plaintiffs are well aware that testimony has established no camera looked on Bock's cell.

Moreover, it would seem the document already provided reveal that Rodney Bock

was booked and screened on April 2, 2010, had numerous medications passes throughout April, and/or was provided mental health care. Moreover, as the methodology of delivery of such care is not at issue in this case, what benefit to this case is derived from observing such current "routine" operations, that cannot otherwise be testified to under Rule 30(b)(6). At the same time, physical descriptions by employees during said testimony would appear sufficient. Likewise, because "mental health care delivery" can occur as needed, such as right at an inmate's cell door, observing same currently does not assist Plaintiffs in their case.

Plaintiffs purport there is relevancy in "gaining a fuller understanding of the operations of the Jail" but fail to state how. Bock was housed in April 2010—how are current operations related to, for example, "mental health screening" relevant—particularly when Plaintiffs are well aware Bock was under the care and treatment of Sutter County Mental Health even before his incarceration. Likewise Plaintiffs claim an issue is "security rounding" but fail to articulate how such observations are relevant to the claims. While, Plaintiffs claim "it is axiomatic" Plaintiffs cite to no authority that they may observe ongoing operations of the jail, and Defendants are unaware of any such authority. Moreover, Plaintiffs cannot expect maximum security inmates to be in an unsecured area with the inspectors for any period of time.

Regardless, any claimed benefit from the inspection of ongoing operations is outweighed by the burdens that such inspection will impose. *See e.g.*, *Dusa Pharms., Inc. v. New Eng. Compounding Pharm., Inc.*, 232 F.R.D. 153, 154 (D. Mass. 2005). Where even correctional officers are at risk from physical harm from inmates, the security concerns in having inmates present in various states of mental condition with up to five inspectors present presents a highly significant burden to security and operations of the jail. (*See* Declaration of Lt. Bidwell) Indeed, the court in *Coleman* did not discuss or authorize inspectors to make direct observation of delivery of medical/mental health care to inmates.

Plaintiffs fail to set forth the relevancy and good cause necessary for this court to

order observations of ongoing operations. Therefore, the motion should be denied.

**3. Plaintiffs' demand for 5 hour inspection is unreasonable and should be denied**

The touchstone for analysis of a Rule 34 inspection is reasonableness. Plaintiffs have offered no evidence or any reasonable explanation why it would take 5 hours to accomplish the inspection, nor offered how such would not interfere with operations. Sutter jail is not a large facility, and prior inspections of the entire jail have been accomplished in about an hour. (*See* Declaration of Lt. Bidwell) This inspection is essentially regarding a mere fraction of the jail, which we believe may be accomplished within time offered. Therefore, as Plaintiffs have made no attempt to explain how the "maximum of 5 hours," is reasonable, have no evidence the inspection would take longer than what Defendants have offered. The wholesale lack of evidence that the suggested 30 minutes as being more than sufficient time means Plaintiffs' speculation as to the time is not only unreasonable, but borders on harassment. Moreover, the impact on security and operations for a 5 hour period on a small facility is patent – and would effectively cause interference with inmate's ability and rights to take yard, be transported and the like. Accordingly, the motion should be denied.

**D. Protective Order**

Upon a showing of good cause, the court may issue a protective order denying discovery. *B.R.S. Land Investors v. United States*, 596 F.2d 353, 356 (9th Cir. 1979); Fed. R. Civ. P. 26(c); *Kiblen v. Retail Credit Co.*, 76 F.R.D. 402, 404 (E.D. Wash. 1977).

Here, Defendant has established a protective order should issue limiting the inspection demand to the time proffered by Defendant, not allow random interviews of staff, nor require the County to place the inspectors at risk and allow observation of "ongoing operations" such as booking, administration of medications or mental/medical

/ / /

/ / /

/ / /

[803704-4]

care and so on. Not only are the requested demands not relevant, the safety risks and serious intrusion into the jail operations warrant a protective order

DATED: May 2, 2013

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Lori E. Rifkin*
Lori E. Rifkin

Attorneys for Plaintiffs

DATED: May 2, 2013

PORTER SCOTT

By: */s/ John R. Whitefleet*
John R. Whitefleet

Attorneys for Defendants