MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
KATHRYN G. MANTOAN – 239649
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
kmantoan@rbgg.com
lrifkin@rbgg.com
afischer@rbgg.com

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN, LC
22 Battery Street, Suite 888
San Francisco, California 94111-5522
Telephone: (415) 982-2600
Facsimile: (415) 358-4562
Email: gerilynngreen@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Estate of RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK; HILLARY BOCK; MORGEN BOCK; LAURA LYNN BOCK; and Estate of ROBERT BOCK,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SUTTER; COUNTY OF YUBA; J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; DAVID SAMSON, Sutter County Jail Division Commander; NORMAN BIDWELL, Sutter County Jail Corrections Lieutenant; JOHN S. ZIL; CHRISTOPHER BARNETT; BOBBY JOE LITTLE; DAVID CALAPINI; SHAUN FLIEHMAN; RAINBOW CRANE; KATY MULLIN; DONICE MCGINNIS; LEWIS MCELFRESH; BALJINDER RAI; and Does I through XL, inclusive,<br><br>Defendants. | Case No. 2:11-cv-00536-MCE-KJN<br><br>**DECLARATION OF LORI E. RIFKIN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY RE: INSPECTION OF SUTTER COUNTY JAIL**<br><br>Judge: Hon. Kendall J. Newman<br>Date: May 9, 2013<br>Time: 10:00 a.m.<br>Crtrm.: 25 |

[805773-3]

I, Lori E. Rifkin, declare:

1. I am an attorney admitted to practice law in California, a member of the bar of this Court, and an associate in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs. I have personal knowledge of the matters set forth herein, and if called as a witness I could competently so testify. I make this declaration in support of Plaintiffs' Motion to Compel Discovery Re: Inspection of Sutter County Jail (the "Jail").

2. I have been admitted to practice law as an attorney since 2005 in Connecticut and New York and since 2006 in California. For the majority of my practice for the past nine years, I have worked on matters and cases involving jails or prisons, either as a private lawyer representing inmates or as an attorney in the Special Litigation Section of the Civil Rights Division of the United States Department of Justice, which enforces the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997. As part of this work, I have conducted dozens of inspections of correctional facilities.

3. On April 1, 2013, Plaintiffs noticed an inspection of Sutter County Jail to take place on May 30, 2013. A true and correct copy of Plaintiffs' Notice of Inspection is attached hereto as **Exhibit A**.

4. On April 10, 2013, Defendants objected to this inspection, indicating, *inter alia*, that any inspection would be capped at 30 minutes, that Plaintiffs would be prohibited from entering certain areas of the Jail included in the notice, such as control rooms (in order to observe staff members' lines of sight and ability to monitor inmate activity), and that interactions with jail staff and prisoners would not be allowed. A true and correct copy of Defendants' Objections, received on April 10, 2013 is attached hereto as **Exhibit B**.

5. After an initial exchange of emails, counsel met and conferred telephonically about the inspection dispute on April 16, 2013, and subsequently exchanged additional emails about this dispute. A true and correct copy of the email exchange between counsel from April 16-April 26, 2013 regarding this dispute is attached hereto as **Exhibit C**.

6. During the April 16, 2013 telephonic conference, Plaintiffs explained that 30 minutes would be insufficient to conduct an inspection of the jail and offered to stipulate to a half-day (5 hour) inspection, with the agreement that the tour would be conducted as efficiently and expeditiously as possible. Defendant refused to meaningfully negotiate beyond the 30-minute cap that is stated in its original objection.

7. During the parties' April 16, 2013 telephonic conference, Defendant's counsel also stated Defendant's intention to suspend or significantly alter the normal operations of the Jail while Plaintiffs' inspection takes place, and stated that Plaintiffs would not be permitted to observe such operations. As the rationale for this position, Defendant's counsel offered generalized, vague, and speculative concerns about "security" and "privacy," which he did not explain or substantiate. Plaintiffs' counsel explained that observation of these operations are routine for jail inspections conducted by counsel and experts in these types of cases, and that they do not threaten the safety or security of jail operations. Defendant's counsel declined to elaborate further on Defendant's concerns in multiple subsequent emails on this subject, or to change Defendant's position.

8. Plaintiffs' counsel also explained the need for Plaintiffs' experts to be able to ask jail staff questions, in the presence of Defendant's counsel, about the routine operations of the Jail as they pass through various areas of the Jail such that the experts can fairly understand what they are observing. In a subsequent e-mail, Plaintiffs offered illustrative examples of these types of questions. *See* Exhibit C. During one stage of the meet and confer process, Defendant's counsel averred that he may allow one Jail staff member to answer questions, and Plaintiffs agreed that this would be generally sufficient unless that individual did not have sufficient knowledge to provide requested information. *Id.* However, when Plaintiffs' counsel asked Defendant's counsel to stipulate to this agreement, Defendant's counsel apparently withdrew this offer and returned to his original position of refusing to permit Plaintiffs and their experts to ask any questions of staff.

9. Plaintiffs' counsel and experts are highly experienced in conducting jail and prison inspections with minimal intrusion into operations, and without posing any threat to the safety or security of staff or inmates at the jail or prison.

10. I have personally conducted dozens of inspections of correctional facilities over the past nine years, including going into housing units for high-security inmates, interviewing high-security and/or inmates with serious mental illness, speaking with correctional staff, and observing routine jail and prison operations such as booking; custody, medical, and mental health screenings; mental health and custody rounding; and medication distribution. All of these inspections also included correctional experts. In my experience, neither I, nor the experts, attorneys, or custody staff accompanying me on those inspections has been assaulted or created an undue security risk by our presence.

11. The attorneys at the firm representing Plaintiffs also have vast experience conducting inspections of correctional facilities. As counsel for plaintiffs in the *Coleman v. Brown* case in the Eastern District of California, Case No. 2:90-cv-00520-LKK-JFM, my colleagues and plaintiffs' experts recently conducted inspections of ten California state prison facilities, including maximum-security housing units and death row. The reports of the experts are filed with the Court in that case and explain their observations of those units.

12. Although these types of inspections necessarily involve some adjustments by custody staff at the jail or prison—for example, providing a custodial escort—based on my experience, these types of inspections do not cause large-scale disruption to the operations of the institution or heightened security and assault threats.

13. Based on my personal experience conducting numerous jail and prison inspections over the last nine years, I do not believe 30 minutes is a sufficient amount of time to conduct an adequate inspection related to the issues in this case. For example, in custodial environments, passage between different units requires clearing security measures that are controlled by custody, which can take significant amounts of time. Observing operations such as booking, screening, and medication pass also requires time

because the inspectors may have to wait for the jail staff conducting such operations to arrive, or such operations may be delayed because of other events.

14. In my experience, it is also critical to be able to ask questions of staff about correctional operations during the inspection in order to efficiently understand what the inspectors are observing. Merely physically walking through the housing units of a jail or prison, and then following up with numerous depositions of staff in order to ask each of them a relatively short series of questions about the physical space or operations observed, rather than asking a few questions concurrently with the inspection, would be a needless waste of the time and resources of the parties, their attorneys, and their experts.

15. During the inspections at issue in *Coleman v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 99928 at *22-23 (E.D. Cal. Oct. 30, 2007), plaintiffs' counsel and their experts were permitted to observe prison operations. I personally participated in several of those inspections, along with experts, and observed such operations.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 2nd day of May, 2013.

*/s/ Lori E. Rifkin*
Lori E. Rifkin

# EXHIBIT A

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
KATHRYN G. MANTOAN – 239649
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: mbien@rbgg.com
egalvan@rbgg.com
kmantoan@rbgg.com
lrifkin@rbgg.com
afischer@rbgg.com

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN, LC
22 Battery Street, Suite 888
San Francisco, California 94111-5522
Telephone: (415) 982-2600
Facsimile: (415) 358-4562
Email: gerilynngreen@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Estate of RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK; HILLARY BOCK; MORGEN BOCK; LAURA LYNN BOCK; and Estate of ROBERT BOCK,<br>Plaintiffs,<br>v.<br>COUNTY OF SUTTER; COUNTY OF YUBA; J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; DAVID SAMSON, Sutter County Jail Division Commander; NORMAN BIDWELL, Sutter County Jail Corrections Lieutenant; JOHN S. ZIL; CHRISTOPHER BARNETT; BOBBY JOE LITTLE; DAVID CALAPINI; SHAUN FLIEHMAN; RAINBOW CRANE; KATY MULLIN; DONICE MCGINNIS; LEWIS MCELFRESH; BALJINDER RAI; and Does I through XL, inclusive,<br>Defendants. | Case No. 2:11-cv-00536-MCE-KJN<br><br>**PLAINTIFFS' FIRST REQUEST FOR INSPECTION** |

PROPOUNDING PARTIES: PLAINTIFFS ESTATE OF RODNEY LOUIS BOCK, *et al.*

RESPONDING PARTIES: DEFENDANTS COUNTY OF SUTTER, *et al.*

REQUEST NUMBER: ONE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Estate of Rodney Louis Bock, *et al.* ("Plaintiffs"), submit the following Request for Inspection to Defendants County of Sutter, *et al.* ("Defendants"), for Plaintiffs and Plaintiffs' expert consultant(s) to INSPECT Sutter County Jail on May 30, 2013 from 9:00 a.m. to approximately 5:00 p.m.

**DEFINITIONS**

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1. The term "ALL" means any and all.

2. The term "ANY" means each and every.

3. The term "JAIL" refers to the Sutter County Jail.

4. The "PRISONER" shall refer to ANY prisoner or ANY detainee in custody at Sutter County Jail.

5. The term "CONFER WITH" means to interview, formally or informally, JAIL personnel who Plaintiffs' expert consultant(s) and/or Plaintiffs' counsel meet and/or encounter during the course of the inspection.

6. The terms "INSPECT" or "INSPECTIONS" means to physically walk through and observe the Sutter County Jail facilities, including, but not limited to, all areas in which JAIL PRISONERS sleep, eat, bathe, exercise, and receive medical and mental health attention, and areas in which such PRISONERS are received at or booked in to the JAIL and/or are processed for release from the JAIL. The terms further mean to review where and how records are kept, including but not limited to logbooks, relating to JAIL PRISONERS' movement within the JAIL and/or relating to JAIL PRISONERS' access to medical or mental health care.

**INSTRUCTIONS**

1. Plaintiffs' counsel and Plaintiffs' consultant(s) will INSPECT the following areas of the JAIL:

a. ALL the cell(s), cell block(s), pod(s), and unit(s) where Rodney Bock was housed from on or about April 2, 2010 until his death on or about April 29, 2010;

b. ALL housing and common areas to which Rodney Bock had access when he was housed at the JAIL;

c. ALL recreation and segregation areas in which Rodney Bock was housed or to which he had access;

d. ALL control rooms, video control areas, or other custody areas to which custody officers or other staff who interacted with or monitored Rodney Bock had access;

e. ALL intake, medical, or mental health screening or treatment areas;

f. ALL sobering cells, safety cells, or other areas where PRISONERS with medical, mental health, or safety needs are housed or treated; and

g. ALL areas surrounding the areas discussed in (a) through (f) above.

2. During the INSPECTION, Plaintiffs' counsel and Plaintiffs' consultant(s) may observe delivery of mental health and/or medical care to PRISONERS, including screening, clinical contacts, and administration of medication. Plaintiffs' counsel and Plaintiffs' consultant(s) will accommodate reasonable requests regarding the protection of patient confidentiality.

3. During the INSPECTION, Plaintiffs' counsel and Plaintiffs' consultant(s) will CONFER WITH JAIL staff, including but not limited to the correctional staff, administrative staff, and medical and mental health staff, regarding the provision of medical and/or mental health care, and as to issues of housing, programming, exercise, and activities for PRISONERS.

4. During the INSPECTION, Plaintiffs' counsel and Plaintiffs' consultant(s) may CONFER WITH PRISONERS regarding their access to medical and/or mental health care, and as to issues of housing, programming, exercise, and activities for PRISONERS.

5. If, during the INSPECTION, Plaintiffs' consultant(s) conclude that they

require a private setting to CONFER WITH certain JAIL staff or PRISONERS, Defendants will provide an area where Plaintiffs' consultant(s) may CONFER WITH the staff member or PRISONER, in the presence of only Plaintiffs' counsel and Defendants' counsel.

6. During the INSPECTION, Plaintiffs' counsel and Plaintiffs' consultant(s) may take photographs of certain areas of the JAIL relating to housing, programming, exercise, and activities for PRISONERS, as well as office and treatment space used by staff responsible for the delivery of medical and/or mental health care to PRISONERS. Plaintiffs' counsel and Plaintiffs' consultant(s) will accommodate reasonable security requests regarding procedures for the taking of photographs.

7. During the INSPECTION, Plaintiffs' counsel and Plaintiffs' consultant(s) may review policy and procedure manuals and logs of the JAIL facilities.

Plaintiffs reserve the right to schedule additional dates for its inspection of the facilities by their consultant(s), if necessary.

DATED: April 1, 2013

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: [signature]
Aaron J. Fischer

Attorneys for Plaintiffs

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 315 Montgomery Street, Tenth Floor, San Francisco, CA 94104-1823.

On April 1, 2013, I served true copies of the following document(s) described as:

**PLAINTIFFS' FIRST REQUEST FOR INSPECTION**

on the interested parties in this action as follows:

John R. Whitefleet
PORTER SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Rosen Bien Galvan & Grunfeld LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 1, 2013, at San Francisco, California.

Karen Stilber

# EXHIBIT B

PORTER | SCOTT
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706
Attorneys for Defendants COUNTY OF SUTTER, COUNTY OF YUBA, J. PAUL PARKER, TOM SHERRY, AMERJIT BHATTAL, BRAD LUZ, JOHN S. ZIL, CHRISTOPHER BARNETT, and SADOUTOUNNISSA MEER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF RODNEY LOUIS BOCK, deceased, by and through CYNDIE DENNY BOCK, as Administrator; KIMBERLY BOCK; KELLIE BOCK HILLARY BOCK; M.B. minor through her mother and guardian ad litem Cyndie Denny Bock; LAURA LYNN BOCK; and ROBERT BOCK,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SUTTER; COUNTY OF YUBA; J. PAUL PARKER, Sutter County Sheriff's Department Sheriff; TOM SHERRY, Director of Human Services of Sutter and Yuba Countyies; AMERJIT BHATTAL, Assistant Director of Human Services-Health Division of Sutter and Yuba Counties; BRAD LUZ, Assistant Director of Human Services-Mental Health of Sutter and Yuba Counties; JOHN S. ZIL; CHRISTOPHER BARNETT; SADOUTOUNNISSA MEER; and Does 1 through XL inclusive,<br><br>Defendants.<br>_______________________________/ | CASE NO: 2:11-CV-00536-MCE-KJN<br><br>**DEFENDANTS' OBJECTION TO PLAINTIFFS' FIRST REQUEST FOR INSPECTION** |

PROPOUNDING PARTIES: PLAINTIFFS ESTATE OF RODNEY LOUIS BOCK, et al.

RESPONDING PARTIES: DEFENDANTS COUNTY OF SUTTER, et al.

REQUEST NUMBER: ONE

///



PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Defendants hereby object to Plaintiffs' request to inspect the Sutter County Jail, as described in the Request. The Request is overly broad, not reasonably limited in scope, and overly broad in time so as currently drafted will not minimize disruption or interference with the processing and/or security safety of the jail. Defendants further object to the Request on the grounds that it would invade the rights of privacy under the state and federal Constitutions of third parties not subject to this matter. Defendants further object on the grounds that the Request is oppressive and burdensome, and that it would interrupt operations of the Sutter County Main Jail. The Request also fails to set forth that Plaintiffs have a substantial need for the inspection in order to prepare their care and cannot without undue hardship obtain the substantial equivalent by other means. Federal Rules of Procedure, Rule 26.

Moreover, despite prior requests, Plaintiffs have failed to identify who would be inspecting in terms of number of individuals, their identities and purpose for the visit, which is otherwise necessary for jail security. See, Belcher v. Bassett Furniture Industries, Inc., 588 F.2d 904, 910 (4th Cir. 1978).

In addition, Defendants object to the following areas of inspection:

Defendants object to areas of inspection identified as 1(a)-(g). These areas of inspection are overly broad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, burdensome, harassing and seeks to interfere with operations. It amounts to a large portion of the jail for which Plaintiffs have not established are necessary to the elements of their claims. Moreover, such will impinge on privacy rights as noted above.

Defendants object to Category No. 2, insofar as the Request seeks to "observe delivery of mental health and/or medical care to PRISONERS" as overly broad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, burdensome, harassing, and interferes with safety security and operation of the jail. Moreover, such will impinge on privacy rights as noted above.

Defendants object to Categories 3, 4, and 5 regarding request to interview jail staff or prisoners whom Plaintiffs' counsel or consultants may encounter during the inspection, as improper, vague, ambiguous and overly broad, irrelevant and not reasonably calculated to lead to the discovery

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916. 929.1481
FAX: 916. 927.3706
www.porterscott.com

of admissible evidence, burdensome, harassing and would otherwise interfere with operations. Moreover, such will impinge on privacy rights as noted above.

Defendants object to Category 6. Plaintiffs' request to take photographs of certain areas is vague, ambiguous, overly broad, burdensome, harassing and seeks to interfere with operations.

Defendants object to Category 7. Plaintiffs' request to "review policy and procedure manuals and logs of the JAIL facilities" is vague, ambiguous, overly broad, and an improper subject for inspection. Documents regarding said policies have already been produced or may be requested separately.

Notwithstanding said objections and without waiver of same, Defendants will allow a visual inspection of the Sutter County Jail on May 30, 2013, at 1:30 p.m., to last no more than one half-hour of the hallway leading from the main control room to A-pod where Bock was housed, the booking area, and the cell in which Bock was housed, the single cell recreation area, and the medical treatment area. The inspection may be attended by two individuals to be properly identified by Plaintiffs, who shall each execute the enclosed Release and Hold Harmless Agreement. Control rooms may not be entered and may only be photographed from the outside. Other photographs may be limited in place or scope depending on the request made at the time.

Respectfully submitted,

DATED: April 10, 2013

PORTER SCOTT
A PROFESSIONAL CORPORATION

By ______________________
John R. Whitefleet
Attorney for Defendants

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916. 929.1481
FAX: 916. 927.3706
www.porterscott.com

# RELEASE, INDEMNIFICATION AND HOLD-HARMLESS AGREEMENT

The Undersigned assume all risks, known and unknown, and jointly and severally agree to indemnify and hold harmless the County of Sutter, its Boards and Commissions, Departments, officers and employees (hereinafter collectively "the County") from and against any and all loss, damages, injuries, liability, claims, suits, costs and expenses, including reasonable attorneys' fees, regardless of the merit or outcome, from any claim, action, liability, loss, damage or suit arising from or in any manner related to the presence of the Undersigned at any property belonging to the County connected or related to the inspection of jail of the Sutter County Sheriff's Department ("Inspection") as pertaining to the claims asserted in the case of Estate of Rodney Bock, et al. v. County of Sutter et al. (Eastern District of California Case No. 11-0536 MCE KJN).

In the event of any asserted claim, the County shall provide the Undersigned reasonable timely written notice of same, and thereafter the Undersigned shall, jointly and severally, at their own expense defend, protect and hold harmless the County against said claim or any loss or liability arising thereunder.

In the further event the Undersigned shall fail to so defend and/or indemnify and save harmless, then in such instance the County shall have full rights to defend, pay or settle said claim on its behalf without notice to the Undersigned and with full rights to recourse against the Undersigned of all fees, costs, expenses and payments made or agreed to be paid to discharge said claim. Upon default, the Undersigned further agree to pay all costs and attorney's fees necessary to enforce this Agreement.

This Agreement shall be unlimited as to amount or duration and shall be binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives.

By signature below, the Undersigned individually agree that each has read this Indemnity and Hold Harmless Agreement and accepts and agrees to each and every term and condition herein.

ROSEN, BIEN, GALVAN & GRUNFELD LLP

Date: ________________ ____________________________

Aaron J. Fischer
Attorneys for Plaintiffs

Date: ________________ ____________________________

Name:

01120140.WPD

**Case Name:** **Estate of Rodney Bock v. Count of Sutter, et al.**
**Case No.:** **U.S. District Court, Eastern District of California No. 2:11-CV-00536**

---

## DECLARATION OF SERVICE

I am a citizen of the United States and employed in Sacramento County, California; I am over the age of 18 years and not a party to the within action; my business address is 350 University Avenue, Suite 200, Sacramento, California 95825.

On the date below, I caused to be served the attached:

**DEFENDANTS' OBJECTION TO PLAINTIFFS' FIRST REQUEST FOR INSPECTION**

XXX **BY MAIL:** I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Sacramento, California.

_____ **BY PERSONAL SERVICE:** I caused such document to be delivered by hand to the office of the person(s) listed below.

_____ **BY OVERNIGHT DELIVERY:** I caused such document to be delivered by overnight delivery to the office of the person(s) listed below.

_____ **BY FACSIMILE:** I caused such document to be transmitted by facsimile machine to the office of the person(s) listed below.

addressed as follows:

Aaron J. Fischer
**ROSEN, BIEN & GALVAN, LLP**
315 Montgomery Street, 10th Floor
San Francisco, CA 94104-1823

Geri Lynn Green
**LAW OFFICES OF GERI LYNN GREEN, LC**
155 Montgomery Street, Suite 901
San Francisco, CA 94104-4166

I declare under penalty of perjury that the foregoing is true and correct and was executed April 10, 2013, at Sacramento, California.

Mor Saetern

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

# EXHIBIT C

**From:** John R. Whitefleet <jwhitefleet@porterscott.com>
**Sent:** Friday, April 26, 2013 3:45 PM
**To:** Lori Rifkin
**Cc:** Aaron Fischer
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

Ms. Rifkin:

Frankly, it appears your email was not intended to conduct any further meet and confer on the subject, but merely reiterate what Mr. Fischer and I have discussed.

Regardless of this, in an attempt to further meet and confer on behalf of Defendants on these issues, we offer the following:

The gravamen of this action arises from the suicide of Rodney Bock while incarcerated at the Sutter County Jail on April 29, 2010. A review of the documents produced in this case by defendants clearly shows that Rodney Bock was housed in the same cell in A-pod from April 2, 2010 to April 29, 2010. Videos of the A-pod which depicts the general area have been produced. Photographs of the cell in which Bock was housed, including depicting Bock himself as found, were produced. Plaintiffs have conducted two depositions; both witnesses, as I recall, described the inside of jail, as well as the procedure and process of the medications pass ("med pass") as conducted specifically in relation to Bock during his incarceration in April 2010.

Under Rule 34 of the Federal Rules of Civil Procedure, a request for inspection must:
(1) be relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b),
(2) describe with reasonable particularity each item or category of items to be inspected; and
(3) must specify a reasonable time, place, and manner for the inspection.

In order to justify the inspection the terms you proposed, Plaintiffs must establish "good cause," which is not shown when the information sought can be obtained through other methods. See <u>G. & P. Amusement Co. v. Regent Theater Co.</u>, D.C.N.D.Ohio 1949, 9 F.R.D. 721, 724.

I will again attempt to explain in why Plaintiffs have repeatedly failed to show relevance, reasonableness, or good cause.

**<u>Informal interviews of random staff</u>**:

Plaintiffs may not use Rule 34 to circumvent the formal deposition procedures outlined in Rule 30 of the Federal Rules of Civil Procedure, which require notice to the deponent, the recording of the deposition, and an oath or affirmation that the deponent's testimony be truthful. Fed. R. Civ. P. 30(b)(1), (b)(5)(A), (b)(3). In addition, the Rule 30 deposition procedures also permit counsel to make objections on the record and to appropriately assert privileges, and allow a deponent to review the testimony to ensure accuracy. Fed. R. Civ. P. 30(c)(1), (c)(2), (c)(3), (e).

Such informal interviews conducted under Rule 34 do not provide for the formal protections afforded by Rule 30, including the designations afforded by Rule 30(b)(6) of the Federal Rules of Civil Procedure. Rule 30(b)(6) permits an organization to "designate one or more officers, directors, or managing agents, or designate other

persons who consent to testify on its behalf ….” Fed. R. Civ. P. 30(b)(6). Rule 30(b)(6) therefore provides Defendants with a measure of control over who may speak on behalf of Defendants. See Bailey v. Viacom, 435 Fed. Appx. 85, 91 (3d Cir. 2011) (explaining that the testimony of a witness who was not designated to testify pursuant to Rule 30(b)(6) “does not establish a company-wide practice.”). An interview pursuant to Rule 34 does not provide for such a designation.

Moreover, any comments or information gleaned outside the Rule 30 process would constitute a highly unreliable basis for expert testimony. While you have included “illustrative” questions, the questions would certainly appear to be the kind answered during a deposition testimony.

In addition, “interrogation of the employees, conducted informally” could lead to “a roving deposition, taken without notice, throughout the [facility], of persons who were not sworn and whose testimony was not recorded, and without any right by the defendant to make any objection to the questions asked.” Belcher v. Bassett Furniture Industries, Inc., 588 F.2d 904 (4th Cir. 1978). The court in Belcher noted this danger, coupled with the burden placed on the defendant in accommodating the “roving depositions,” was not outweighed by “the degree to which the proposed inspection will aid in the search for the truth.” Id. at 908-909. Indeed, there would be “small utility” derived from interviews that were conducted informally and directed with little specification renders is “difficult to see how the proposed inspection can have any meaningful direction” particularly in light of facts in this case derive from events in 2010, not currently.

Any reliance of the Magistrate’s Order in Coleman v. Arnold Schwarzenegger is misplaced. Coleman involved oversight before the three-judge court “directed to the impact of overcrowding on the delivery of constitutionally adequate medical and mental health care to inmates in California's prisons.”In allowing interviews of “top” officials about current operations should they be happen to be around, the court merely cited to “liberal rules” of construction of Rule 34 and cited to no other authority, nor provided any consideration to the above. Coleman therefore may not be relied upon as authority that interviews of staff may be afforded in this case.

Please reconsider your position in the light of the above.

**Observation of “routine jail operations”**:

"Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted." Belcher., 588 F.2d at 908. In other words, merely because Rule 34 permits inspection of operations, does not mean Plaintiffs are permitted to do so. Indeed, we are unaware of any authority that has authorized observations of ongoing operations with inmates.

"The degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." Id. "[T]he right to discovery is a qualified right that does not extend to making unnecessary and unwarranted excursions onto the property of another under the guise of supportable litigative needs." Belcher, 588 F.2d at 908, n. 12 citing Wright & Miller, Federal Practice & Procedure, § 2040, at 286-287 (1970). As noted above, discovery must be relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26(b), and establish that the information sought cannot be obtained through other methods. Likewise, the actual scope of discovery is determined “ according to the reasonable needs of the action." Notes of the Advisory Committee (2000), Fed. [10] R. Civ. P. 26(b)(1).

Plaintiff have offered no explanation for the relevancy to observe current ongoing operations of a medication pass, provision of mental health care, screening, or booking process, as to the facts of this case. How is it that

an inspection of current operations to inmates who are not Rodney Bock calculated to lead to the discovery of admissible evidence?

Moreover, it would seem the document already provided reveal that Rodney Bock was booked and screened on April 2, 2010, had numerous medications passes throughout April, and/or was provided mental health care. Moreover, as the methodology of delivery of such care is not at issue in this case, what benefit to this case is derived from observing such current "routine" operations, that cannot otherwise be testified to under Rule 30(b)(6). At the same time, physical descriptions by employees during said testimony would appear sufficient. Likewise, because "mental health care delivery" can occur as needed, such as right at an inmate's cell door, observing same currently does not assist Plaintiffs in their case.

Regardless, any claimed benefit from the inspection of ongoing operations is outweighed by the burdens that such inspection will impose. See e.g. Dusa Pharms., Inc. v. New Eng. Compounding Pharm., Inc., 232 F.R.D. 153, 154 (D. Mass. 2005). Where even correctional officers are at risk from physical harm from inmates, the security concerns in having inmates present in various states of mental condition with up to five inspectors present presents a highly significant burden to security and operations of the jail. Indeed, the court in Coleman did not discuss or authorize inspectors to make direct observation of delivery of medical/mental health care to inmates.

**Reasonableness in time**:

The touchstone for analysis of a Rule 34 inspection is reasonableness. Plaintiffs have offered no explanation why it would take 5 hours to accomplish the inspection, nor offered how such would not interfere with operations. Sutter jail is not a large facility, and prior inspections of the entire jail have been accomplished in about an hour. This inspection is essentially regarding a mere fraction of the jail, which we believe may be accomplished within time offered. Therefore, as Plaintiffs have made no attempt to explain how the "maximum of 5 hours," is reasonable, have no evidence the inspection would take longer than what Defendants have offered, we have no choice but to continue to object to time frame as demanded.

Your further meet and confer does not address any of these issues. We suggest your office seriously consider the above. I look forward to hearing from you.

Sincerely,

John

*John R. Whitefleet, Esq.*
**PORTER SCOTT**
350 University Avenue, Suite 200
Sacramento, CA 95825
(916) 929-1481 ext. 319
(916) 927-3706
www.porterscott.com

---

**From:** Lori Rifkin [mailto:LRifkin@rbgg.com]
**Sent:** Friday, April 26, 2013 12:32 PM
**To:** John R. Whitefleet
**Cc:** Aaron Fischer
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

Dear John:

I am writing in regard to Plaintiffs' motion to compel inspection of the jail.

We are planning to move forward with this motion based on the parties' current impasse on the following issues related to the inspection:

1) Timeframe for inspection: Plaintiffs noticed the inspection for one day (8 hours) and subsequently agreed to a modification of one-half day (5 hours). Defendants have taken the position that the inspection may last no longer than 30-45 minutes, with your unspecific and vague assurance that nobody will turn into a pumpkin and you may be willing to be flexible if operations impede with the inspection. This is unacceptable. Plaintiffs cannot agree to a hard time cap less than half a day (5 hours). As we have previously stated, Plaintiffs will conduct the inspection as expeditiously as possible and expect it to take less than 5 hours, but, given that we do not control the jail operations and it is a secure facility through which passage is controlled by Defendants, we must be assured of sufficient time to allow for a complete inspection. Please inform me immediately if Defendants are willing to agree to a half-day inspection (5 hours).

2) Observation of routine jail operations: Rule 34 specifically permits Plaintiffs entry into the jail so that Plaintiffs may inspect its operations. You have stated that Defendants will not permit Plaintiffs to observe such routine operations as a medication pass, provision of mental health care, screening, or booking process. You further indicated Defendants' intent to cease or alter the jail's operations during the time of the inspection. Altering the normal jail operations in any manner that prevents Plaintiffs and their experts from observing the routine course of operations is a plain violation of Rule 34. Please inform me immediately if Defendants are willing to stipulate that routine jail operations will take place as usual during the time of Plaintiffs' inspection.

3) Communication with jail staff: Plaintiffs have explained the need for Plaintiffs' experts to be able to ask jail staff questions about the routine operations of the jail as we pass through the various areas of the jail such that Plaintiffs can understand what they are observing. For illustrative purposes only, these types of questions may include: Where are security check logs kept? Whose job is it to fill them out? Where are mental health screenings conducted? What is the area of the jail you can see on this video monitor? How many custody staff are typically at this station? How many times a day do you or other staff do [x]? Defendants have indicated that they "may" make Lt. Bidwell available to answer limited questions. If Lt. Bidwell is knowledgeable and able to answer all relevant questions about the operations of the jail, this would be sufficient, but it is unknown to us whether Lt. Bidwell will have this knowledge. Please inform me immediately if Defendants are willing to stipulate that Lt. Bidwell, or other jail staff if Lt. Bidwell does not have sufficient knowledge to provide requested information, will answer Plaintiffs' questions of the type outlined above in the presence of Defendants' counsel.

Each of the above-outlined requests is consistent with typical jail inspections conducted by plaintiffs' counsel and plaintiffs' experts in these types of cases. They do not threaten the safety and security of jail operations, and Defendants' generalized protestations that they will do so are insufficient to establish any genuine threat or concern on Defendants' part.

Based on our impasse on these issues, and given the need to resolve these questions expeditiously because of the expert travel arrangements involved, we will move forward with our motion. We will send you a draft of Plaintiffs' portion of the joint statement on Tuesday, April 30. Please contact me immediately if Defendants are willing to stipulate to any of the terms outlined above.

Sincerely,

Lori Rifkin

ROSEN BIEN GALVAN & GRUNFELD LLP

315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
lrifkin@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.
IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

**From:** "John R. Whitefleet" <jwhitefleet@porterscott.com>
**Date:** April 18, 2013, 5:40:38 PM PDT
**To:** Aaron Fischer <AFischer@rbgg.com>
**Subject: RE: Bock, Inspection Notice [IWOV-DMS.FID15032]**

Aaron:

I see that immediately after sending the below you filed a motion to compel, which is frankly disappointing. I note you mischaracterize our meet and confer efforts by stating "the County will 'perhaps' allow more than 30 minutes…and have not provided alternative proposals." My email below clearly speaks to my prior suggestion of 45 minutes, and I note my requests for Plaintiffs to articulate why it would take 5 hours to accomplish this inspection have gone unheeded, as have my other requests for explanations as to why you believe observations of current operations are relevant and the like. This is hardly "refusing Plaintiffs' proposals" as you phrase it.

The lack of any substance in terms of meet and confer in your email below dated today, together with the filing of the motion, would imply you have completed whatever meet and confer you intend to do, despite your statement at the end of your email. If not, I request the concerns raised in my email dated April 17, 2103 be addressed.

Sincerely,

John

*John R. Whitefleet, Esq.*
**PORTER SCOTT**
350 University Avenue, Suite 200
Sacramento, CA 95825
(916) 929-1481 ext. 319
(916) 927-3706
www.porterscott.com

---

**From:** Aaron Fischer [mailto:AFischer@rbgg.com]
**Sent:** Thursday, April 18, 2013 4:34 PM
**To:** John R. Whitefleet
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

John,

Based on your email, below, Defendants have refused Plaintiffs' proposals to reach agreement on the unresolved issues regarding the jail inspection, and have not provided alternative proposals to address the pending disputes. As I have mentioned in our meet and confer, our expert consultants are travelling considerable distance for the May 30 inspection, and it is thus essential that we resolve these disputes as to inspection procedures as soon as possible and prior to the date of inspection. Plaintiffs cannot rely on counsel's vague representations, such as that the County will "perhaps" allow more than 30 minutes for the inspection. Plaintiffs are left no choice but to proceed to Court on these matters.

As always, I am available and glad to discuss these matters further, and remain open to reasonable means to resolve the remaining disputes. Thank you.

-Aaron

Aaron J. Fischer, Esq.
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Tel: (415) 433-6830
Fax: (415) 433-7104
afischer@rbgg.com
www.rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

---

**From:** John R. Whitefleet [mailto:jwhitefleet@porterscott.com]
**Sent:** Wednesday, April 17, 2013 12:55 PM
**To:** Aaron Fischer
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

Aaron:

Thank you for the correspondence below. This is to respond to same.

**Time limit**: You state "Defendants appear to have rejected any compromise position and maintain that 30 minutes must be the stated limit." This is incorrect. I explained that we were willing to be flexible in terms of time, but within reason. In our discussion of the matter I had even suggested perhaps 45 minutes. You appeared to reject this suggestion, instead stating the inspectors must be allowed a "maximum" of 5 hours, but that you would "endeavor" to finish as soon as possible. This is not acceptable. In your email below, you offer no explanation why you believe it would take 5 hours to accomplish the inspection, nor offer how such would not interfere with

operations. Please keep in mind the Sutter jail is not a large facility by any means, totaling only 352 beds. As I previously noted, an inspection of the entire jail can be accomplished in about an hour. This inspection is essentially regarding a mere fraction of the jail, which we believe may be accomplished within the ½ hour offered. Therefore, as you have offered no reasonable alternative to the proposed 30 minute time limit to the inspection, we have no choice but to continue to object to the "maximum of 5 hours" time frame as demanded.

**<u>Informal conference with "staff</u>"**: I have reviewed the Order you provided to support the proposition that experts may interview staff. We respectfully disagree that the Order stands for such a proposition or is otherwise distinguishable. As you know, the Order you provided was an unpublished Magistrate's Order in COLEMAN v. ARNOLD SCHWARZENEGGER, which proceedings involved oversight before the three-judge court "directed to the impact of overcrowding on the delivery of constitutionally adequate medical and mental health care to inmates in California's prisons." We note the court merely cited to "liberal rules" of construction of Rule 34 and allowed interviews of "top" officials about current operations, should they be happen to be around. This is a far cry short of ordering that experts may informally confer with random staff, much less about facts of this case. Given that the Coleman matter was part of a complex review and oversight of the operations of the State's correctional facilities, including its operations, we believe the Order is entirely distinguishable, limited to its facts, and may not be relied upon as authority that interviews of staff may be afforded in this case. Moreover, we fail to see the relevance of such informal conferences with "staff" for an event that occurred in April 2010, particularly when we have previously identified individuals that were on duty or may have had contact with Mr. Bock. We continue to believe that questions in order to orient the inspectors is sufficient.

**<u>Observation of operations</u>:** We note that the court in Coleman did not discuss or authorize inspectors to make direct observation of delivery of medical/mental health care to inmates. Accordingly, we are unaware of any authority that would allow such. Regardless, where ongoing operations of the prisons were clearly at issue in Coleman, this case is not about the current operations. I have previously requested that you articulate the relevance of such observations to the claims in this case. The gravamen of this action is about Bock's mental health in April 2010. Accordingly, we fail to see observing any current provision of medical care is relevant to the claims. Moreover, as I indicated to you, it was my understanding that "mental health care delivery" can occur as needed, such as right at an inmate's cell door. As such, we cannot see how observing such an ongoing mental health delivery or "screening activities" assist Plaintiffs in this case,

particularly when we are unaware of any evidence adduced in this case thus fare which would make it relevant. Likewise, as previously noted, there are security concerns about having unsecured inmates, and such concerns are tantamount to everyone's protection and cannot simply be ignored. Your meet and confer does not address these security concerns.

We hope that you give serious considerations to the issues raised.

As this is not the type of issue we believe needs the court's intervention, nor are there any impending court-deadlines regarding discovery, we do not understand or share your sense of urgency that requires shortened time for a motion to compel. We note that the date for inspection was unilaterally chosen by your office without consulting with us. While Ms. Green had inquired about dates for the inspection prior to the notice being sent, I requested several times to be provided the number of inspectors, names, scope of inspection, etc before we could discuss dates. However, I never received a response. Had she done so, perhaps some of these issues could have been discussed and resolved prior to your office transmitting the notice and the chosen date. Accordingly, while we ordinarily are willing to extend all professional courtesies, we thus cannot agree to shortened time on a motion to compel that we do not believe is reasonable or necessary. In that regard, we are certainly amenable to choosing a different date for inspection to allow sufficient time to resolve any disputes should you feel it necessary. Otherwise, we believe the inspection can be accomplished as we have proposed on May 30, 2013.

Sincerely,

John

*John R. Whitefleet, Esq.*
**PORTER SCOTT**
350 University Avenue, Suite 200
Sacramento, CA 95825
(916) 929-1481 ext. 319
(916) 927-3706
www.porterscott.com

---

**From:** Aaron Fischer [mailto:AFischer@rbgg.com]
**Sent:** Wednesday, April 17, 2013 9:03 AM
**To:** John R. Whitefleet
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

John,

Thank you for your follow-up. It seems we are getting closer to reaching agreement, which is very positive. However, Plaintiffs cannot wait indefinitely for resolution, and need to notice a motion to compel regarding any unresolved issues in time for that motion to be heard before the noticed inspection date. We are in the process of reviewing Defendants' current position, as stated in your email, but I provide a response on some issues below.

As you confirm in your email, Defendants have refused to permit Plaintiffs' expert consultants to informally confer with staff during the tour. As I explained, these informal communications would allow the expert consultants to inspect the "operation" of the jail, as permitted by the Federal Rule, and to maximize efficiency for the inspection. They would occur with defense counsel present and concern routine operations of the jail. I appreciate that you "may allow limited questions to Lt. Bidwell," and his presence during the inspection may be useful, but this vague statement is insufficient. As requested, I am attaching an order from the Eastern District of CA that allows just the sort of communications now being requested by Plaintiffs. (See Page 7 of attached pdf.) Please let me know if the County is willing to reconsider its position.

I do not understand Defendants' position regarding a 30 minute time limit. How is Defendants' current position different than what is in their written objections, which state that the tour would "last no more than one half-hour"? Such a time limit is not reasonable and, as you seem to agree, inappropriate if enforced as a hard and fast rule. Plaintiffs agreed to set a maximum tour time of 5 hours, and to work cooperatively to ensure the most efficient and least time-consuming tour possible. You are of course free to object during the tour if you feel things are not moving at an appropriate pace. Defendants appear to have rejected any compromise position and maintain that 30 minutes must be the stated limit.

You also confirm that Defendants will not permit Plaintiffs' expert consultants to observe medical/mental health care delivery or mental health screening activities during the inspection. As stated in our Request for Inspection, we will take all reasonable steps to ensure patient confidentiality during such observations. In our meet and confer, you stated that such observations would not be possible because such activities would be suspended during the tour. This is improper, as it precludes us from inspecting operations at the jail, as permitted by Rule 34. Please let me know if the County is willing to reconsider its position.

Defendants object to Plaintiffs' expert consultants conferring with prisoners during the tour. I suggested in our meet and confer that prisoner interviews could be conducted following the inspection in the attorney visiting area in order to reduce burden on staff during the inspection. I asked that the County provide a list of current A-pod prisoners in advance of the tour so that our expert consultants may be focused and efficient on this matter. Defendants have rejected this proposal. You do not explain the nature of Defendants' security concerns (particularly concerns that a protective order could not fully address) or privacy concerns (as no prisoner would be required to speak with Plaintiffs' expert consultants).

I am hopeful that the parties will be able to reach agreement on each of the above issues, and remain available to discuss them with you moving forward. Please let me know no later than 12noon on Thursday (4/18) whether Defendants have reconsidered any of their positions such that the parties may be able to settle all or part of this dispute without the court's assistance. If we cannot reach agreement by that time, however, we will move forward with a motion to compel regarding the inspection procedures still in dispute. In an effort to minimize burden on the parties and the court's time, I have asked that you agree to shorten time on this motion to compel so that these issues could be heard by the court on May 2, 2013, when the now pending motion to compel regarding other discovery disputes is set to be heard. On our call, you rejected

this suggestion. Please advise – also by 12noon on Thursday (4/18) – if Defendants are willing to reconsider.

Thank you and I look forward to hearing from you.

-Aaron

Aaron J. Fischer, Esq.
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Tel: (415) 433-6830
Fax: (415) 433-7104
afischer@rbgg.com
www.rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

---

**From:** John R. Whitefleet [mailto:jwhitefleet@porterscott.com]
**Sent:** Tuesday, April 16, 2013 4:20 PM
**To:** Aaron Fischer
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

Aaron:

This will confirm and follow up our teleconference regarding further meet and confer of today (and following my email below) relating to the jail inspection in the above-referenced matter. In that you regard, you demanded several matters regarding the inspection as follows:

1. The number of inspectors be increased to allow 5 people, to include two experts/consultants and up to 3 attorneys;
2. You did not believe ½ hour to complete the inspection was sufficient, but limited the eight (8) hour in the demand to five(5) hours for the inspection;
3. Visual access to the single cell control room,
4. To inspect where any policy books are located,
5. To inspect where cell activity books are located,
6. To inspect where the medical “logs” are located
7. To allow an observation of a medical pass and booking process
8. To arrange for interviews of inmates currently house in A-pod. To that end, you requested the names of all inmates currently housed in A-pod.
9. To allow interviews of staff, which you appeared to clarify the questions would be about room use, who has access and the like.

There were several issues which each which we discussed. However, before outlining and following up on those discussions further, I wished to follow up on the demands above that could be met.

a. Per your request, up to 5 people will be allowed; each will be required to execute the Hold Harmless Agreement.
b. My understanding that visual access through the windows of the single cell control room is difficult if not impossible given its raised location. Accordingly, the inspectors will be allowed to enter the single cell control room, although how many can enter at once may be limited. If so, such will simply be done in phases.

In terms of the time limit for inspection, my understanding is that an inspection of the entire jail can be accomplished in about an hour. As this inspection does not involve the entire jail, we continue to believe ½ hour for the A-pod and other areas enumerated below is still more than sufficient. However, as I indicated, the time limit is not meant to act as the proverbial chariot which turns into a pumpkin at the end of the time, but I believe can be somewhat flexible, particularly if operations interfere or impede with the inspection. However, when I offered that Plaintiffs provide an alternative to the ½ hour, you indicated the time for inspection must be five hours. We fail to see how 5 hours is either reasonable or necessary and thus we must continue to object to that demand.

Your demand to inspect the physical location of an policy books, cell activity books, or medical logs does not appear relevant to any claim. How does the physical location of any of these items have any bearing on your claims? As I indicated, I believe that there has been no testimony that reveals any relevance, much less the need to inspect the physical locations. For example, my understanding is that the policies are available through the intranet, accessible at any computer. How then does the physical location of a policy book become relevant? No one is claiming that did not have access to a policy. Regarding the cell activity logs, as I recall the testimony was they are located in the single cell control room, but I fail to see how inspecting where it is kept has any bearing to any claim. Nonetheless, as indicted, access to the single cell control room will be made, which will allow the inspectors to see their location.

In terms of "medical logs" I indicated I did not know what this meant. As we discussed, if you are referring to where individual medical files are located, such as a filing cabinet, I was willing to look into whether the location(s) could be inspected. While I continue to fail to see the relevance, inspection of the medical area will include a cabinet which contains medical files. My understanding is that files are also maintained in the "Manager's" office, which will also be shown to the inspectors.

Regarding the demand to observe a medical pass or booking process, I believe that not only is such a demand not relevant, it would not be possible due to

security, privacy, and interruption of operations, and other factors as set forth in the objections.

In addition, we continue to object to any interviews of inmates during the inspection. You clarified that you are willing to have such interviews after the inspection. When I asked you for any particular inmates, you indicated you wanted a list of all inmates currently housed in A-pod. We are unable to accommodate such a request. While inmates names may be generally available, a group of inmates currently housed in a particular location presents security concerns, in addition to the other privacy concerns we have. Accordingly, if you have an inmate's name you would like to interview, there is no impediment to your contacting the jail directly to make arrangements to do so.

In terms of interviews of staff, we appreciate the clarification, and still have concerns over the scope of the questions. In that regard, you indicated you had some authority to support same. As soon as you forward same to me, I will be glad to consider it. In the meantime, however, as I will be present, I may allow limited questions to Lt. Bidwell, to allow the inspectors to orient themselves.

Sincerely,

John

---

**From:** John R. Whitefleet
**Sent:** Tuesday, April 16, 2013 10:08 AM
**To:** 'Aaron Fischer'
**Subject:** RE: Bock, Inspection Notice [IWOV-DMS.FID15032]

Aaron:

As the demand for the inspection of the jail sought an eight (8) hour inspection of what appeared to be most areas of the jail, as well as sought interviews of staff and inmates, there appeared to be no accounting for security, privacy, and interruption of operations, and other factors as set forth in the objections. We believe the County would have been well within its rights to simply object to the terms of the request, and not offered any inspection in light of its patent over breadth. Nonetheless, in the spirit of discovery, we believe the locations and time allotted for the inspection was a reasonable solution, particularly given those concerns as enumerated. My understanding is that arrangements will be made to move the inmate(s) that were in Bock's cell so that it may be inspected. We are unaware of any authority which would allow you to interview staff or inmates during the inspection, but nonetheless as such matters could unpredictably lengthen the inspection and interrupt operations, such cannot be allowed.

As such, while you have not enumerated what "conditions" are unacceptable – we fail to see how the inspection of the A-pod and its day room, the cell in which Bock was housed, the single cell recreation yard, medical room, would not take more than ½ hour to complete, even accounting for some photographs of each. As I have previously indicated, please identify who will be attending the inspection.

Nonetheless, I would be happy to meet and confer at your convenience.

Sincerely,

John

---

**From:** Aaron Fischer [mailto:AFischer@rbgg.com]
**Sent:** Friday, April 12, 2013 4:36 PM
**To:** John R. Whitefleet
**Subject:** Bock, Inspection Notice [IWOV-DMS.FID15032]

John,

We are in receipt of Defendants' objections to our notice of inspection. As you would imagine, the conditions set by Defendants for the tour are not acceptable to Plaintiffs. I am available to meet and confer on Monday or Tuesday next week. If the parties cannot reach agreement at that time, Plaintiffs will have to once again seek the assistance of the court. Please let me know when on Monday or Tuesday you are available to meet and confer.

Thank you,
Aaron J. Fischer, Esq.
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Tel: (415) 433-6830
Fax: (415) 433-7104
afischer@rbgg.com
www.rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.